UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA C. SIMPSON-VLACH,
ALAN SIMPSON-VLACH, on
behalf of A.S. and M.S., and
individually, KATHY BISHOP,
CHRISTOPHER PLACE, on
behalf of C.P. and H.P., and
individually,

     Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
EDUCATION, ANN ARBOR
PUBLIC SCHOOLS,
WASHTENAW INTERMEDIATE
SCHOOL DISTRICT, DR.
JEANICE SWIFT, in her official
Capacity, DR. MARIANNE
FIDISHIN, in her official capacity,
SCOTT MENZEL, in his official
capacity, NAOMI NORMAN, in
her official capacity, MICHAEL F.
RICE, Ph.D., in his official
capacity,

     Defendants.

Case No. 21-cv-11532

HON. JUDITH E. LEVY

MAG. ANTHONY P. PATTI

**STATE DEFENDANTS'
MOTION TO DISMISS**

Charlotte G. Carne (P61153)
Brain Injury Rights Group MI
Attorneys for Plaintiff
300 East 95th Street, Suite 130
New York, NY 10128
646-850-5035
charlotte@pabilaw.org

Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for State Defendants
MI Dep't of Attorney General
Health, Education & Family Services
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov

Richard J. Landau (P42223)
Attorney for AAPS Defendants
5340 Plymouth Road
Suite 200
Ann Arbor, MI 48105
734-865-1585
rjlandau@rjlps.com

Timothy J. Mullins (P28021)
John L. Miller(P71913)
Travis M. Comstock (P72025)
Giarmarco, Mullins & Horton, P.C.
Attorneys for WISD Defendants
101 W. Big Beaver Rd., 10th Floor
Troy, MI 48084
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com
tcomstock@gmhlaw.com

---

## STATE DEFENDANTS' MOTION TO DISMISS

For the reasons set forth in the accompanying brief, State

Defendants, the Michigan Department of Education (MDE) and Dr.

Michael Rice, respectfully move this Court for an order dismissing all

claims asserted in the Complaint against State Defendants with

prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6)

and granting State Defendants such and further relief as the Court deems just and appropriate.

Pursuant to Local Rule 7.1, State Defendants' counsel sought Plaintiffs' concurrence with this motion and discussed the nature of the motion and its legal bases.  Plaintiffs did not concur with the relief requested in this motion.

Respectfully submitted,

Dana Nessel
Attorney General

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for State Defendants
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603

Dated: July 29, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA C. SIMPSON-VLACH,
ALAN SIMPSON-VLACH, on
behalf of A.S. and M.S., and
individually, KATHY BISHOP,
CHRISTOPHER PLACE, on
behalf of C.P. and H.P., and
individually,

      Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
EDUCATION, ANN ARBOR
PUBLIC SCHOOLS,
WASHTENAW INTERMEDIATE
SCHOOL DISTRICT, DR.
JEANICE SWIFT, in her official
Capacity, DR. MARIANNE
FIDISHIN, in her official capacity,
SCOTT MENZEL, in his official
capacity, NAOMI NORMAN, in
her official capacity, MICHAEL F.
RICE, Ph.D., in his official
capacity,

      Defendants.

Case No. 21-cv-11532

HON. JUDITH E. LEVY

MAG. ANTHONY P. PATTI

**BRIEF IN SUPPORT OF
STATE DEFENDANTS'
MOTION TO DISMISS**

Charlotte G. Carne (P61153)
Brain Injury Rights Group MI
Attorneys for Plaintiff
300 East 95th Street, Suite 130
New York, NY 10128
646-850-5035
charlotte@pabilaw.org

Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for State Defendants
MI Dep't of Attorney General
Health, Education & Family Services
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov

Richard J. Landau (P42223)
Attorney for AAPS Defendants
5340 Plymouth Road
Suite 200
Ann Arbor, MI 48105
734-865-1585
rjlandau@rjlps.com

Timothy J. Mullins (P28021)
John L. Miller(P71913)
Travis M. Comstock (P72025)
Giarmarco, Mullins & Horton, P.C.
Attorneys for WISD Defendants
101 W. Big Beaver Rd., 10th Floor
Troy, MI 48084
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com
tcomstock@gmhlaw.com

---

## BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

Concise Statement of the Issue Presented ...............................................ii

