# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| RITA C. SIMPSON-VLACH *et al.*, | Case No. 21-cv-11532 |
| Plaintiffs, | |
| v. | Judith E. Levy<br>United States District Judge |
| MICHIGAN DEPARTMENT OF EDUCATION, *et al.,* | Mag. Judge Anthony P. Patti |
| Defendants. | |

## ANN ARBOR PUBLIC SCHOOLS DEFENDANTS' MOTION TO DISMISS COMPLAINT

For the reasons set forth in the accompanying brief, Defendants, the Ann Arbor Public Schools ("AAPS" or the "District"), Dr. Jeanice Swift and Dr. Marianne Fidishin )(collectively, the "AAPS Defendants"), respectfully move this Court for an order dismissing all claims asserted in the Complaint against the AAPS Defendants with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). The AAPS Defendants further request such other and further relief as the Court deems just and appropriate.

Pursuant to Local Rule 7.1, the AAPS Defendants' counsel sought Plaintiffs' concurrence with this motion and discussed the nature of the motion and its legal bases. Plaintiffs did not concur with the relief requested in this motion.

Respectfully submitted,

Date: August 19, 2021

By: */s/Richard J. Landau*
Richard J. Landau
**RJ LANDAU PARTNERS PLLC**
*Attorneys for the AAPS Defendants*
5340 Plymouth Rd., Suite 200
Ann Arbor, MI 48105
Phone: (734) 865-1585
rjlandau@rjlps.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RITA C. SIMPSON-VLACH *et al.*,

      Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
EDUCATION, *et al.,*

      Defendants.

Case No. 21-cv-11532

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

## BRIEF IN SUPPORT OF ANN ARBOR PUBLIC
## SCHOOLS DEFENDANTS' MOTION TO DISMISS COMPLAINT

# **TABLE OF CONTENTS**

Concise Statement of Issues Presented……...………………….…..….…......iii

Controlling Or Most Appropriate Authority For Relief Sought……..…….…..v

I.     Preliminary Statement………………………………………………1

II.    Standard of Review……………………………...………………3

III.   Factual Background……………………...….…...……..………..4

     A.     The District's Efforts to Educate Students During
          the COVID-19 Pandemic Emergency:
          March 2020-July 2020…………………………………………4

     B.     The District's Efforts to Educate Students During
          the COVID-19 Pandemic Emergency:
          July 2020-March 2021…………………………………………9

     C.     The District's Efforts to Educate Students During
          the COVID-19 Pandemic Emergency:
          March 2021-August 2021…………………………………..…11

     D.     Factual Background for Named Plaintiffs' Denial
          of FAPE Claims……………………………………………15

IV.    Argument……………………..………………………....…...21

     A.     The District Complied with IDEA as Interpreted
          by its Regulators At All Times During the Period
          of School Closure………………………………………..21

     B.     Factual Developments Have Rendered Whatever
          Arguably Viable Claims for Relief that Plaintiffs
          Might Have Had Moot…………………………………...22

             1.     Plaintiffs' Prayer for a Declaratory Relief
                 that the Students' Pendency Placement is
                 In-Person Instruction is No Longer a

i

Live Controversy…………………………………...24

2.     Plaintiffs' Prayer for Declaratory and
       Injunctive Relief to the Effect that the
       Transition in 2020 from In-Person Instruction
       to Remote Instruction Violated Applicable Law
       is No Longer a Live Controversy ……………………25

3.     Plaintiffs' Prayer for a Special Monitor to
       Oversee the Completion of IEEs Does not
       Address a Live Controversy…………………………..27

C.   The Denial of FAPE Claims Should be dismissed as
     Plaintiffs have Failed to Exhaust their Administrative
     Remedies……………………………………………………....29

D.   Student HP is No Longer an AAPS Student and thus
     Does not Have Standing to Bring a Claim for
     Compensatory Services ………………………………………30

E.   Plaintiffs' RICO Claims are Flawed on Multiple Levels…………..31

F.   Plaintiffs' Remaining Claims Fail Because Plaintiffs
     Cannot Allege Discriminatory Treatment…………………………35

V.   Conclusion…………………………………………………...……35

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

**I.**     Should Plaintiffs' Complaint be dismissed because at all times AAPS has been in compliance with its regulators' interpretation of IDEA and MARSE?

The AAPS Defendants answer: Yes

The Plaintiffs presumably answer: No

**II.**    Should Plaintiffs' Complaint be dismissed because their IDEA claims as well as the relief sought have been mooted by subsequent factual developments?

The AAPS Defendants answer: Yes

The Plaintiffs presumably answer: No

**III.**   Should Plaintiffs' IDEA, Section 504 and PWDCRA claims be dismissed because they have failed to exhaust their administrative remedies?

The AAPS Defendants answer: Yes

The Plaintiffs presumably answer: No

**IV.**    Should all claims asserted on behalf of Student HP be dismissed because she is no longer enrolled in the District?

The AAPS Defendants answer: Yes.

The Plaintiffs presumably answer: No

**V.**     Should the RICO claims asserted in Plaintiffs' Complaint be dismissed because they fail to allege the legal and factual predicates essential to such claims?

The AAPS Defendants answer: Yes

The Plaintiffs presumably answer: No

**VI.**   Should Plaintiffs' remaining claims be dismissed because they cannot allege the discriminatory treatment of students with disabilities?

The AAPS Defendants answer: Yes

The Plaintiffs presumably answer: No

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT

*Bd. of Educ. v. Rowley,* 458 U.S. 176 (1982)

*Mosely v. Hairston,* 920 F.2d 409 (6th Cir. 1990)

*Fry v. Napoleon Cmty. Sch.,* 137 S. Ct. 743 (2017)

*Perez v. Sturgis Pub. Sch.*, 3 F.4th 236 (6th Cir. 2021)

*J.T. v. de Blasio*, 500 F. Supp. 3d. 137 (S.D.N.Y. 2020)

## I.   <u>PRELIMINARY STATEMENT</u>

The AAPS Defendants bring this Motion to terminate a misguided lawsuit that was filed months after the "controversy" Plaintiffs have alleged was put to rest. Specifically, Plaintiffs' primary goal appears to be securing an order from this Court requiring that AAPS implement, on behalf of the student Plaintiffs and the members of the class they purport to represent, Individualized Education Programs ("IEPs") via in-person instruction for the 2021-22 school year. (Compl., Prayer for Relief, ¶ 3, PageID.41). As the District has repeatedly advised Plaintiffs, however, that is precisely what the District announced that it intended to do months ago. In addition, Plaintiffs are seeking a declaration that AAPS's "unilateral change of placement from in-person instruction and services to virtual instruction and services" violated applicable law.  (Compl., Prayer for Relief,  ¶ 4, PageID. 41).