Controlling or Most Appropriate Authority For Relief Sought ..............iv

Preliminary Statement .............................................................................1

Statement of Facts ...................................................................................2

Standard of Review ..................................................................................4

Argument...................................................................................................5

I. The Eleventh Amendment bars most of Plaintiffs' claims against the State Defendants.............................................................................................5

II. Plaintiffs fail to state a claim.............................................................9

  A.  The Denial-of-FAPE claims should be dismissed as Plaintiffs failed to exhaust their administrative remedies.............................................9

  B.  Plaintiffs' RICO claims are flawed on multiple levels. ..................13

   1.  Plaintiffs lack standing to pursue their RICO claims as they fail to allege an injury to their business or property by reason of any action by the State Defendants. ....................................................14

   2.  Plaintiffs fail to plead a pattern of racketeering. ......................17

    a.  No predicate acts. ......................................................................18

    b.  No continuity. ...........................................................................21

   3.  Plaintiffs fail to plead a conspiracy. ..........................................22

  C.  Plaintiffs' remaining claims fail to state a viable claim against MDE and Dr. Rice...................................................................................23

Conclusion and Relief Sought ................................................................25

**CONCISE STATEMENT OF THE ISSUE PRESENTED**

1.     Are Plaintiffs' claims against the Michigan Department of Education (MDE) and Dr. Michael Rice, the Superintendent of Public Instruction sued in his official capacity, barred by Eleventh Amendment immunity?

> State Defendants' answer:        Yes.
>
> Plaintiffs' presumed answer:      No.

2.     Are Plaintiffs' claims alleging a denial of a free appropriate public education (FAPE) barred due to Plaintiffs' failure to exhaust their administrative remedies?

> State Defendants' answer:        Yes.
>
> Plaintiffs' presumed answer:      No.

3.     Should Plaintiffs' claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) be dismissed for failure to state a claim?

> State Defendants' answer:        Yes.
>
> Plaintiffs' presumed answer:      No.

4.     Should Plaintiffs' remaining claims be dismissed for failure

to state a claim?

State Defendants' answer:        Yes.

Plaintiffs' presumed answer:     No.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

- U.S. Const. amend. XI

- *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017)

- *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)

- *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)

- *Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 2021 WL 2621117 (6th Cir. June 25, 2021)

- *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393 (6th Cir. 2012)

- *Aces High Coal Sales, Inc. v. Cmty. Bank & Trust*, 768 F. App'x 446 (6th Cir. 2019)

- *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 60 (6th Cir. 2004)

- *J.T. v. De Blasio*, 500 F. Supp. 3d. 137 (S.D.N.Y. 2020)

## PRELIMINARY STATEMENT

Last September, a group of parents in New York brought nearly identical claims through a putative nationwide class action on behalf of all students with disabilities against all school districts and state education agencies in the country. Judge Colleen McMahon of the Southern District of New York dismissed the case in its entirety "for myriad reasons" and held the plaintiffs' RICO allegations "reek of bad faith and contrivance." *J.T. v. De Blasio*, 500 F. Supp. 3d. 137, 148, 172 (S.D.N.Y. 2020). Unsatisfied with the outcome in New York, this second effort now attempts to focus the case on Michigan. But the claims remain baseless for the same reasons identified by Judge McMahon in *J.T.*

First, the Court lacks jurisdiction over the bulk of Plaintiffs' claim against the State Defendants due to Eleventh Amendment immunity. Next, Plaintiffs' claims alleging a denial of educational services should all be dismissed due to Plaintiffs' failure to exhaust available administrative remedies. Finally, Plaintiffs' allegations simply fail to state a claim under any viable right of action.

1

Regrettably, this action is nothing more than a veiled attempt to contest the temporary closure of schools for in-person instruction due to a global pandemic.  The tremendous efforts by school officials in Michigan and elsewhere to adapt amidst the pandemic should be applauded—not attacked as "racketeering."

The Court should dismiss this case forthwith.

## STATEMENT OF FACTS

Plaintiffs are parents of four students with disabilities, who attend school in Ann Arbor Public Schools (AAPS).  (Compl. ¶¶ 12–18, PageID.3–4.)  The four students each receive special education services detailed in their individual education plans (IEPs).  (*Id.* ¶ 18, PageID.4; *see also* Compl. Exs. A–D.)  None of the students' IEPs specify that instruction and services must be provided in-person. (Compl. ¶¶ 59, 73, 87, 101, PageID.8, 10, 12, 14.)