This controversy is similarly bereft of a factual basis. Leaving aside the fact that the District's actions were far from "unilateral," and that Plaintiffs have conceded that none of their students' IEPs required in-person instruction (Compl. ¶¶ 59, 73, 87, 101, PageID.8, 10, 12, 14), any allegation that the District failed to comply with applicable law in its extraordinary efforts to educate students with disabilities during the school closure precipitated by the COVID-19 pandemic emergency is belied by the public record. The District, as will be set forth in more

1

detail below, has made extraordinary efforts to ensure that students with disabilities receive a Free Appropriate Public Education ("FAPE"), as mandated by the Individuals with Disabilities Education Act (IDEA), at all times during this unprecedented crisis.

Moreover, Plaintiffs brought this lawsuit without exhausting their administrative remedies as required by IDEA and both U.S. Supreme Court and Sixth Circuit precedent. The administrative mechanism for adjudicating IDEA disputes, as mandated by the Michigan Administrative Rules for Special Education (MARSE), is the filing of a due process complaint.  While Plaintiffs did purport to file a due process complaint before this litigation was commenced, the circumstances surrounding the filing further emphasize the absence of any controversy amenable to resolution by this Court.

These purported due process complaints were answered before the District was even aware of the instant litigation. Yet in its responses the District voluntarily acceded to virtually all the relief sought by Plaintiffs, with the exception of the payment of their attorney's fees. Why Plaintiffs, by their refusal voluntarily to dismiss this litigation, continue to drain the resources of three governmental entities, and to divert the attention of five of their current and former officials during the process of recovery from an unprecedented pandemic emergency, defies reasonable explanation.

The Complaint itself includes seven claims, alleging violations of (1) IDEA; (2) MARSE; (3) Section 504 of the Rehabilitation Act (Section 504); (4) Title II of the Americans with Disabilities Act (ADA); (5) the Michigan Persons with Disabilities Civil Rights Act (PWDCRA); (6) the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; and (7) the Racketeer Influenced and Corrupt Organizations Act (RICO). The AAPS Defendants concur with the position taken by the Michigan Department of Education (MDE) in its Motion to Dismiss (the "MDE Motion") (Dkt # 20) that the first six claims (hereinafter the "Denial-of-FAPE claims") are all based on the same purported injury—the purported denial of a FAPE to the four student Plaintiffs. (Compl. ¶¶ 138, 151, 155–56, 170–71, 183, 189, 196, 199, PageID.20, 22, 25, 26–27, 29). The AAPS Defendants further concur with the MDE Motion's contention that Plaintiffs' claims are devoid of merit and should be dismissed.

## II.   <u>STANDARD OF REVIEW</u>

The AAPS Defendants adopt and incorporate by reference the Standard of Review set forth in the MDE Motion (pp. 4-5, PageID.211-212).

### III.   FACTUAL BACKGROUND[1]

**A.   The District's Efforts to Educate Students During the COVID-19 Pandemic Emergency: March 2020-July 2020** [2]

AAPS was closed for in-person instruction, effective the afternoon of March 13, 2020, in compliance with Governor Whitmer's Executive Orders. (Swift Decl., ¶ 8). The Governor's Order, and similar orders issued by governors nationwide, was unprecedented in its scope and duration. *Id.* Defendant/Superintendent Dr. Jeanice Swift immediately instructed her administrative team to begin preparations for the challenges of remote instruction for all AAPS students. *Id.*

Superintendent Swift had attempted to prepare families for the challenges of remote instruction even before the school closure was ordered. Her efforts began with a video update dated March 11, 2020. (Swift Decl., ¶ 9). Dr. Swift has provided regular updates to all AAPS stakeholders regarding the District's efforts to address

---

[1] The factual allegations in support of this Motion are principally set forth in the Declarations of Dr. Jeanice Kerr Swift, AAPS Superintendent ("Swift Decl.") and Dr. Marianne Fidishin, Executive Director of Student Intervention and Support Services ("SISS")("Fidishin Decl."). Both declarations are filed herewith.

[2] It is proper in the context of a motion under Rule 12(b)(6) for the Court to take judicial notice of facts which are indisputable because they are capable of reliable determination from resources whose accuracy is not readily questioned, such as a public record. *See, e.g., Western & Southern Life Ins. Co. v. JPMorgan Chase Bank, N.A.,* 54 F. Supp. 3d 888, 898-9 (S.D. Ohio 2014) (citing cases); Fed. R. Evid.201. The meetings of the AAPS Board of Education, as well as the material posted on its website, are all public records.

COVID-19, both in video and through other digital media. *Id.* The video updates are publicly available at: https://www.a2schools.org/domain/4085. *Id.*

The District's efforts to address the challenges presented by the pandemic emergency are further documented in the Superintendent's regular reports to the AAPS School Board conducted at open meetings. These reports are publicly available at: https://www.a2schools.org/domain/4024. (Swift Decl., ¶ 10). Further supplementing these efforts were community information sessions at which the Superintendent or a member of her Executive Leadership Team was available to answer questions from the community regarding the District's efforts to address the pandemic emergency. Recordings of these sessions can be found at: https://www.a2schools.org/Page/17367. *Id.*

The District's efforts to address the challenges of remote instruction began immediately after it had learned that school closures were likely to be ordered in response to the pandemic emergency. By late Spring 2020, the District had developed a Continuity of Learning and COVID-19 Response Plan ("Response Plan"). (Swift Decl., ¶ 11 and Exhibit B thereto). It is publicly available at: https://www.a2schools.org/domain/3929. The Response Plan detailed the process of transitioning from in-person learning to an online setting.

Teachers were instructed to connect daily with their students via messages of care, and to maintain office hours. School social workers, school psychologists,

intervention specialists and others were asked to reach out directly to known vulnerable students and families. (Swift Decl., ¶ 12). In addition, the Response Plan required that teachers, building leaders and staff each week closely monitor the participation of students in remote learning in order to ensure that students were well, able to access learning, and supported to every extent possible. (Swift Decl., ¶ 13).

Defendant Dr. Marianne Fidishin is the Executive Director of Student Intervention and Support Services ("SISS") for AAPS. SISS is the Department within AAPS which is responsible for the delivery of educational services to the District's students with disabilities who qualify for special education and related services under IDEA. (Swift Decl., ¶ 6; Fidishin Decl., ¶ 2).