As a result of the COVID-19 pandemic, AAPS ceased all in-person instruction on March 16, 2020.  (Compl. ¶ 39, PageID.6.)  From March 16, 2020, through June 12, 2020, and again for most of the 2020-2021 school year (through May 2021), AAPS provide remote learning for its students, including the four students at issue in the instant action.  (*Id.*

2

¶¶ 64–65, 78–79, 92–93, 106–107, PageID.9, 11, 13, 14–15.)  The
Complaint does not allege that AAPS failed to provide the four students
with any of the instruction or service recommended in their IEPs.

Moreover, Plaintiffs concede that they did not exhaust their
administrative remedies by filing and pursing a due process complaint
before initiating this litigation.  (*Id.* ¶¶ 66, 80, 94, 108, PageID.9, 11, 13,
15.)

Among the defendants, Plaintiffs name the Michigan Department
of Education (MDE) and Superintendent of Public Instruction, Dr.
Michael Rice (collectively, the "State Defendants").  The Complaint is
devoid of any allegations that MDE or Dr. Rice impaired or impacted
the educational instruction and services provided to the four Plaintiff-
students.

The Complaint includes seven claims, alleging violations of (1) the
Individuals with Disabilities Education Act (IDEA); (2) the Michigan
Administrative Rules for Special Education (MARSE); (3) Section 504 of
the Rehabilitation Act (Section 504); (4) Title II of the Americans with
Disabilities Act (ADA); (5) the Michigan Persons with Disabilities Civil
Rights Act (PWDCRA); (6) the Fourteenth Amendment, pursuant to 42

3

U.S.C. § 1983; and (7) the Racketeer Influenced and Corrupt

Organizations Act (RICO).  The first six claims (hereinafter the "Denial-

of-FAPE claims") are all based on the same purported injury—the

denial of a free appropriate public education (FAPE).  (Compl. ¶¶ 138,

151, 155–56, 170–71, 183, 189, 196, 199, PageID.20, 22, 25, 26–27, 29.)

Each claim is devoid of merit and should be dismissed.

## STANDARD OF REVIEW

Under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), "[t]o

survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its

face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  This

"plausibility" review is "a context-specific task" that requires the

reviewing court to determine whether the plaintiff has not just

"alleged," but pleaded facts sufficient to "show[]," an entitlement to

relief that is actually plausible and not merely "conceivable" or

"possible."  *Id.* at 679, 680.  "[F]acts that are merely consistent with a

defendant's liability" are not enough.  *Id.* at 678.  And in making this

assessment, courts are only to consider facts that are truly well pleaded:

they are not to take as true "legal conclusions," including when

4

"couched as a factual allegation," nor "mere conclusory statements" or "naked assertions devoid of further factual enhancement." *Id.* at 678–79 (cleaned up).

## ARGUMENT

### I.   The Eleventh Amendment bars most of Plaintiffs' claims against the State Defendants.

The Eleventh Amendment provides states and their agencies immunity from suit by private citizens in federal courts.  U.S. Const. amend. XI; *Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 334 (6th Cir. 2000).  This immunity is extended to claims asserted against government officials working in their official capacities.  *Will v. MI Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Supreme Court has recognized only three exceptions to this rule:  (1) congressional abrogation, *id.* at 66; (2) express consent or waiver by the State, *id.*; and (3) official capacity suits for prospective equitable relief based on ongoing violations of federal law, *Ex parte Young*, 209 U.S. 123 (1908). *See also Lawson*, 211 F.3d at 334–35.

Plaintiffs bring their claims against MDE, a state agency, and Dr. Rice, a state official sued only in his official capacity.  Thus, Eleventh Amendment bars all of Plaintiffs' claims unless an exception applies.