In broad outline, all students eligible for services under IDEA are required to have developed for them an IEP which specifies the special education and related services to which the students are entitled under IDEA. (Fidishin Decl., ¶ 8). The IEP is developed by a team which includes both staff and parents. *Id.* IDEA requires that the IEP describe a program that provides eligible students with a with a FAPE in the Least Restrictive environment ("LRE"). Simplifying somewhat, in general the LRE is the closest approximation to placement in a regular general education classroom that is possible given the student's individualized needs. *Id; see*

*generally, Endrew F. v. Douglas Cnty. Sch. Dist. RE-1,* 137 S. Ct. 988, 993-4 (2017).

As regards special education students, the Response Plan provided that support staff, including school social workers, school psychologists, speech and language pathologists, as well as physical and occupational therapists, provide services to the extent possible in the form of regular supports and services, lessons/activities via remote learning platforms. SISS was directed to provide summer learning opportunities to special education students, which would include contributions from the support staff described above. (Swift Decl., ¶ 14). The Response Plan also directed SISS to develop processes whereby IEP Team meetings could occur remotely and that student IEPs could continue to be developed and implemented via remote video connections such as Zoom and Google Meet. (Swift Decl., ¶ 15).

Remote learning presented additional obstacles to servicing the needs of certain of the District's special education students. Many of these students had previously received in-person instruction in self-contained program classrooms. (Swift Decl., ¶ 16). A self-contained program is a specific classroom with required staffing and hours of instruction designed to meet the unique needs of special education students who cannot be provided with a Free Appropriate Public Education ("FAPE") in a general education environment. These types of programs

are prescribed by the Michigan Administrative Rules of Special Education ("MARSE"). For example, the specifications for program for students with severe cognitive impairments is described at MARSE R 340.1738. (Swift Decl., ¶ 17; Fidishin Decl., ¶ 10). In the case of the student Plaintiffs, none have placements in a self-contained classroom and all, with the exception of Student HP, who has been placed by her parents in a non-public school, are being educated in a general education environment to the maximum extent possible. (Fidishin Decl., ¶ 11).

In order to address the challenges of the school closure, to the extent remote learning limited the District's ability to fully implement IEPs for certain students, such as those in self-contained classrooms, the initial SISS Plan provided that the District would develop a Good Faith Effort Continuity of Learning Plan ("GFECLP") for such students. The GFECLP would specify those portions of the student's IEP that were amenable to implementation via remote means. (Fidishin Decl., ¶ 13).

Early in the pandemic emergency, SISS developed its own Continuity of Learning Plan. (Fidishin Decl., ¶ 12). The SISS Plan was finalized on April 30, 2020 and its description was communicated to parents through a Frequently Asked Questions document ("FAQ"). (Fidishin Decl., ¶¶ 12, 14 and Exhibit B thereto). The FAQ described how the District intended to meet the needs of special education students during the school closure, including the circumstances under which a

GFECLP would be developed and used. The FAQ also described how related services, such as school social work services and speech and occupational services would be delivered remotely. The FAQ also stated that students would be evaluated for compensatory services after the school closure period prompted by the COVID-19 state of emergency and/or state of disaster ends. (Fidishin Decl., ¶ 15 and Exhibit B thereto).

As a result of the massive undertaking of rescheduling all special education students, providing technology training for staff, and in collaboration the Teachers' Union, related services began to be delivered remotely on May 4, 2020. (Fidishin Decl., ¶ 16). Notwithstanding the challenges of the pandemic and remote learning, the District successfully implemented Extended School Year ("ESY") programs for eligible special education students in the summer of 2020. ESY is a service offered to students who may regress in their educational skills without additional education during the summer. A total of 109 K-12 students participated in the program. (Fidishin Decl., ¶ 17).

## B. The District's Efforts to Educate Students During the COVID-19 Pandemic Emergency: July 2020-March 2021

In July 2020, when it became clear that the metrics associated with COVID-19 infection and spread would not permit in-person learning at the outset of the 2020-21 school year, the District developed the "AAPS Reimagine Learning Plan 2020-21" ("RLP"). The goal of the RLP was to allow for the widest array of options

for remote learning possible while the school closure remained in effect. The full RLP (which is over 80 pages plus appendices) can be found at: https://www.a2schools.org/2020returnplan. (Swift Decl., ¶ 20). The SISS contribution to the plan ("SISS RLP") was set forth in Appendix A. (Fidishin Decl., ¶ 19 and Exhibit C thereto).

The RLP included three modalities of virtual instruction. A2 Student Link would be available for all students. It would provide full, synchronous (i.e., simultaneous instruction as it was delivered by teachers) for all AAPS Students. A2 Classroom Connect would also be utilized and provided for interactive synchronous learning, including the capability to ultimately provide a hybrid (in-person and remote) learning experience. Also available for students in grades six through twelve was A2Virtual, a full virtual, independent, self-paced learning experience. (Swift Decl., ¶ 22).

For students with special needs, including all IDEA eligible students, the RLP provided for specialized supports to be provided. These included learning through synchronous, online instruction with the delivery of services to support the implementation of IEPs. On Wednesday's students would receive additional supports, including paraprofessional support and the provision of related services such as social work and speech and language. Wednesday would also allow teams to meet, including the teams that developed and revised IEPs. (Swift Decl., ¶ 23).

The SISS RLP provided a comprehensive framework for how the District would meet the needs of special education students for the 2020-21 school year. It included a description of how evaluations of student needs would be conducted, the process for conducting remote IEP Team meetings, and how instruction and related services would be delivered. All students were issued devices to allow them to access remote instruction.  For the 2020-2021 school year and beyond, AAPS enrolled students in Preschool through grade two were issued an iPad. Students in grades three through twelve were issued a Chromebook. (Fidishin Decl., ¶ 20).

Parents of students with special needs were invited to participate in an online information session regarding the RLP which was held on September 1, 2020, one week prior to the beginning of the 2020-21 school year. A recording of this session is available at: https://www.a2schools.org/2020InfoSessions. In the session parents were informed that it was the District's goal to fully implement IEPs as designed and written to the greatest extent possible. The District further committed to working collaboratively with parents to develop a robust GFECLP if supports in IEPs couldn't be met in remote learning. (Fidishin Decl., ¶ 21).