State Defendants acknowledge that Congress expressly abrogated sovereign immunity for the IDEA (Count 1) and Section 504 (Count 3). *See* 20 U.S.C. § 1403 (IDEA); 42 U.S.C. § 2000d-7 (Section 504).  In contrast, Congress did not abrogate Eleventh Amendment immunity for claims brought under 42 U.S.C. § 1983 (Count 6) or RICO (Counts 7 and 8).  *See Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020) ("42 U.S.C. § 1983 does not abrogate the States' sovereign immunity."); *Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005) (holding Congress did not abrogate Eleventh Amendment immunity for § 1983 or RICO claims); *LeBlanc v. Michigan*, No. 06-CV-13588, 2007 WL 2225860, at *5 (E.D. Mich. Aug. 1, 2007) ("Congress has in no way abrogated, through the RICO Act, the immunity granted by the Eleventh Amendment."), *aff'd*, *Leblanc v. Michigan*, No. 07-2095, 2008 U.S. App. LEXIS 28447 (6th Cir. Dec. 11, 2008).  Counts 6, 7, and 8 are thus barred by Eleventh Amendment immunity.

6

For Count 4, the ADA claim, the Supreme Court has held that Congress abrogated states' sovereign immunity for ADA claims only in limited circumstances where the state's conduct "actually violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Bd. of Trs. v. Garrett*, 531 U.S. 356, 374 (2001).  In *Georgia*, the Court set forth a three-part test to evaluation whether the Eleventh Amendment proscribes an ADA Title II claim, requiring courts to

> determine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159.  Here, Plaintiffs allege that the closure of schools for in-person instruction discriminated against students with disabilities.  (Compl. ¶ 183, PageID.26–27.)  But this allegation is belied by the obvious point that schools were closed for in-person instruction for all students—the closures were not targeted, nor discriminated based on, whether a students had a disability.  Thus, Plaintiffs do not make it beyond the first *Georgia*-element.  *See, e.g., Mitchell v. Cmty.*

7

*Mental Health of Cent. Mich.,* 243 F. Supp. 3d 822, 837 (E.D. Mich. 2017) (holding that Eleventh Amendment immunity was not abrogated by the ADA where the plaintiff challenged a non-discriminatory policy that applied to the able and disabled).  The ADA does not abrogate Eleventh Amendment immunity here, and Count 4 is thus barred.

To the extent Plaintiffs may contend that they can seek equitable relief against Dr. Rice in his official capacity under the *Ex Parte Young* exception to Eleventh Amendment immunity, this argument fails because there is no "continuing violation of federal law."  *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974) (the *Ex parte Young* exception is for prospective relief only).  Though Plaintiffs seek injunctive and declaratory relief, all such relief would address previous purported violations of law—i.e., there is no allegation that AAPS will not have in-person instruction for the 2021-2022 school year.  *See Green*, 474 U.S. at 67 (1985) (holding that declaratory relief for past conduct is barred by the Eleventh Amendment); *Martinko v. Whitmer*, 465 F. Supp. 774, 777 (E.D. Mich. 2020) (challenges to expired COVID-19 restrictions were barred by the Eleventh Amendment as they sought retroactive relief).  Accordingly,

8

the *Ex parte Young* exception is not applicable to any of Plaintiffs'

claims.

Finally, Plaintiffs' claims asserting violations of state law—

MARSE (Count 2) and PWDCRA (Count 5)—are clearly barred by the

Eleventh Amendment as "the States' constitutional immunity from suit

prohibits all state-law claims filed against a State in federal court,

whether those claims are monetary or injunctive in nature." *Ernst v.*

*Rising*, 427 F.3d 351, 368 (6th Cir. 2005).

For these reasons, State Defendants are entitled to Eleventh

Amendment immunity for Counts 2, 4, 5, 6, 7, and 8, and these claims

accordingly should be dismissed as a matter of law.

## II.   Plaintiffs fail to state a claim.

### A.   The Denial-of-FAPE claims should be dismissed as Plaintiffs failed to exhaust their administrative remedies.

The Denial-of-FAPE claims—the first six counts of the

Complaint—arise out of AAPS's alleged failure to comply with the

procedural requirements of the IDEA and to otherwise provide the

Plaintiff-students FAPE.  All of these claims must be dismissed due to

Plaintiffs' admitted failure to exhaust their administrative remedies.