### C. The District's Efforts to Educate Students During the COVID-19 Pandemic Emergency: March 2021-August 2021

The District remained closed for in- person instruction until March 25, 2021. At that time, given the availability of vaccines and a reduction in the metrics associated with the spread of COVID-19, the District determined that it was safe to

begin a partial reopening. (Swift Decl., ¶ 25). In preparation for the partial reopening, the District developed a four-stage In-Person Hybrid Learning Plan which reintroduced in-person instruction to the District, in combination with the continuation of remote learning. This process began in phases, beginning with AAPS special education students in self-contained classrooms, effective March 25, 2021. (Swift Decl., ¶ 26).

Self-contained classrooms were prioritized in the Hybrid Learning Plan in light of the particular needs of this population of special education students. Also prioritized in Stage 1 were the District's Young Five year-old students, Kindergarten students and small groups of students in Grades 6-12. (Swift Decl., ¶ 27).

In Stage 2 of the Hybrid Learning Plan in-person instruction was expanded to include first and second grade students effective April 5, 2021. Stage 3 further expanded the reach of the plan to third grade students effective April 12, 2021. Finally, in Stage 4, the District included the balance of AAPS students in fourth, fifth and sixth through twelfth grades. A fuller description of the District's Hybrid Learning Plan can be found at https://www.a2schools.org/hybrid2021. (Swift Decl., ¶ 28).

SISS made special preparations to implement the Hybrid Learning Plan. (Fidishin Decl., ¶ 22 and Exhibit D thereto). Under the Hybrid Learning Plan, SISS

committed to contacting parents to share information and identify returning students by March 17, 2021. SISS also described how hybrid learning would occur in self-contained classrooms. The plan also dealt with such issues as how staff and students would be supported during hybrid learning, as well as how related services and behavioral support services would be delivered. A protocol was described that would facilitate masking for students with disabilities. Finally, samples of the various schedules that would be utilized were provided. (Fidishin Decl., ¶ 23). Approximately 70 per cent of students in self-contained classrooms elected to participate in the in-person instruction portion of the District's Hybrid Learning Plan. The remainder continued to participate by way of remote instruction. (Fidishin Decl., ¶ 24).

In preparation for hybrid learning, extensive efforts were made to make all AAPS buildings as safe as reasonably possible for the return to in-person instruction. All buildings were deep-cleaned and ventilation systems were inspected and upgraded. Markings were placed in the hallways to facilitate social distancing while students moved throughout the buildings. Staff were provided with full access to PPE such as face shields, gowns and gloves as needed to maintain safety. (Swift Decl., ¶ 29).

In implementing the Hybrid Learning Plan students receiving in-person instruction were spaced in the classroom in a socially distanced group. Small group

instruction was available at socially distanced workstations placed within the classroom. A projection screen was used to facilitate the remote display of instructional materials by way of the teacher's laptop and a document imaging camera. Families who elected not to participate in the in-person instruction portion of the plan could still participate in remote instruction as they had previously via a Zoom video link which permitted the display of instructional materials both to "roomies" and "zoomies." (Swift Decl., ¶ 30).

A robust Summer Learning Program was developed for the summer of 2021. This program is described in detail at: https://www.a2schools.org/summer. Eligible special education students were invited to participate in the District's extended school year ("ESY") program, which was held from June 28 through July 29, Monday through Thursdays from 9:00 a.m. to 12:00 p.m. The 2021 Summer Learning Program also offered individualized intensive reading instruction to those special education students who struggled with reading. (Swift Decl., ¶ 31).

In addition, all students with IEPs were invited to participate in the SISS Summer Academy. It operated during the same period as the ESY program but was offered in two 90-minute sessions in the mornings and afternoons. The SISS Summer Academy offered targeted instruction as well as related services and recovery services in areas including: Literacy, Math, Language Skills, Social and coping skills, fine motor skills and support for preschool students. (Swift Decl., ¶

32). Services were offered both in an in-person and remote format. 106 preschool students participated in the Summer Academy, 64 of whom elected to attend in person. An additional 132 students in grades K-12 attended the Summer Academy, 60 of whom elected to attend in-person. (Fidishin Decl., ¶ 26).

On February 24, 2021 Dr. Swift announced that the District intended to fully reopen for in-person instruction for the 2021-22 school year. The new school year will begin on August 30, 2021. The District intends to operate to the greatest extent possible as it had before the pandemic emergency, while taking reasonable precautions to protect its students and staff. The District further intends to fully implement all student IEPs as written via in-person instruction and in-person delivery of related services. Families that prefer virtual instruction will be provided with that option as well. (Swift Decl., ¶ 33; Fidishin Decl., ¶ 50).

### D.    Factual Background for Named Plaintiffs' Denial of FAPE Claims

Every special education student enrolled in the District, including the student Plaintiffs, had at least one IEP Team meeting during the course of the school closure. (Fidishin Decl., ¶ 48). Moreover, District staff were required at each IEP Team meeting held both before and after the school closure, to provide families with a copy of the Procedural Safeguards Notice mandated by IDEA and distributed by MDE. (Fidishin Decl., ¶ 48 and Exhibit M thereto). The Notice of Procedural

Safeguards includes an extensive discussion of the procedures for filing a due process complaint. (*See* Exhibit M to Fidishin Decl., pp. 30-32.)

No family other than the families of the four Plaintiffs has elected to file a due process complaint challenging the District's efforts to comply with IDEA during the pandemic emergency. Similarly, at no time has MDE, WISD, or USDOE ever found that the District's handling of the pandemic emergency raised issues of non-compliance with IDEA or MARSE. (Fidishin Decl., ¶ 49).

Student HP is no longer enrolled in the District. She was withdrawn in January 2021 and on information and belief attends the Daycroft Montessori School, a private program located within the Dexter Community School District. (Fidishin Decl., ¶ 28). Plaintiffs have failed to attach to their Complaint the Nonpublic Student Special Education Service Plan for Student HP, which is dated February 2021. (Fidishin Decl.¶ 29 and Exhibit E thereto). Plaintiffs have conceded the fact that none of their students' IEPs required in-person instruction (Compl. ¶¶ 59, 73, 87, 101, PageID.8, 10, 12, 14).

IDEA, under certain limited circumstances, permits a family to recover the cost of private schools from the student's school district. The IDEA regulations, however, specifically 34 CFR § 300.148(d)(1)(ii), also make it clear that such reimbursement can be reduced or denied if the family fails to give the district ten days notice prior to the student's removal from school. (Fidishin Decl., ¶ 31).