9

"[F]ederal law requires parents to complete the IDEA's administrative process before bringing any suit under federal law that concerns the 'denial of a free appropriate public education.'" *Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 2021 WL 2621117, at *1 (6th Cir. June 25, 2021); *see also* 20 U.S.C. § 1415(i)(2)(A); *Woods v. Northport Pub. Sch.*, 487 F. App'x 968, 970–71 (6th Cir. 2012).  In Michigan, parents (on behalf of a child(ren)), MDE, or another public agency may file a written due process complaint on any number of grounds, including the "[p]rovision of a [FAPE]," "[p]rovision of appropriate services under 34 CFR part 303 to the child or the child's family," and "[a]ssignment of financial obligation for services under 34 CFR part 303 to the parents." Mich. Admin. Code R. 340.1724f(5)(d), (e), & (f).  MDE then provides students with disabilities and their parents an opportunity for an impartial administrative law judge to hear their due process complaints.  *See* Mich. Admin. R. 340.1724f; *see also* 20 U.S.C. § 1415(b)–(f).

Exhaustion is required for all claims that expressly assert a violation of the IDEA as well as for all claims which challenge the denial of FAPE.  *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017);

10

*Perez*, 2021 WL 2621117, at *1; *see also* 20 U.S.C. § 1415(l).  As the Supreme Court recognized, "plaintiff[s] cannot escape" the IDEA's exhaustion requirement by "merely bringing [their] suit under a statute other than the IDEA."  *Fry*, 137 S. Ct. at 754–55.  Thus, "when the gravaman of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way," all claims must be exhausted.  *Id.* at 755; *see also Perez*, 2021 WL 2621117, at *3 ("Any lawsuit is subject to the IDEA's exhaustion provision if it 'seek[s] relief that is also available under [the IDEA].'") (quoting 20 U.S.C. § 1415(l)).

Here, Plaintiffs' first claim explicitly asserts a violation of the IDEA and accordingly is subject to the exhaustion requirement.  Counts two through six of the Complaint—though brought pursuant to other statutes—are also subject to the IDEA's exhaustion requirement as the claims all stem from an alleged failure to fulfill Plaintiffs' educational needs.  (*See* Compl. ¶¶ 138, 151, 155–56, 170–71, 183, 189, 196, 199, PageID.20, 22, 25, 26–27, 29.)  For example, these Denial-of-FAPE claims allege that Plaintiff-students suffered "regressions in skills and loss of competencies" and were denied "in-person services

11

including occupational therapy, speech therapy, [and] social work services." (*Id.* ¶¶ 156, 170, 183, 189, 199, PageID.22, 25–27, 29.)  The "crux" of these claims is that the Plaintiff-students were "denied adequate education." *Perez*, 2021 WL 2621117, at *3; *see also, e.g., J.T.*, 500 F. Supp. 3d at 191–94 (holding that plaintiffs' Fourteenth Amendment, ADA, and Section 504 claims were subject to the IDEA's exhaustion requirement).  Plaintiffs thus needed to exhaust their administrative remedies for all of the Denial-of-FAPE claims.

But Plaintiffs did not exhaust their administrative remedies as they concede in the Complaint.  (Compl. ¶¶ 66, 80, 94, 108, PageID.9, 11, 13, 15.)  This concession is fatal to all the Denial-of-FAPE claims.

Moreover, no exception to the exhaustion requirement applies here.  Plaintiffs present no allegations that exhausting their claims through the well-established Michigan due process procedures would have been futile or inadequate, nor that the due process proceedings were somehow unavailable for students in Michigan.

Accordingly, having failed to exhaust their Denial-of-FAPE claims, the Court should dismiss these claims for failure to state a claim.  *See*

*F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605, 608 (6th Cir. 2018)

(failure to exhaust warrants dismissal under Rule 12(b)(6)).

### B.   Plaintiffs' RICO claims are flawed on multiple levels.

In *J.T.*, Judge McMahon held that the plaintiffs' RICO claim "fails

in every particular." *J.T.*, 500 F. Supp. 3d at 165. After thoroughly

analyzing how plaintiffs' allegations fails to establish any element of a

RICO claim, Judge McMahon noted:

> the RICO allegations here asserted reek of bad faith and
> contrivance. Plaintiffs have baldly asserted that every
> school district in the country, in trying to respond to an
> unprecedented nationwide health crisis, has perpetrated a
> fraud on the federal government. They have not the
> slightest basis for so asserting. . . . This effort to inject
> racketeering into what is simply an IDEA lawsuit is bad
> faith pleading writ large.[1]

*Id.* at 172. The same holds true here and this Court can largely adopt

Judge McMahon's analysis of the RICO claims. *J.T.*, 500 F. Supp. 3d at

165–72.