In the case of Plaintiffs, by correspondence dated June 25, 2021, their counsel sent to Dr. Swift's attention four letters that were styled: "Ten Day Notices." Each letter was identical for the four plaintiff students. (Fidishin Decl., ¶ 32 and Exhibit G thereto). Student HP's Ten Day Notice letter was not received prior to her removal from the District. *Id.* Student HP has not been re-enrolled in the District. *Id.*

The Ten Day Notice letters also requested that the District provide each Plaintiff student with an Independent Educational Evaluation at the District's expense ("IEE"). (Fidishin Decl., ¶ 33). After receipt of the letters from Plaintiffs' counsel, Dr. Fidishin instructed the District's counsel to respond in writing. He drafted four responses, dated June 29, 2021, which were also identical. (Fidishin Decl., ¶ 34 and Exhibit H thereto). In the letters, the District denied the request for an IEE, citing MARSE Rule R 340.1732 and 34 CFR § 300.502(b)(1). The District also relied on guidance issued by MDE dated August 24, 2020. *Id.* In particular, the District informed Plaintiffs' counsel that the applicable legal authorities only authorized an IEE in circumstances where a family disagreed with an evaluation conducted by the District. Since the District had not yet evaluated the students for eligibility for compensatory services, the families' requests for IEEs were premature. (Fidishin Decl., ¶ 35).

17

The District further advised Plaintiff's counsel that the District would evaluate the four students for potential eligibility for compensatory services. These evaluations will be scheduled to occur shortly after school begins for the 2021-22 school year. (Fidishin Decl., ¶ 36).  Regardless of Plaintiffs' requests for an IEE, the District had intended to evaluate all special education students for their potential eligibility for compensatory services at their annual IEP reviews to be completed by the end of the 2021-22 school year. *Id*. In the event the Plaintiffs disagree with the results of these evaluations, the District could then properly consider the Plaintiffs' request for an IEE. *Id.*

Shortly after receipt of the Ten Day Notice letters, on June 29, 2021, four new letters, which Plaintiffs intended to be treated as due process complaints, were directed to Dr. Swift's attention. She forwarded them to Dr. Fidishin for response. They too were identical. (Fidishin Decl., ¶ 37 and Exhibit J thereto). In order to be deemed properly filed, MARSE Rule R 340.1724f provides that a party may request a hearing on a due process complaint. This requires that the complaint be served both on MDE as well as the school district in question. *Id.* Plaintiffs failed to comply with this procedure and only served the proposed due process complaints on the District. (Fidishin Decl., ¶ 38). MDE only received the four complaints on August 6, 2021 and the prehearing conference on the four complaints will not be held until August 23, 2021. (Fidishin Decl., ¶ 38 and Exhibit K thereto).

18

MARSE and IDEA require that the parties hold a resolution session within 30 days after receipt of the due process complaint. MARSE and IDEA further require that a final decision on a due process complaint be issued not later than 45 days after the 30-day period for the resolution process has ended. (Fidishin Decl., ¶ 39). Dr. Fidishin instructed District counsel to respond to the due process complaints immediately following their receipt. The responses were dated July 1, 2021 and once again these were identical. Such responses are authorized under 34 CFR § 300.508(e). (Fidishin Decl., ¶ 40 and Exhibit L thereto).

Plaintiffs' counsel made five substantive requests for relief in their due process complaints. The District's counsel responded to each request for relief in the July 1, 2021 letters. (Fidishin Decl., ¶ 41). First, Plaintiffs requested that an immediate order be issued requiring the District to immediately implement the last agreed upon IEP for the students. The District responded by advising that the District planned to reopen on August 30, 2021 for full in-person instruction and that such relief was thus unnecessary. (Fidishin Decl., ¶ 42).

Second, Plaintiffs requested that an order be issued requiring the District to reimburse the Parent for the cost of any and all services unilaterally provided to the Student, as mandated by the Student's IEP, during the period of time that the District failed to provide same. The District responded by noting that while the District was aware of no authority that required such relief, it was willing to

consider the request upon Plaintiffs' counsel furnishing the District with documentation regarding the expenditures incurred by the parent in conjunction with the services described. To date the District has received no such documentation. (Fidishin Decl., ¶ 43).

Third, Plaintiffs' counsel requested an order requiring that the District provide the students with IEEs concerning their eligibility for compensatory services. The District's responded by stating, as it had in the response to the Ten Day Notice letters, that this request was premature as the District already intended to conduct its own evaluations concerning this issue. (Fidishin Decl., ¶ 44).

Fourth, Plaintiffs' counsel requested an order declaring that the District had denied the students a FAPE and determine appropriate compensatory services due to the denial of FAPE. The District responded by indicating that the subject of eligibility for compensatory services would be the subject of the forthcoming evaluations which had been offered in the District's response to the Ten Day Notice letters. (Fidishin Decl., ¶ 45). Finally, Plaintiffs requested an order requiring that the District pay Plaintiffs' attorney's fees and expenses. The District responded by indicating that the requirements for such a request had not been met. (Fidishin Decl., ¶ 46).

As provided by IDEA, specifically 34 CFR § 300.510, the District indicated to Plaintiff's counsel that the District was willing to participate in a resolution

session for the purposes of attempting to resolve the issues raised in each of the due process complaints. Alternatively, the District proposed that the parties participate in a mediation process pursuant to 34 CFR §300.506. To date Plaintiffs' counsel has not responded to this offer. (Fidishin Decl., ¶ 47).

## IV.   ARGUMENT

### A.   The District Complied with IDEA as Interpreted by its Regulators At All Times During the Period of School Closure

As has been set forth in detail above, the District has engaged in a 17-month effort to address the needs of its students, including its special education students, during the course of the COVID-19 pandemic emergency. It is important to note that the District's actions were far from "unilateral" as alleged by Plaintiffs. Rather, AAPS is but one segment of a heavily regulated governmental activity which is overseen by numerous government regulators. These include USDOE, MDE and the WISD. AAPS has continually reviewed the guidance provided by its regulators and made every effort to remain in compliance with this guidance. *See generally,* Fidishin Decl.

At no time have any of its regulators found the District to be in non-compliance with IDEA or MARSE with regard to its efforts to address the needs of its special education students during the course of the pandemic emergency. (Fidishin Decl., ¶ 49). Plaintiffs, in effect, are improperly attempting to relegate to themselves the authority to enforce an interpretation of the law that the District's

regulators have refused to adopt. It is appropriate for this Court to defer to the District's regulators' interpretation of IDEA and MARSE, rather than that of Plaintiffs. *See, e.g., Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982)(Judicial review of decisions by educational authorities "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.")