---

[1] Judge McMahon dismissed the RICO claims "against all Defendants
in this lawsuit, with prejudice." *J.T.*, 500 F. Supp. 3d at 172. MDE—
like all state education agencies—was technically a defendant in *J.T.*
Since the RICO allegations in *J.T.* vary slightly from the allegations
herein, State Defendants address the RICO allegations in detail below.

To state a RICO claim, the plaintiff must first establish standing to purse the RICO claims. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267–68 (1992). If standing is established, then the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). As described below, Plaintiffs fail to establish standing and fail to plead the required RICO elements.

### 1. Plaintiffs lack standing to pursue their RICO claims as they fail to allege an injury to their business or property by reason of any action by the State Defendants.

RICO provides the right to sue to "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). This language encompasses two standing limitations: (1) restricting the type of injury suffered to "business or property" injuries and (2) requiring a connection between the injury and racketeering violation ("by reason of").

First, to plead an injury to the plaintiff's "business or property," the plaintiff must "allege a proprietary type of damage." *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 569 (6th Cir. 2013).

14

"[B]oth personal injuries and pecuniary losses flowing from those personal injuries fail confer relief under § 1964(c)."  *Id.* at 565–66. Here, Plaintiffs do not allege any proprietary type of damages—they focus on the alleged loss of educational services.  (*See* Compl. ¶ 258, Page.ID.40.)  Plaintiffs have accordingly not alleged an injury to a business or their property sufficient to establish standing for their RICO claims.

Second, the "by reason of" limitation" adds a proximate cause element to RICO standing.  *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613 (6th Cir. 2004); *see also Holmes*, 503 U.S. at 267–68.  As described by the Supreme Court, "a plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts . . . generally . . . stand[s] at too remote a distance to recover."  *Holmes*, 503 U.S. at 268–69.  In other words, plaintiffs who "suffer derivative or passed-on injuries" fail to demonstrate sufficient proximate cause to state a claim.  *Trollinger*, 370 F.3d at 614; *Perry v. Am. Robaccco Co.*, 324 F.3d 845, 849 (6th Cir. 2003 ("A central element of proximate cause is the requirement of a direct injury").  Such is the case here.

15

Plaintiffs allege that Dr. Rice falsely assured the U.S. Department of Education (USDOE) that Michigan had the IDEA programs and policies in place required by statute to secure federal IDEA funding. (*See* Compl. ¶¶ 232–34, 239–41, PageID.35–37.)   Dr. Rice's assurances are the alleged "fraud"—or predicate acts—that purportedly give rise to their RICO claims.  (*Id.*)  Putting aside the blatant absurdity of these allegations (Michigan clearly has the required IDEA policies and programs in place), the victim of the alleged "fraud" is the federal government—not Plaintiffs.  And, even if Plaintiffs could demonstrate some injury based on the alleged fraudulent receipt of funding by MDE from the federal government (they cannot), the IDEA funds flow from USDOE to MDE, then to WISD, then to AAPS, and finally are used for services for the Plaintiff-students.  (Compl. ¶¶ 243–46, PageID.37–38.) Thus, Plaintiffs' purported injury (lack of FAPE) is, at best, a derivative or passed-on injury and, thus, insufficient to establish standing.

In *J.T.*, Judge McMahon aptly dismissed the RICO claim based on a lack of standing, holding:

> Those purportedly false submissions [to the federal
> government] are the frauds, the "racketeering acts," that
> Plaintiffs have identified. . . .  But this alleged fraud was not

16

> perpetrated on Plaintiffs.  Rather, the purported frauds
> targeted the United States. . . .  Therefore, any claim for
> relief resulting from those frauds belongs, not to these
> plaintiffs, but to the United States. . . .  As a result, the
> alleged frauds cannot form the basis for relief under the civil
> RICO statute in a case brought by disabled students and
> their parents, whose claim is that the children were not
> provided with a FAPE — not that they (the Plaintiffs) were
> defrauded in any way.

See *J.T.*, 500 F. Supp. 3d at 165–66.  This same analysis applies equally

here.  The Court should dismiss the RICO claims for lack of standing.

### 2.     Plaintiffs fail to plead a pattern of racketeering.

To plead a pattern of racketeering, Plaintiffs must allege at least

two predicate acts within ten years of each other, "that the racketeering

predicates are related, *and* that they amount to or pose a threat of

continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

229, 237–39 (1989) (emphasis in original); 18 U.S.C. § 1961(5).