Despite the prolix allegations included in their Complaint, Plaintiffs have not cited any authority or finding from any of AAPS's regulators, including USDOE, which even suggests, much less proves, that the District has not been in full compliance with the requirements of IDEA and MARSE. Indeed, the only parties to this litigation who have not complied with IDEA and MARSE are Plaintiffs, who have elected to bring this litigation prior to exhausting their administrative remedies, a critical defect that will be discussed in more detail below. Thus, the fundamental assumption upon which Plaintiffs' claims are based is defective and their claims must be dismissed.

### B.     Factual Developments Have Rendered Whatever Arguably Viable Claims for Relief that Plaintiffs Might Have Had Moot

It is axiomatic that, in order for the federal courts to have subject matter jurisdiction over a case, Article III of the Constitution requires that there must in fact be a live case or controversy to adjudicate. *Mosely v. Hairston,* 920 F.2d 409, 414 (6th Cir. 1990). Absent such a case or controversy, the matter is subject to

dismissal pursuant to Rule 12(b)(1) as moot. When the Plaintiffs' law firm initially brought its farfetched legal theories before a federal court for judicial review in *J.T. v. de Blasio,* 500 F. Supp. 3d. 137 (S.D.N.Y. 2020) back in July 2020, the pandemic was raging and schools throughout the country were shut down for in-person instruction. Yet even then Judge McMahon recognized that the New York plaintiffs were properly dismissed. *Id.*

Since then, as illustrated by the factual developments described above, there has been a sea change both in the nation's ability to address the pandemic emergency, as well as the ability of educators to adapt to the challenges presented by the emergency. Indeed, the situation had improved sufficiently by February 2021 for the District to announce its re-opening for full in person instruction for the 2021-22 school year. Undaunted by the easing of the pandemic and the re-opening of the District, Plaintiffs have elected to bring to Michigan virtually identical claims to those they brought in New York during the height of the pandemic emergency and to specifically target the Ann Arbor Public Schools, which will shortly once again be open for in-person instruction. The result here should be no different than it was in New York, with the added admonition that any substantive issues raised here are moot.[3]

---

[3] Plaintiffs' persistence in pursuing these moribund theories is noteworthy and unlikely to be abated until they are decisively addressed by the federal judiciary. The docket in the *de Blasio* matter contains over 200 entries. The appellate docket

In order to address the mootness of each of the "prayers for relief" presented in Plaintiffs' Complaint, they will be addressed separately below.

> ### 1. Plaintiffs' Prayer for a Declaratory Relief that the Students' Pendency Placement is In-Person Instruction is No Longer a Live Controversy

Plaintiffs' first substantive prayer for relief is as follows: "Issue a declaratory judgment that the class members' pendency placement is in-person instruction and services." (Compl., Prayer for Relief, ¶ 3, PageID.41). This relief is clearly no longer necessary.[4] As has been repeatedly stated, the District had announced its fall

---

developed following the New York plaintiffs' appeal to the Second Circuit contains over 270 entries and is still growing. *J.T. v. de Blasio,* United States Court of Appeals for the Second Circuit, Case No. 20-4128 (December 14, 2020). Moreover, belying Plaintiffs' counsel's representation at the August 9, 2021 status conference in this matter that he is not involved in the New York litigation, Mr. Bellantoni is counsel of record on the Second Circuit appeal.

[4] One exception to the mootness doctrine, applicable in instances where there has been a voluntarily cessation of the challenged conduct, is the familiar dictum "capable of repetition, but evading review." That exception is not applicable here. The facts and circumstances about which Plaintiffs are complaining unquestionably occurred during "a time of unprecedented national emergency" and are thus highly unlikely to be repeated. USDOE Supplemental Fact Sheet, p. 2 (Dkt # 1-5; PageID.112). Pandemic emergencies, by their nature, are rare events. The "capable of repetition" exception does not apply if a defendant can demonstrate that there is no reasonable expectation that the "wrong" will be repeated. *Mosely,* 920 F.2d at 415 (citing cases). Moreover, government officials receive "more solicitude" on this point than do private parties. *Ammex, Inc. v. Cox,* 351 F.3d 697, 705 (6th Cir. 2003). Finally, the factual developments here moot not only the class representatives' claims, but the claims of all members of the putative class. *See, e.g., Azar v. Garza,* 138 S. Ct. 1790, 1791-93 (2018)(per curiam); *Kremens v. Bartley,* 431 U.S. 119, 132 (1977).

2021 re-opening for in-person instruction months prior to the filing of this case. Moreover, in response to the purported due process complaints sent by Plaintiffs' counsel in late June 2021, the District reiterated in the particular case of the student Plaintiffs here that their IEPs would be implemented via in-person instruction as of August 30, 2021. (Fidishin Decl., ¶ 42 and Exhibit L thereto). Moreover, even assuming the pandemic were to amplify and once again require a school closure, Plaintiffs have admitted that their IEPs do not mandate in-person instruction. (Compl. ¶¶ 59, 73, 87, 101, PageID.8, 10, 12, 14). Plaintiffs thus have pled no facts which establish that the relief they are requesting is necessary to address a live controversy.

**2. Plaintiffs' Prayer for Declaratory and Injunctive Relief to the Effect that the Transition in 2020 from In-Person Instruction to Remote Instruction Violated Applicable Law is No Longer a Live Controversy**

Plaintiffs' second substantive prayer for relief is: "Issue a declaratory judgment that AAPS and other similarly situated LEAs' unilateral change of placement of plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against plaintiffs under IDEA, MARSE, § 504, the ADA, the Michigan Act and § 1983." (Compl., Prayer for Relief, ¶ 4, PageID.41). This prayer for relief is properly read in tandem with Plaintiffs' companion requests for an injunction to require the in-person instruction of special education students in the event of future closures if

USDOE does not waive IDEA requirements. (Compl., Prayer for Relief, ¶¶ 6 and 8, PageID.41-42). These prayers for relief, by their plain language, are not merely moot, if granted they could place the District in an untenable and dangerous position in the unlikely event of a future pandemic emergency.

At the outset in must be noted that any declaration proposed to this Court, which is based on the contention that the District's transition from in-person to remote instruction in March 2020 was "unilateral," is contradicted by the undisputed facts of the pandemic emergency in Michigan. Governor Whitmer issued an executive order to all school districts in Michigan that they be closed in March 2020. Subsequent orders were issued by the Governor and guidance was provided by the District's regulators, MDE and USDOE.[5] This guidance prescribed how school closures should be addressed by local school districts, including AAPS, so as to remain in compliance with IDEA and MARSE.  Given that AAPS is scheduled to re-open for in-person instruction on August 30, 2021, much of this guidance has been superseded by events, rendering the issue of past compliance moot.