Here, Plaintiffs cannot plausibly allege any predicate acts (let

alone two) and, even if they could, that there is no threat of continued

"criminal activity."

### a. No predicate acts.

To establish a predicate act, Plaintiffs contend that MDE—through Dr. Rice—committed mail and wire fraud by providing assurances to the USDOE that Michigan had (1) IDEA policies and procedures in place as required by Part B of the IDEA, (2) that procedural safeguards were available for students with disabilities and their parents, and (3) that MDE had agreements with LEAs to provide FAPE to students with disabilities. (*See* Compl. ¶¶ 232–34, 239–41, PageID.35–37; *see also* Compl. Ex. I, PageID.132–136.) These allegations do not give rise to any fraud.

To state a claim based on mail or wire fraud, the Plaintiffs must allege the following three elements: "(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent acts); (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so." *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) (quoting *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997)). Plaintiffs must allege that Defendants possessed the "specific intent to deceive or defraud." *Frost*, 125 F.3d at 354. The "scheme to defraud must involve 'misrepresentations or omissions

18

reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (quoting *United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir. 1979)).  And, since the claim is based on allegations of fraud, Plaintiffs must satisfy the heightened pleading standard in Rule 9(b), requiring the plaintiff to plead with "particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017).[2]

Here, the alleged "fraud" is simply not plausible on its face.  *See J.T.*, 500 F. Supp. 3d at 170–71.  First, Plaintiffs fail to allege that MDE made any misrepresentation to USDOE to secure IDEA funding.  MDE's assurances to USDOE indicated that Michigan had the necessary procedural safeguards and related IDEA polices in place.  (Compl. ¶¶ 232–34, 239–41, PageID.35–37.)  Plaintiffs *do not* contend

---

[2] "When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012) (internal quotations omitted).

19

that this assurance was false.  After all, Plaintiffs cite to the MARSE,

which contains Michigan's policies and IDEA procedural safeguards.

Moreover, though Plaintiffs contends that MDE's assurances somehow

relate to a purported violation of the four Plaintiff-students' specific

IDEA procedural rights (*see* Compl. ¶¶ 249–252, PageID.38–39), MDE

did not assure the USDOE that four specific students in Ann Arbor

would receive every procedural safeguard from AAPS.[3]  Put simply,

Plaintiffs fail to allege that MDE made any misrepresentations in its

assurances to USDOE.

Second, there are no allegations that Dr. Rice intended to deceive

the USDOE—or anyone else for that matter—when he provided the

IDEA assurances to USDOE.  (*See generally* Compl. ¶¶ 232–52,

PageID.35–39.)  And, for the IDEA assurances for the 2019-2020 school

year, it simply is not possible that Dr. Rice[4] intended to defraud

---

[3] As noted above, even if there was a procedural IDEA violation (there
was not), Plaintiffs—by their own admission—failed to take advantage
of the available procedural safeguards that could have remedied any
procedural violation.

[4] Of note, Dr. Rice did not become the Superintendent of Public
Instruction until August of 2019.

USDOE by making the IDEA assurances "between January of 2019 and July of 2019," *months before the pandemic began* and any schools closed for in-person instruction.  (Compl. ¶¶ 232–34, PageID.35–36); *see also J.T.*, 500 F. Supp. 3d at 170.

Without any intent to defraud and having not provided any misrepresentations, the Complaint is devoid of allegations demonstrating a predicate act of fraud by Dr. Rice or MDE.

### b.   No continuity.

Even if Plaintiffs had pled two predicated acts by the State Defendants, they fail to allege facts to establish sufficient continuity. "The continuity prong of the test can be satisfied by showing either a 'close-ended' pattern (a series of related predicate acts extending over a substantial period of time) or an open-ended pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." *Heinrich*, 668 F.3d at 409–10.