In light of these factual developments, what Plaintiffs are requesting is that this Court proactively declare that the District will be in violation of federal law if

---

[5] This guidance can be found at: https://www.michigan.gov/mde/0,4615,7-140-37818_53456_98453-523558--,00.html (MDE); https://www.ed.gov/coronavirus (USDOE).

it fails to continue in-person instruction for special education students in the unlikely event of a recurrence of the circumstances associated with the early pandemic school closures. By its plain terms such relief would require, absent USDOE issuing waivers of IDEA requirements, that the District must re-open for in-person instruction of special education students notwithstanding any future guidance or command of state or local governmental authorities to the contrary. Such breathtaking relief is what Plaintiffs, against reason and common sense, would have this Court declare is necessary in order to comply with their wrongheaded contention that IDEA requires in-person instruction at all times.

Such relief is thus not merely moot, granting it could have life-threatening consequences for the District's staff and special education students in the unlikely event of a future pandemic emergency and governmentally mandated school closures. The relief requested has thus been mooted by subsequent events and is fraught with potentially catastrophic unintended consequences regardless.

### 3. Plaintiffs' Prayer for a Special Monitor to Oversee the Completion of IEEs Does not Address a Live Controversy

Plaintiffs' other IDEA-related prayer for relief requests the completion of IEEs for the student plaintiffs and members of the class. (Compl., Prayer for Relief, ¶ 7, PageID.42). The issue of IEEs for plaintiffs and their putative class was never a live issue because, by the plain language of this procedural safeguard in the IDEA regulations and MARSE, such a request is premature. MARSE states: "A parent has

the right to an independent educational evaluation at public expense <u>if the parent</u> <u>disagrees with an evaluation obtained by the public agency.</u>" Rule R 340.1723c (emphasis supplied). The IDEA regulations contain virtually identical language and similarly require parental disagreement with a school district's evaluation to trigger the right to an IEE. 34 CFR § 300.502(b).

Early in the pandemic, MDE provided guidance regarding the proper time for a district to evaluate a student for compensatory services. (Fidishin Decl., ¶ 30 and Exhibit F thereto). The Guidance stated:

> Information needed to make this determination will likely not be known until after the interruption in services has ended. <u>Thus, the most</u> <u>appropriate time for the IEP team to determine the need for</u> <u>compensatory education or the need for the review and revision of a</u> <u>student's IEP will be when districts return to normal operation.</u>

*Id.* at 6 (emphasis in original). Thus, consistently with this guidance, prior to the filing of this litigation and following Plaintiffs' request for IEEs in their Ten Day Notice letters, the District informed counsel for Plaintiffs that their request for an IEE was premature. (Fidishin Decl., ¶ 35). The District further informed counsel for Plaintiffs that their students would be evaluated for potential eligibility for compensatory services upon the resumption of the 2021-22 school year. (Fidishin Decl., ¶ 36).

Consistent with MDE's guidance, the District had intended to similarly evaluate all special education students for potential eligibility for compensatory

services by the end of the 2021-22 school year. (Fidishin Decl., ¶ 36). Plaintiffs'

prayer for relief as regards IEEs is thus not yet ripe for determination and therefore

presents no case or controversy for this Court to adjudicate.[6]

### C. The Denial of FAPE Claims Should be dismissed as Plaintiffs have Failed to Exhaust their Administrative Remedies

The MDE Motion argues that the Complaint should be dismissed on the

grounds of failure to exhaust administrative remedies. The AAPS Defendants

incorporate by reference MDE's arguments herein. (MDE Motion, Dkt. # 20, pp. 9-

13; PageID.217-220). In addition, the AAPS Defendants would note that the

purported due process complaints filed by Plaintiffs uncontestably assert claims

which, to the extent they are not moot, could be addressed by an Administrative

Law Judge appointed by Michigan Office of Administrative Hearings and Rules.

(Fidishin Decl., ¶¶ 37, 38 and Exhibits J and K thereto). Thus, under the authority

of *Fry v. Napoleon Cmty. Sch.,* 137 S. Ct. 743 (2017) and *Perez v. Sturgis Pub.

Sch.,* 3 F.4th 236 (6th Cir. 2021), Plaintiffs' Denial of FAPE claims should be

dismissed for failure to exhaust administrative remedies.[7]

---

[6] The remaining substantive prayer for relief implicates RICO rather than the Denial of FAPE claims. RICO will be discussed separately below. (Compl., Prayer for Relief, ¶ 9, PageID.42).

[7] To the extent Plaintiffs are relying on *D.R. v. Michigan Dep't of Ed.,* No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017) as support for their failure to exhaust administrative remedies, this decision is not precedent, has never been reviewed by the Sixth Circuit and is contrary to settled Sixth Circuit precedent.

**D.     Student HP is No Longer an AAPS Student and thus Does not Have Standing to Bring a Claim for Compensatory Services**

Student HP is no longer enrolled in the District. She was withdrawn in January 2021 and on information and belief attends the Daycroft Montessori School, a private program located within the Dexter Community School District. (Fidishin Decl., ¶ 28). Pursuant to 34 CFR § 300.137 students who have been voluntarily placed in a private program do not have an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school. Rather, they are entitled to have developed a Nonpublic Student Special Education Service Plan. In February 2021 the District developed a Nonpublic Student Special Education Service Plan for Student HP. (Fidishin Decl., ¶ 29 and Exhibit E thereto). Similarly, non-public students have no right to file a due process complaint on issues other than the initial identification of students eligible for special education (known as child find requirements). 34 CFR § 300.140.

In May 2020 MDE provided guidance on how to address requests for compensatory services on behalf of non-public students such as Student HP. (Fidishin Decl., ¶ 30 and Exhibit F thereto). At page 23 of the Guidance MDE, consistently with the IDEA regulations, MDE stated: "A student with a disability parentally placed in a non-public school is not entitled to FAPE, ESY services or compensatory education services." *Id.* Moreover, while IDEA, under certain limited

circumstances, permits a family to recover the cost of private schools from the student's school district, the IDEA regulations, specifically 34 CFR § 300.148(d)(1)(ii), also make it clear that such reimbursement can be reduced or denied if the family fails to give the district ten days notice prior to the student's removal from school.

In the case of Plaintiffs, by letters dated on June 25, 2021, Plaintiffs' counsel sent four letters that were styled: "Ten Day Notices." Each letter was identical for the four plaintiff students. The letter received for Student HP was not received until months after her removal from the District. She has not been re-enrolled in the District. (Fidishin Decl., ¶ 32 and Exhibit G thereto). Student HP is thus in a demonstrably different legal position than are the other Plaintiff students and does not have standing to assert the claims in Plaintiffs' Complaint. Student HP's claims thus should be dismissed for this reason alone.