Here, Plaintiffs alleges a closed-ended continuity from "about March 2020 to present."  (Compl. ¶ 256, PageID.39.)  However, the

alleged predicate acts by the State Defendants occurred twice when MDE provided the IDEA assurances to USDOE in "between January of 2019 and July of 2019" and again in May of 2020.  (Compl. ¶¶ 232–34, 239–41, PageID.35–37; Compl. Ex. I at PageID.129 (noting that MDE provided the IDEA assurances for the 2020-2021 school year in May of 2020).)  These two events occurred approximately twelve months apart and impacted separate school years.  Two distinct acts over twelve months cannot plausibility be considered a pattern over a "substantial period of time."  *See Heinrich*, 668 F.3d at 410 ("This court has found that racketeering activity that spanned seventeen months did not constitute a substantial period of time.").  Plaintiffs' conclusory allegation to the contrary is insufficient to establish a close-ended pattern to meet the continuity prong.  *See J.T.*, 500 F. Supp. 3d at 171.

### 3.    Plaintiffs fail to plead a conspiracy.

Plaintiffs also allege a RICO claim under § 1962(d) (Count 8), which requires Plaintiffs to "allege all the elements of a RICO violation, as well as alleging the existence of an illicit agreement to violate the substantive RICO provision."  *Aces High Coal Sales, Inc. v. Cmty. Bank*

22

& *Trust*, 768 F. App'x 446, 459 (6th Cir. 2019) (internal quotations omitted).  As described above, Plaintiffs fail to allege a RICO violation, so the § 1962(d) claim can be dismissed on that basis alone.

But even considering the additional element for Plaintiffs' § 1962(d) claim, Plaintiffs' allegations of a conspiracy are nothing more than statements of law with the terms "plaintiffs," "defendants," and the "IDEA" plugged in to make complete sentences.  (*See* Compl. ¶¶ 261–65, PageID.40–41.)  There are no factual allegations whatsoever to support an agreement between the Defendants to defraud the USDOE, Plaintiffs, or anyone else.

Plaintiffs accordingly fail to state a RICO conspiracy claim pursuant to § 1962(d), and Count 8 should be dismissed.

## C.   Plaintiffs' remaining claims fail to state a viable claim against MDE and Dr. Rice.

As noted above, Plaintiffs' Denial-of-FAPE claims should be dismissed as a matter of law due to their failure to exhaust their administrative remedies and, for Counts 2, 4, 5, and 6, based on Eleventh Amendment immunity.  These claims fail for additional reasons addressed in brief below.

23

*Wrong Defendants* — MDE and Dr. Rice are not the correct defendants for Plaintiffs' Denial-of-FAPE claims.  Plaintiffs fail to allege that MDE or Dr. Rice held any role in issuing IEPs or proscribing placements for the Plaintiff-students—roles clearly held by AAPS. Moreover, Plaintiffs do not allege that MDE or Dr. Rice directed the closure of their schools for in-person instruction.  In fact, the Complaint specifically alleges that AAPS directed the closures and "altered" the students' IEPs—not MDE or Dr. Rice.  (Compl. ¶¶ 39, 62, 76, 90, 104, PageID.6, 9, 10, 12, 14.)

*No Discrimination* — Plaintiffs' Section 504, ADA, PWDCRA, and Fourteenth Amendment claims all fail as Plaintiffs cannot allege discrimination based on their disabilities.  The school closure for in-person instruction was universal—all students were required to adapt to remote learning, not just students with disabilities.  Moreover, Plaintiffs do not allege that MDE or Dr. Rice discriminated against the Plaintiff-students; the Complaint only alleges that the AAPS's actions were discriminatory.  (Compl. ¶¶ 170–71, 183, 189, PageID.25–27.) Accordingly, Plaintiffs fail to state a disability-discrimination claim against the State Defendants.

24

*State Defendants are not "persons" for § 1983* — Count 6 is brought pursuant to 42 U.S.C. § 1983, which provides for constitutional claims against a "person."  MDE and Dr. Rice, acting in his official capacity, are not considered a "person" subject to suit under § 1983. *Will*, 491 U.S. at 70.  Accordingly, Count 6 must be dismissed against the State Defendants.

## CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above, State Defendants respectfully request that the Court grant their motion, dismiss Plaintiffs' case in its entirety and with prejudice, and grant State Defendants such and further relief as the Court deems just and appropriate.

Respectfully submitted,

Dana Nessel
Attorney General

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Assistant Attorney General
Attorney for State Defendants
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603
giovanattin@michigan.gov

Dated:  July 29, 2021

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on July 29, 2021, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to all attorneys of record in this

matter.

/s/ Neil Giovanatti
Neil Giovanatti (P82305)
Assistant Attorney General

26