### E.   Plaintiffs' RICO Claims are Flawed on Multiple Levels

The MDE Motion argues that the RICO claims asserted in the Complaint should be dismissed on various grounds, as they were by Judge McMahon in *de Blasio.* The AAPS Defendants incorporate by reference MDE's arguments herein. (MDE Motion, Dkt. # 20, pp. 13-23; PageID.220-230). In addition, the AAPS Defendants would note that Plaintiffs have not properly characterized the nature of

31

the special education funding process in Michigan, nor identified with particularity any representations made by the District in securing this funding.

In *de Blasio* Judge McMahon held that RICO allegations should be pled with particularity, as required by Fed. R. Civ. P. 9(b). *de Blasio*, 500 F.Supp.3d at 170. Yet the operative allegations against Drs. Swift and Fidishin are all prefaced with the phrase "on information and belief." (Complaint, ¶¶ 220-223, PageID.32-33). Plaintiffs thus have not pled fraud with any particularity as regards the AAPS Defendants, which is not surprising since it is self-evident that no fraud occurred.

Judge McMahon succinctly summarized why Plaintiffs' RICO claims were subject to dismissal in *de Blasio*:

> The essence of the alleged frauds that constitute the RICO predicate acts in this case is the receipt of federal funds by the school district defendants for special education purposes without intending to abide by the IDEA and other federal regulations touching on the education of disabled students. But no facts asserted in the RICO Case Statement support a conclusion that any School District — let alone every one in the United States … accepted federal funds for special education purposes while knowing that (1) there was going to be a massive worldwide pandemic, resulting in millions of cases of illness and hundreds of thousands of deaths in this country alone; (2) in response to that pandemic, and in an effort to provide for physical safety of students and educators, states would issue emergency orders directing school districts to close down as a public health measure; or (3) in complying with those orders, school districts would necessarily and knowingly violate the IDEA's substantive and procedural requirements, including its stay-put rules. The utter implausibility of such a contention speaks for itself. No one knew that there was going to be a pandemic; it took the entire world by surprise. No one knew how fast or how far it would spread; no one knew what public health response it would require; no one knew how quickly emergencies

would arise; no one knew how states would in fact respond to the imminent danger they confronted. Therefore, it cannot be plausibly alleged that the school districts took IDEA funds with the intent to defraud anyone.

*de Blasio,* 500 F.Supp.3d at 170-71.[8] This reasoning applies to the instant litigation with equal if not greater force.

Moreover, the more specific allegations Plaintiffs have made in their Complaint regarding the IDEA funding process in Michigan are demonstrably false. For example, in paragraph 246 of the Complaint Plaintiffs state: "Upon information and belief, AAPS received the IDEA funds from the WISD and used them for unlawful purposes, including but not limited to purchasing personal protective equipment for all staff and students." (Complaint, ¶ 246, PageID.38). This allegation, though prefaced with Plaintiffs' typical "on information and belief" qualification, is factually incorrect in a number of respects. As required by MARSE Rule R 340.1808, AAPS applies for IDEA grant funds by submitting itemized and specific planned uses in the form of a budget (along with other application

---

[8] Contrary to the representations made by counsel at the August 9, 2021 status conference in this matter, Plaintiffs have not cured the defects noted by Judge McMahon by predicating their RICO claims in Michigan on the receipt of IDEA funds, rather than Medicaid funds as they had in New York. The above-excerpted language makes clear that Judge McMahon's conclusions were broadly addressed to allegations of misspent "federal funds," including IDEA funds, not simply Medicaid funds.

requirements). MDE reviews the submission, and if they approve, awards the grant. (Swift Decl., ¶ 36).

In turn, AAPS spends funds according to the detailed, specific planned purchases itemized in that budget pre-approved by MDE. AAPS then requests reimbursement from WISD by submitting copies of general ledgers and supporting documentation such as copies of purchase orders and paid invoices. WISD then reviews the expenditures for compliance with the budget and planned purchases. If the purchases comply, WISD approves reimbursement and wires the funds to AAPS. (Swift Decl., ¶ 37).

The 2020-21 AAPS IDEA grant budget contradicts any allegation that IDEA funds were used to purchase PPE.  (Swift Decl., ¶ 38 and Exhibit D thereto). Contrary to the claim in paragraph 246 of the Complaint, the approved purchases did not include purchasing personal protective equipment for all staff and students. Even if AAPS had included PPE, WISD would not have approved or provided reimbursement because it was not an approved expense in the pre-approved budget, and AAPS would have been prevented from accessing IDEA funds for the purchase. (Swift Decl., ¶ 38).

These defects in Plaintiffs' RICO allegations appear not merely incidental or based on misunderstandings of applicable law. Rather, Judge McMahon's conclusion as regards the RICO claims in *de Blasio* is equally applicable here: [T]he

RICO allegations here asserted reek of bad faith and contrivance. … This effort to inject racketeering into what is simply an IDEA lawsuit is bad faith pleading writ large." *de Blasio,* 500 F.Supp.3d at 172.

> **F.     Plaintiffs' Remaining Claims Fail Because Plaintiffs Cannot Allege Discriminatory Treatment**

The remaining claims asserted by Plaintiffs against the District are grounded in allegations of discrimination pursuant to (1) Section 504; (2) ADA); (3) PWDCRA) and (4) the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 170-71, 183, 189, 170–71, 183, 189, PageID.25–27). As set forth in the MDE Motion, however, the AAPS school closure for in-person instruction was universal—all students were required to adapt to remote learning, not just students with disabilities. *See generally,* Swift Decl. Thus, students with disabilities were treated no differently by the District than students generally during the period prior to its planned full reopening for in-person instruction. Plaintiffs' claims grounded in discriminatory treatment thus fail and are properly dismissed.

## V.     <u>CONCLUSION</u>

For the above stated reasons, the AAPS Defendants respectfully request that Plaintiffs' Complaint be dismissed with prejudice.

Respectfully submitted,

Date: August 19, 2021                    By: */s/Richard J. Landau*
                                         Richard J. Landau

**RJ LANDAU PARTNERS PLLC**

*Attorneys for the AAPS Defendants*
5340 Plymouth Rd., Suite 200
Ann Arbor, MI 48105
Phone: (734) 865-1585
rjlandau@rjlps.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record in this matter.

By: */s/ Richard J. Landau*
    Richard J. Landau (P42223)