UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA C. SIMPSON-VLACH, ALAN
SIMPSON-VLACH, on behalf of
A.S and M.S., and individually,
KATHY BISHOP, CHRISTOPHER
PLACE, on behalf of C.P. and H.P.,
and individually,

                Plaintiffs,

v

MICHIGAN DEPT. OF EDUCATION,
ANN ARBOR PUBLIC SCHOOLS,
WASHTENAW ISD, DR. JEANICE
SWIFT, in her official capacity, DR.
MARIANNE FIDISHIN, in her official
capacity, SCOTT MENZEL, in his official
capacity, NAOMI NORMAN, in her official
capacity, and MICHAEL F. RICE, PH.D.,
in his official capacity,

                Defendants,

_____/

Judge Judith E. Levy
Magistrate Judge Anthony P. Patti
No. 21-11532

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (b)(6)**

Charlotte G. Carne (P61153)
Brain Injury Rights Group
*Attorney for Plaintiffs*
300 East 95th Street, Ste. 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

Richard J. Landau (P42223)
RJ Landau Partners PLLC
*Attorney for Defendants, Ann Arbor Public Schools, Dr. Jeanice Swift and Dr. Marianne Fidishin*
5340 Plymouth Rd., Suite 200

Timothy J. Mullins (P28021)
John L. Miller (P71913)
Travis M. Comstock (P72025)
Giarmarco, Mullins & Horton, P.C.
*Attorneys for Defendants, Washtenaw ISD, Scott Menzel and Naomi Norman*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com
tcomstock@gmhlaw.com

Ann Arbor, MI 48105
(734) 865-1585
rjlandau@rjlps.com

Neil Giovanatti (P82305)
*Attorney for Michigan Dept. of Education*
Assistant Attorney General Health, Education
 & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov

---

# WASHTENAW INTERMEDIATE SCHOOL DISTRICT'S MOTION (WITH INCORPORATED BRIEF) TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (b)(6)

---

**Statement Regarding Concurrence Under LR 7.1(a):** On August 16, 2021, Travis Comstock (72025) contacted Plaintiffs' counsel by email, apprised them of the nature and basis for the motion, and sought concurrence, and then followed with a phone call to Plaintiffs' counsel on August 18, 2021, and Plaintiffs' counsel denied concurrence.

## QUESTION PRESENTED FOR REVIEW

**ISSUE ONE:** Under the Individuals with Disabilities Education Act, a Plaintiff must exhaust administrative remedies before maintaining a disability discrimination lawsuit. 20 U.S.C. § 1415(l). In this case, neither Plaintiffs nor any putative class member exhausted their administrative remedies; as such, should Plaintiffs' lawsuit be dismissed?

**ISSUE TWO:** A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v Iqbal*, 129 S Ct 1937, 173 L Ed 2d 868 (2009). In this case, Plaintiffs' Complaint alleges "systemic violations" of the IDEA, claims under the American Disabilities Act, Rehabilitation Act, 14th Amendment, and Racketeer Influenced and Corruption Act, along with state law claims. Plaintiffs, however, do no more than indicate a handful of alleged *individual* violations of the IDEA resulting from Michigan's Governor's health and safety Executive Orders issued in response to the COVID-19 pandemic. Should Plaintiffs' claims be dismissed for failure to state claims on which this Court may grant relief?

## STATEMENT OF MOST CONTROLLING AUTHORITY

**Most Controlling Authority for Issue One:** 20 U.S.C. § 1415(i)(2)(A)(statutorily requiring exhaustion); *Fry v. Napoleon Cmty. Sch.,* 788 F.3d 622, 626 (6th Cir. 2015) (explaining and reaffirming exhaustion requirement); *Perez v Sturgis Pub Sch,* 3 F.4th 236 (6th Cir., June 25, 2021) (holding that the Individuals with Disabilities Education Act's (IDEA) exhaustion provision does not come with futility exception); *Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989) (explaining the important public policy behind requiring exhaustion of IDEA remedies); *S.E. v. Grant County Board of Education,* 544 F.3d 633 (6th Cir. 2008) (explaining that exhaustion is not futile "when a plaintiff has alleged injuries that could be addressed to ***any degree*** by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required") (emphasis added).

**Most Controlling Authority for Issue Two:** *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007); *Hernandez v. Grisham*, 508 F.Supp.3d 893 (D.N.M. 2020) (no violation of 14th Amendment from public health closure of schools due to COVID-19); *J.T. v DeBlasio*, 500 F.Supp.3d 137 (S.D.N.Y. 2020) (holding Plaintiffs' counsel's RICO claims "reek of bad faith and contrivance").

## INTRODUCTION

Purporting to represent a putative class, four individual students filed this suit alleging that the Michigan Department of Education ("Department"), the Washtenaw Intermediate School District ("Washtenaw"), and Ann Arbor Public Schools ("Ann Arbor") "systemically" violated the Individuals with Disabilities Act ("IDEA") and other state and federal laws. No named Plaintiffs attended Washtenaw. Plaintiffs' allege that they were impacted by the *Governor's* March 2020 mandated school closures – due to the unprecedented and extraordinary COVID-19 pandemic – and that this somehow violated the IDEA. And, for the 2020-21 school year, the alleged injuries reoccurred due to temporary school closures during which IDEA programs and services were delivered remotely.

This Complaint simply repackages the one filed by Plaintiffs' counsel that the Southern District of New York emphatically rejected. *J.T. v deBlasio*, 500 F.Supp.3d 137 (S.D.N.Y. 2020). As in that case, the Plaintiffs failed to exhaust their administrative remedies, and no exception recognized applies. Alternatively, the § 504, ADA, and state law claims should be dismissed because they fail to state claims for relief. Importantly, the New York court rejected a similar 'stay put'/ pendency claims allegedly triggered by state COVID-19 school closure orders. As in *J.T.*, the "Plaintiffs' RICO claim fails in every particular" and "reek[s] of bad faith and contrivance." This Court should dismiss the Complaint for the same reasons.

**FACTS**

## 1.  THE IDEA AND THE PROVISION OF SPECIAL EDUCATION SERVICES

In passing the IDEA,[1] Congress "intended to open the door of public education to all qualified children and required participating States to educate handicapped children with nonhandicapped children whenever possible." *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.,* 526 U.S. 66, 78 (1999) (citations and internal markings omitted). The statute "leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, [but] imposes significant requirements to be followed in the discharge of that responsibility." *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 52 (2005) (citation omitted).

The IDEA places responsibility for providing required programs and services upon states and school districts. Relevant to this action is the statutory requirement that both states and school districts create administrative procedures to review decisions regarding the "identification, evaluation, . . . educational placement, or the

---

[1] While Plaintiffs are bringing this action as a putative class action, the reality is that, under state and federal law, every student must be treated as an *individual* based upon his/her own unique abilities, disabilities, and circumstances. As stated by Chief Judge Colleen McMahon, in an opinion dismissing Plaintiffs' counsel's previous effort to sue *every* school district and department of education in America, "It is obvious that this is no class action at all, but rather tens of thousands of individual cases that Plaintiffs' counsel has tried to amalgamate into a single lawsuit." *J.T.*, 500 F. Supp. 3d at 159.

provision of free appropriate education." 20 U.S.C. § 1415(b)(1)(E). Michigan implements these requirements through the Michigan Mandatory Special Education Act ("MMSEA"), Michigan Compiled Laws § 380.1701, et. seq. Michigan regulations provide that state agencies are also bound by federal IDEA regulations. *See* Mich. Admin. Code R. § 340.1851. The corollary to the above requirement is that parents are required to exhaust such administrative procedures before seeking review in court. 20 U.S.C. § 1415(l).

## 2.  THE IDEA ADMINISTRATIVE HEARING AND DISPUTE RESOLUTION REQUIREMENTS

States must have procedures that provide any party an opportunity to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [FAPE] to such child[.]" 20 U.S.C. § 1415(b)(6)(A). If a parent is dissatisfied with the child's identification as potentially disabled, or the evaluation, or educational placement of the child, or the provision of FAPE, they can file a due process complaint requesting a due process hearing where an impartial administrative law judge evaluates the parent's and the school's evidence and legal arguments. 20 U.S.C. § 1415(b)(6), (f).

Michigan implements the IDEA's due process requirements through the state administrative procedures set forth in Administrative Code R. 340.1724f. The due process complaint administrative hearing system is administered by the Defendant Michigan Department of Education ("Department"), through the independent

Michigan Office Of Administrative Hearings And Rules. Complaints are decided by an independent administrative law judge, and then, for an aggrieved party, that decision is subject to review in state or federal court. Mich. Admin. Code R. 340.1724f(2), (6), and (7).[2]

In addition to the impartial due-process complaint hearing available to children and families, the Department also developed written procedures for investigating, resolving and remedying complaints of a local education agency ("LEA") and state noncompliance with the IDEA. See 34 C.F.R. §§ 300.151-300.153. See also U.S. Department of Education, OSEP MEMO 13-08, Dispute Resolution Procedures under Part B of the IDEA (Part B) (July 23, 2013). The Department provides an informal "state complaint" procedure compliant with federal regulations in Part 8 of the Michigan Administrative Rules for Special Education Programs and Services, Mich. Admin. Code R. 340.1851 – 340.1855. This informal, non-adversarial "state complaint" process authorizes the Department to quickly investigate complaints from any person, issue final reports, require

---

[2] Department's Office of Special Education "Special Education Due Process Complaint Procedures" manual is available at https://www.michigan.gov/documents/mde/DueProcess_Complaint_Procedures_340126_7.pdf (last accessed July 30, 2021), and its "Model Due Process Complaint/Request for Hearing Form" is available at https://www.michigan.gov/documents/mde/DueProcessModelForm_550394_7.pdf (last accessed July 30, 2021)

corrective action, and impose sanctions on a LEA for failing to comply with the IDEA or the state's IDEA plan requirements.

## 3. GOVERNOR WHITMER'S COVID-19 ORDERS.

Despite its length, Plaintiffs' 41-page, 234 paragraph Complaint makes no effort to address the Executive Orders issued by Governor Whitmer in response to the COVID-19 pandemic. In doing so, Plaintiffs completely ignore Washtenaw's legal obligation to follow state law or face misdemeanor charges.

On March 13, 2020, Governor Whitmer, claiming authority under the Emergency Management Act ("EMA"), 1976 PA 390, as amended, Mich. Comp. Laws 30.401-.421, and Emergency Powers of the Governor Act of 1945("EPGA"), 1945 PA 302, as amended, Mich. Comp. Laws 10.31-.33,[3] issued Executive Order 2020-5 ordering the closure of all Michigan "public, nonpublic, and boarding schools in the state" from March 16, 2020 through April 5, 2020.[4]

On April 2, 2020, Governor Whitmer suspended "*in-person instruction* for pupils in kindergarten through grade 12 ("K-12") . . . for the remainder of the 2019-2020 school year and school buildings used for the provision of K-12 education must

---

[3] See *House of Representatives & Senate v Governor*, 333 Mich. App. 325, 365 (2020) (affirming that Executive Orders based on EMA were *ultra vires* and that EPGA constitutional); *House of Representatives v Governor*, 506 Mich. 934 (2020) (reversing Court of Appeals on constitutionality of EPGA).
[4] All cited Executive Orders available at http://www.legislature.mi.gov/ (S(ax3t4twtw5zzsablfvxtgjhz))/mileg.aspx?page=executiveorders (all last accessed July 30, 2021).

remain closed for *the purpose of* providing K-12 education *in person* for the remainder of the 2019-2020 school year[.]" Executive Order 2020-35, Section I, ¶ A. (emphasis added).[5] These orders applied to general education students and special education students. Stated differently, students with disabilities were not being treated differently from their non-disabled peers. Executive Order 2020-35 required school districts to "strive in *good faith and to the extent practicable*, based upon existing resources, technology, training, and curriculum, as well as the circumstances presented by any *state of emergency or state of disaster*, to provide equal access to alternative modes of instruction to students with disabilities for the remainder of the 2019-2020 school year." Section VI, ¶ A. (emphasis added). The Order required school districts to follow federal and state guidance pertaining to the delivery of special education programs and services, Section VI, ¶ B, and expressly stated that no IEP would be amended, Section VI, ¶ F.

For the 2020-21 school year, the Michigan Legislature required all Michigan

---

[5] The Governor also ordered each person in the state, unless expressly permitted, "to stay at home or at their place of residence" from March 13, 2020 until April 13, 2020. Executive Order 2020-21, ¶ 2. The "stay at home" order for most "non-essential" individuals was extended until April 30, 2020, Executive Order 2020-42, and again through May 15, 2020, Executive Order 2020-59. While the Governor eventually reopened certain "segment[s]" of Michigan, this did not apply to school districts, and the "stay at home" restrictions continued through May 28, 2020 and into June 2020. Executive Order 2020-77, 2020-96, 2020-110. Thus, independent from the Orders closing schools, all Washtenaw's employees were prohibited by state law from coming to the district to provide in-person instruction or special education services through the end of the 2019-2020 school year.

school districts and intermediate school districts to develop and approve "an extended COVID-19 learning plan", Mich. Compl. Laws § 388.1698a(1) ("COVID Plan"), in order to receive state school aid funds, Mich. Compl. Laws § 388.1701. Each district had the express statutory right of "maximum flexibility to adapt their educational programs for some or all pupils at some or all of the schools operated by the district to respond to the COVID-19 pandemic." *Id*.  Each COVID Plan was required to include "[a] description of how instruction will be delivered during the 2020-2021 school year. Instruction, as described in this subdivision, may be delivered at school or at a different location, in person, online, digitally, by other remote means, in a synchronous or asynchronous format, or any combination thereof[.]" Mich. Compl. Laws § 388.1698a(1)(c). While granted "maximum flexibility", school districts had to detail "how the district w[ould] ensure that *students with disabilities* w[ould] be provided with equitable access to instruction accommodation in accordance with applicable state and federal laws, rules, and regulations." Mich. Comp. Laws § 388.1698a(1)(f) (emphasis added).

**4. WASHTENAW'S SPECIAL EDUCATION PROGRAMS**

Washtenaw operates center-based programs for students with moderate to severe cognitive, behavioral, and emotional disabilities. High Point school provides programming and services for students with medical and behavioral challenges ages three to 26 years. The programs and services are provided at distinct locations.

Progress Park is a center-based program for students with emotional impairments aged five through 18 years.  Lastly, Red Oak is a center-based program for young adults (18 – 26 years) with medical, cognitive and behavioral disabilities. Washtenaw's constituent local school districts or public-school academies may suggest that a student's IEP team consider participation or attendance at one of these programs as its offer of FAPE.  The final decision about a student's participation in one of Washtenaw's center-based programs resides with the student's IEP team.[6]

## 5.  PLAINTIFFS' LAWSUIT

Fed. R. Civ. P. 8 requires "a short and plain statement of [a] claim showing that the pleader is entitled to relief." Plaintiff's Complaint is neither short nor plain and, in Washtenaw's opinion, fails to show any entitlement to relief. Plaintiffs' 43-page, 265 paragraph Complaint is summarized by Plaintiffs as follows:

> Plaintiffs are children with disabilities and the parents of those children, who were denied their rights under IDEA, MARSE [Michigan Administrative Rules for Special Education], the ADA, § 504, the [Michigan Persons With Disabilities Civil Rights] Act, the Equal Protection Clause of the Fourteenth Amendment and RICO for the 2019-2020 and 2020-2021 school years by [D]efendants. Plaintiffs seek declaratory and injunctive relief to enjoin defendants from violating their procedural and substantive rights under IDEA, MARSE, the ADA, § 504, the Michigan Act, the Equal Protection Clause of the Fourteenth Amendment and RICO. [Compl., ¶ 2]

---

[6] See https://washtenawisd.org/departments/special-education/special-education-programs (last accessed August 13, 2021).

While Plaintiff's 43-page Complaint alleges that the Department, Washtenaw, and Ann Arbor engaged in "systemic violation[s]" of the IDEA, and other state and federal laws, Plaintiff's Complaint is devoid of what they admitted in a prior case:

> [S]tate Governors around the nation unilaterally closed school buildings and required all students and school staff to remain home in order to prevent the hospital systems from becoming overloaded due to the coronavirus crisis. . . Governors around the country rescinded their executive orders to allow school buildings to be reopened starting in July 2020 for extended school year ("ESY") special education students, [*J.T. v DeBlasio*, 500 F.Supp.3d 137 (S.D.N.Y. 2020) (Civil RICO Case Statement, Docket No. 121, Pg.ID 16 of 46. Pg.ID 20 of 46) (emphasis added)]

Plaintiffs already conceded as members of a putative class members in the *J.T.* lawsuit that any school closure that occurred on or after March 2020 was the result of "[S]tate Governors" issuing "executive orders" that mandated – under authority of state law – that public schools (and in some cases non-public or parochial schools) *must* be closed to in-person services. The Plaintiffs' allegations to the contrary here, i.e., that Washtenaw "unilaterally" closed its school programs to in-person instruction, cannot be reconciled with these prior admissions.

Turning to the allegations in this complaint, Plaintiffs' make no more than passing reference to Washtenaw. In fact, in the 43 pages of their Complaint, Plaintiffs' individual allegations do not allege that a single named Plaintiff received any special education services from Washtenaw during the 2019-20 or 2020-21 school years.  (Compl, ¶¶ 12-13, 15-16, 39, 54-109). To the extent Plaintiffs mention

Washtenaw directly, it is by general terms, e.g., as one of the "Defendants" (Compl., ¶ 155), or in conclusory fashion with other defendants, (Compl., ¶¶ 138, 143-144).

Plaintiffs assert eight causes of action:[7] (1) "Systemic Violations of the Individuals with Disabilities [Education] Act", which includes for subparts for "systemic violations" of prior written notice, educational placements, failure to reconvene Individual Education Plan ("IEP") meetings, and discrimination based on disability and access; (2) Violation of MARSE "§ 300.324"; (3) Violation of § 504 of the Rehabilitation Act; (4) Violation of Title II of the ADA; (5) Violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), and (7) and (8) pertaining to the Racketeer Influenced and Corrupt Organizations Act ("RICO").

For purposes of Count 1, each named Plaintiff alleges that they were "eligible for special education from [Ann Arbor]" based on their specific disabilities. (Compl., ¶¶ 54, 68, 82, 96). Notably absent is any allegation that Plaintiffs were eligible for or received special education programs or services from Washtenaw. Plaintiffs further allege with respect to Count 1 that the violations occurred when Ann Arbor closed its schools to in-person instruction "due to the COVID-19 pandemic" (Compl., ¶¶ 61, 75, 89, 103) and this action resulted in the "alter[ing]"

---

[7] Plaintiffs also make "Class Action Allegations". (Compl., ¶¶110-135). Because all claims against Washtenaw should be dismissed, see *infra*, these allegations would be dismissed as well. However, Washtenaw reserves, and does not waive here, its right to contest all Class Action Allegations if Plaintiffs seek certification.

14

of Plaintiffs' IEPs. Again, absent is any allegation that Washtenaw directed or caused the closure or "altered" any IEP.

Plaintiffs also allege that they each "filed an administrative due process complaint against [D]efendants . . . ." (Compl., ¶¶ .) Each Plaintiff actually sent Ann Arbor a letter "requesting an impartial hearing on June 29, 2021 –*one day* prior to filing the Complaint. (See, e.g., Exhibit 1, Letter from Plaintiffs' counsel on behalf of Plaintiff A.S.). Plaintiffs only belatedly filed due process complaints with the Department on August 6, 2021, more than a month after filing this Complaint. Mich. Admin. Code, R. 340.1724f(1)(a) (due process complaint must be filed with the Department); Exhibit 2, Due Process Complaint by Simpson-Vlach.

Plaintiffs' Count 1 is then separated into four alleged "systemic violations". The first pertains to the alleged lack of prior written notice before the "closure of their schools and alteration of their IEPs . . . ." (Compl., ¶ 138).  The second alleges their parents were not included in IEP meetings regarding the "educational placement" as of March 2020. (Compl., ¶ 143).  The third alleges that Ann Arbor "failed to reconvene IEP Team Meetings" when the district went to virtual instruction. (Compl., ¶ 148).  And the fourth alleges that the "Defendants" failed to provide equal access to "educational opportunities as their non-disabled peers . . . ." (Compl., ¶ 152).

Plaintiffs allege in Count 2 a violation of the Michigan Administrative Rules

for Special Education ("MARSE"), specifically under Mich. Comp. Laws. "§ 300.324" and "§ 300.518". (Compl., Count Two heading; ¶ 155). The MARSE is the administrative rules for special education. Plaintiffs' citation to "§ 300.324" is not found in the MARSE.  Nor is there any Michigan statute for "§ 300.324". Chapter 300 of the Michigan Complied Laws, titled "Fish and Game", is mostly repealed. But even before the repeals, there never was a § 300.324 or a § 300.518.

Plaintiffs' Count 3 contends Ann Arbor's closure violated § 504. As with other notable absences, there is no allegation that any Plaintiff was eligible for or received § 504 services from Ann Arbor, Washtenaw, or the Department.

Counts 4-6 are similarly bare boned. Count IV alleges that Ann Arbor, and other school districts, violated Title II of the ADA. Count V asserts the closure of Ann Arbor "in March 2020" violated the PWDCRA. (Compl., ¶ 189). And Count VI generically alleges "Defendants" violated the Plaintiffs' equal protection rights under the 14th Amendment. (Compl., ¶¶ 194-195.). Plaintiffs end by alleging violations of the RICO provisions in Counts 7-8.

Plaintiffs' FAPE Related Claims (Counts 1-6) cannot not proceed because they failed to properly exhaust their available administrative remedies and the Court therefore lacks subject-matter jurisdiction. Independently, the FAPE Related Claims fail to state claims on which this Court can grant relief and should be dismissed. Finally, like a recent Southern District of New York decision dismissing nearly

verbatim RICO claims brought by Plaintiffs' counsel's, the RICO claims fail on their face and must be dismissed.

## STANDARD OF REVIEW

"[C]hallenges to a court's subject-matter jurisdiction may be either facial or factual." *Moeller v Amer. Media, Inc.*, 235 F.Supp.3d 868, 872 (E.D. Mich., 2017) (citing *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "[A] factual attack challenges the veracity of the facts on which subject-matter jurisdiction is predicated." *Id*. In doing do, "no presumptive truthfulness applies to the factual allegations." *Id*. The Sixth Circuit has not expressly determined whether a factual challenge to subject-matter jurisdiction on the basis of a failure to exhaust the IDEA's exhaustion requirement is analyzed under Rule 12(b)(1) or 12(b)(6). However, the distinction is irrelevant if the exhaustion related facts are, as here, undisputed. *Gibson v Forest Hills Local Sch Dist Bd of Ed*, 655 Fed. Appx. 423, 431 (6th Cir., 2016) ("But the distinction [between the standards of review] makes no difference in this case, where the parties do not dispute the district court's exhaustion-related factual findings.").[8]

---

[8] The Sixth Circuit "suggest[ed]" in *Gibson* that the IDEA's exhaustion may not be jurisdictional while acknowledging the split in authority. *Gibson*'s suggestion in is called into question by the Court's most recent decision concerning the IDEA's exhaustion requirement that referred to the IDEA's "*statutory* exhaustion requirements." *Perez*, 3 F.4th at 242 (citation omitted; emphasis added). See also *R.Z., by his/her parent B.Z., v. Cincinnati Public Schools, et al,* No. 1:21-CV-140, 2021 WL 3510312, at *2 (SD Ohio, August 10, 2021) (Mag. Judge) ("[T]he

Federal courts review motions to dismiss filed under Rule 12(b)(6) to test the legal sufficiency of a plaintiff's pleadings. When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. See *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001). Public records and government documents are generally considered "not to be subject to reasonable dispute." *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999), *overruled in part on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508–14 (2002). Public records and government documents from reliable sources on the Internet qualify under the above rule. *U.S. ex rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).

With respect to Rule (b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*,

---

availability of *any exceptions* to the IDEA exhaustion requirement remains an open question . . . following the recent publication of *Perez*.") (emphasis added).

550 U.S. at 557. While a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (internal citations omitted).

Court must accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, but the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted).

## LEGAL ARGUMENT

### 1. THIS LAWSUIT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAILED TO EXHAUST AND NO RECOGNIZED EXCEPTION APPLIES

#### a. *Plaintiffs failed to exhaust as required by 20 U.S.C. § 1415(l)*

As discussed above, the Department promulgated comprehensive regulations detailing Plaintiffs' various administrative remedies. See, *supra*, FN 2 and 3. These regulations align with the IDEA's requirement in 34 C.F.R. § 300.507 – 300.511 that a parent, or others, be able to file a due process complaint. For purposes of exhaustion in Michigan, a parent or student *must* file "a written due process complaint, signed by the complainant, *with the Department*." Mich. Admin. Code,

R. 34.1724f(1)(a) (emphasis added).

Section 1415(a) of the IDEA mandates that states and school districts "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education." 20 U.S.C. § 1415. The extensive administrative framework of the IDEA allows parents to present complaints **"with respect to any matter relating to** the identification, evaluation, or placement of a child, or the provision of a free appropriate public education to such child.**"** 20 U.S.C. § 1415(b)(6)(A) (emphasis added). The above language requires the creation of administrative remedies by the states, and the mandatory exhaustion of these remedies by parents and students. *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 754 (2017); *Perez*, 3 F.4th at 240.

 Next—and of particular relevance here—the IDEA requires that before seeking relief under other laws, "[p]arents *must* first 'exhaust[ ]' the IDEA's administrative procedures 'to the same extent as would be required had the action been brought under [the IDEA].'" *Perez*, 3 F.4th at 239–40. (quoting 20 U.S.C. § 1415(*l*); first alteration and emphasis added). "[W]hen a plaintiff has alleged injuries that could be redressed to *any degree* by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required." *Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 663 (E.D. Mich. 2015) (emphasis added) (quoting *S.E.*

20

*v. Grant Cnty. Bd. of Educ.,* 544 F.3d 633, 642 (6th Cir. 2008)).  Thus, if a parent

seeks to challenge the provision of FAPE to a disabled student, a parent must have

first exhausted their administrative remedies under the IDEA.[9]

In this case, Plaintiffs inaccurately, at best, or, at worst, knowingly mispresent

that they filed due process complaints. *Compare, e.g.,* Compl. ¶ 66 *with*, *e.g.*, Exhibit

1 and 2. What Plaintiffs did was send a "Ten Day Notice" to Ann Arbor declaring

their intent to leave the district unless the last IEP was fully implemented, i.e., in-

person instruction only, asserted that the "stay put" (pendency right) was triggered,

and demanding an "extensive independent evaluation" for possible compensatory

services. See ECF No. 27-2. Plaintiffs also sent Ann Arbor a "Request for Impartial

Hearing". See ECF No. 27-3. But what Plaintiffs did not do is file a due process

complaint *with the Department*, despite publicly and readily available information

on the procedures. See FN 2, *supra.*  Plaintiffs failed to file due process complaints

until August 6, 2021 (Exhibit 2) – over month *after* filing a Complaint that

erroneously asserted they already filed a due process complaint. Compl., ¶ 66.

---

[9] Exhaustion of administrative remedies furthers important policy goals such as
providing courts with "expert fact finding by a state agency" and implementing the
IDEA's "fundamental policy" to get parents and educators together to solve issues.
*Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir.
1989). The administrative remedies offer an expedited and cheaper manner to
resolve injuries arising from educational disputes, all within 105 days of the initial
complaint versus civil litigation, which may drag on for years.

What Plaintiffs actually allege are FAPE violations resulting from the Governor's Executive Orders requiring the closure of Ann Arbor or other Michigan school districts due to the COVID-19 pandemic. Fundamentally, these claims are essentially identical to those the court in *J.T.* dismissed due to the plaintiffs' failure to exhaust. *J.T.*, 500 F.Supp.3d at 191-193. Plaintiffs attempt to distinguish their allegations there as putative class members. They seem to claim that, unlike *J.T.*, they are claiming *procedural* violations from the Governor's school closure Orders that incidentally led to a FAPE denial. ECF No. 27, Motion for Automatic and Preliminary Injunction, Pg.ID 368-69. But this retroactive recharacterization contradicts their allegations – e.g., ¶ 77.a. (school closure "[f]ailed to ensure" access to FAPE). See also *R.Z.*, 2021 WL 3510312, at *2 (requiring exhaustion for similar alleged procedural violations). And like the allegations in *J.T.*, the alleged denial of FAPE is premised on the Governor's closure of all schools in March 2020 to in-person instruction for health and safety reasons. *Id.*, at 154-55. The *J.T.* court properly found that exhaustion is a mandatory pre-requisite to seeking judicial relief, the failure to exhaust deprives a court of subject-matter jurisdiction, and the *Fry*'s "two hypothetical questions" required exhaustion. *Id.*, at 192.

Similarly, in another case involving allegations of violations of the IDEA due to state mandated school closures, another court, relying on *J.T.*, also denied leave to amend the IDEA and all FAPE dependent claims because of the failure to exhaust.

*Hernandez v. Grisham*, 508 F. Supp. 3d 893, 973-76 (D.N.M. 2020), appeal filed Case No. 20-2176 (10th Cir., Dec. 20, 2020). Like the Plaintiffs' here and in *J.T.*, one of the *Hernandez* plaintiffs challenged New Mexico's COVID-19 school closures and its "Reentry Guidance" that placed a numeric limitation on in-person special education class sizes in certain counties for the 2020-21 school year. *Id.*, at 916-17, 923-24, 941-42. Ultimately, the court dismissed the FAPE claims because the plaintiff "must proceed via the administrative process." *Id.*, 995-97.

The same result occurred in *R.Z.* where the plaintiff claimed to only challenge the district's "policies during the COVID19 pandemic" rather than "the substance or propriety of an IEP[.]" *R.Z..*, at *2. The magistrate in that case recommended that the case be "dismissed in its entirety for failure to administratively exhaust the claims presented." *R.Z..*, at *9. Other courts have similarly dismissed alleged violations flowing from state mandated school closures. *Brach v. Newsom*, 20-cv-06472, 2020 WL 7222103, at *11 (C.D. Cal. Dec. 1, 2020), *aff'd in part, rev'd in part on other grounds and remanded*, __ F.4th __, 20-56291, 2021 WL 3124310 (9th Cir. July 23, 2021) (plaintiffs challenging California's 2020-21 school year tiered approach to in-person learning did "not dispute that they have not exhausted administrative remedies under the IDEA"); *T.R. v School Dist. of Philadephia*, __F.4th __, No. 20-2084, 2021 WL2879494, *9 (3rd Cir., January 20, 2021) ("The IDEA's focus on the

individual also underlies its exhaustion requirement[, which] requires individualized assessments and considerations of countless concerns.").

Like the plaintiffs in *J.T.*, *Hernandez*, *R.Z.*, and *Brach*, Plaintiffs did not file a due process complaint prior to this suit and admit that they have not exhausted their claims.  Plaintiffs therefore cannot seek relief under the IDEA or any other law until they exhaust their FAPE Related claims. 20 U.S.C. § 1415(*l*), § 1415(i)(2).

### b. *No Recognized Exception to the Exhaustion Requirement Applies*

Admitting that they failed to exhaust, Plaintiffs assert in conclusory fashion that "their claims fall within the exceptions specified by law." (E.g., Compl., ¶ 66.) In the past, there was some confusion as to whether the Sixth Circuit recognized any exception to the IDEA's exhaustion requirement. See, e.g., *Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 662–63 (E.D. Mich. 2015 (noting two exceptions to the IDEA's exhaustion requirement: 1) if exhaustion would be futile or the relief inadequate; or 2) a lack of notice of procedural rights. (citing *Covington*, 205 F.3d at 917).

More recently, however, the Sixth Circuit cleared up the issue by holding that courts may not judicially create exceptions to unambiguous statutes. In *Perez*, the Court plainly held that "Section 1415(*l*) [of the IDEA] does not come with a 'futility' exception[.]" *Perez*, 3 F.4th at 242 (citing *Ross v. Blake*, __ U.S. __ 136 S. Ct. 1850, 1857 (2016)). The *Perez* Court acknowledged its and district courts' prior decisions applying a futility exception. But *Perez* held that "[a]ny futility exception to section 1415(*l*) recognized in *Covington* cannot survive *Ross*, which prohibits judge-made

24

exceptions to statutory exhaustion requirements." *Id.*, at 243, n *. A decision issued just 9 days ago stated that "the *Perez* majority emphasized the *mandatory nature* of IDEA exhaustion for any suit that 'concerns' the denial of a FAPE[.]" <u>*R.Z.*</u>, at *3 (emphasis added). Under *Perez* now there is not a futility exception.

Even assuming, *arguendo*, that *Perez* does not completely control the answer on the futility exception, Plaintiffs do not allege that any of them attended a Washtenaw program or directly received IDEA related programs or services from Washtenaw or its staff. Nor do their filed due process complaints name Washtenaw. Even if the alleged FAPE deprivation is viable, this is exactly the sort of relief that an administrative judge can provide them relief. 35 C.F.R. § 300.517; Mich. Admin. Code, R. 340.1724f(2)(d). Thus, it is not futile for Plaintiffs to proceed through the administrative due process procedures before seeking judicial review or relief.

To the extent Plaintiffs argue the so-called 'systemic exception' to the exhaustion requirement, *Parent/Prof. Advoc. League v. City of Springfield, Massachusetts,* 934 F.3d 13, 27 (1st Cir. 2019) (addressing exception for "an IDEA suit seeking <u>systemic</u> relief, no plaintiff need exhaust because such exhaustion would be futile") (emphasis original), the Sixth Circuit has not directly recognized it as a separate exception but, instead, addresses it as a futility argument.  *W.R. v. Ohio Health Dept.*, 651 Fed. App'x 514, 520 (6th Cir. 2016) (unpublished) (rejecting the "argue[ment] that exhaustion would be futile because systemic issues" alleged

"under of Part C of the IDEA fall squarely within" the due process remedial structure). And, as explained above, just recently the Sixth Circuit held in *Perez* that there was no such exception. Other courts have stated that "to fall under that exception, the alleged violations must be 'truly systemic . . . in the sense that the IDEA's basic goals are threatened on a systemwide basis." *Id.* (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992)). And it applies most often "when 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to law[.]'" *Jackie S. v. Connelly*, 442 F. Supp. 2d 503, 518 (S.D. Ohio 2006) (quoting *Assoc. for Cmty. Living in Colorado v. Romer,* 992 F.2d 1040, 1044 (10th Cir. 1993)). See also *T.R. v. School District of Philadelphia*, __ F.4th __, 2021 WL 2879494, *9-11 (3rd Cir. July 9, 2021) (systemic exception "is largely limited to those procedural violations" that deprive a plaintiff of an administrative forum); *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498 (7th Cir. 2012) (reversing class certification because "there is no such thing as a 'systemic failure'" absent "significant" proof of unlawful policies).

No Plaintiff attended a Washtenaw program, but there can be no dispute that Washtenaw did not "adopt[ ] a policy or pursued a practice of general applicability that is contrary to law[.]" *Jackie S.*, *supra*. Washtenaw's closure, which did not affect named Plaintiffs, did the exact opposite – *it followed state law* as required by the Governor in her 2020 Executive Orders. Moreover, the due process procedures and

26

relief available there can directly address any alleged deprivation of FAPE from a procedural violation such as the purported failure to provide prior written notice, involve parents, or reconvene an IEP meeting. *W.R.*, 651 Fed. App'x at 520. See also *Doe v. Arizona Dep't of Education*, 111 F.3d 678, 682 (9th Cir. 1997) (allegations juveniles in one jailed failed to receive FAPE was not a system wide issue and did not excuse exhaustion). Thus, this exception, a subset to the futility exception above, is inapplicable here and cannot excuse the Plaintiffs' failure to exhaust.

While not addressed directly by *Perez* but certainly questionable based on its holding, a potential exception to exhaustion is a lack of due process, i.e., Plaintiffs were not given notice of their procedural rights. But Plaintiffs' IEPs expressly state that they "received" the requisite "*Procedural Safeguards*" and were provided information about where those safeguards can be found. See, e.g., Compl., 1-1, Exhibit 1, Notice of Provision of Special Education, Pg.ID 54 (emphasis original). See also *Waterman by Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F. Supp. 361, 369 (W.D. Mich. 1990) ("[P]laintiffs in fact had notice of [procedural] rights" and "run-of-the-mill" procedural errors only require remand for substantive administrative decision). And Plaintiffs do not allege in their Complaint that they failed to receive the procedural rights notice. Quite the contrary, they were fully aware of their rights because they (eventually) filed due process complaints. Thus, the exception for the lack of notice of their procedural rights is inapplicable here and

cannot excuse Plaintiffs' failures to exhaust. Because there is no statutory exception to exhaustion, the Court lacks jurisdiction and should therefore dismiss all FAPE Related claims.

### 2. PLAINTIFF'S STATE LAW CLAIMS ARE ALSO SUBJECT TO EXHAUSTION

Michigan Courts have uniformly held that where the claim was based upon a denial of educational opportunities of persons with disabilities, the more specific directives of the Michigan Special Education Act ("MSEA"), Mich. Comp. Laws § 380.1701 et seq., controlled, and the plaintiffs were limited to their remedies under the MSEA. For example, in *Woolcott v. State Bd. of Educ.*, 134 Mich. App. 555, 563; 351 N.W.2d 601 (1984), a hearing-impaired student's parents filed a lawsuit under the PWDCRA and § 504 of the Rehabilitation Act when the school district failed to provide the student with aides required under the student's IEP. *Id.* at 558-561. The Court held that MSEA preempted the PWDCRA and dismissed the claim. See also *Zdrowski*, 119 F. Supp. 3d at 672 (PWDCRA preempted by MMSEA).

Similarly, in *Jenkins v. Carney-Nadeau Public School*, 201 Mich. App. 142; 505 N.W.2d 893 (1993), the court held that a student could not circumvent the MSEA by filing a claim under the PWDCRA. *Id.* at 144. "Pursuant to the MSEA, regulations have been promulgated controlling the preparation, content, and appeal of IEPs." *Id*. As a result, the court held that a handicapped student was limited to the administrative remedies provided for in the MSEA to contest the district's failure to allow her to use a motorized wheelchair on school grounds. *Id*. (emphasis added.)

28

Moreover, the Court in *Jenkins* found that the exhaustion requirements of the IDEA have been incorporated into the MMSEA. *Id. citing* Mich. Admin R 340.1721–340.1725e and 20 U.S.C. §1415(e)(2). For the reasons stated above regarding the failure to exhaust, Plaintiff's state law claims should be dismissed.

### 3. PLAINTIFFS FAIL TO STATE CAUSES OF ACTION AGAINST WASHTENAW
#### a.   *Plaintiffs fail to state a claim for relief under the IDEA and MARSE*

Plaintiffs' Count 1 (IDEA) alleges four "systemic violation[s]" of the IDEA. While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678. Therefore, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted). Beyond labels and conclusions, Plaintiffs have failed to allege any "systemic violation" specifically by Washtenaw as defined and applied by the majority of courts,.

#### i.   No 'systemic violation' of prior written notice

Plaintiffs' first alleged systemic violation is factually not plausible because they fail to allege that Washtenaw had any duty to provide them with prior written notice.  As Plaintiffs admit, Ann Arbor is the entity that directly provides the IDEA services and programs pursuant to their IEPs. Since Washtenaw did not provide

29

direct services or create and implement the Plaintiffs' IEPs, it cannot have failed to provide prior written notice.

### ii.    No 'systemic violation' of the 'stay-put' requirement

The Plaintiffs' second 'systemic violation' is both implausible and an incorrect legal conclusion. Plaintiffs failed to properly initiate due process proceedings to even trigger the IDEA's pendency or 'stay put' provision. 20 U.S.C. § 1415(j) ("during the pendency of any *proceedings* conducted pursuant to *this section*") (emphasis added). The Plaintiffs appear to allege that the Governor's COVID-19 Executive Order mandating closure under state law triggered the "stay-put" provision. Beyond the fact that the Governor, not Washtenaw, ordered Ann Arbor to close, under the plain language of the statute, the pendency or 'stay-put' is not triggered unless or until a due process proceeding is filed. *Cordrey v. Euckert*, 917 F.2d 1460, 1468 (6th Cir. 1990) ("[T]he stay-put provision is activated *only when* a party has alleged such a violation and initiated administrative and judicial review.") (emphasis added); *Spilsbury v. D.C.*, 307 F. Supp. 2d 22, 27 (D.D.C. 2004) ("The IDEA's stay-put provision is triggered when a change in placement is *proposed*[.]")(emphasis added).[10] Plaintiffs did not file a due process complaint in

---

[10] See also *V.D. v. State*, 403 F. Supp. 3d 76, 94 (EDNY, 2019) ("[T]he stay-put provision, as written and applied, is designed to preserve the existing placement for an *individual* child—**not to enjoin systemic action**.") (italics original; bold added).

March or April of 2020, when the alleged change in placement occurred, nor at any time in the 2020-21 school year during periods of remote instruction.  Plaintiffs are challenging a *prior* alleged change in placement rather than one *proposed* currently. And the last IEP, which would be the 'stay put', includes the pre-COVID pandemic expectation of in-person instruction, programs and services that Ann Arbor expects.

Further, Plaintiffs only *just filed* their due process complaints on August 6. The educational placement at the time of the filing of a due process complaint is what determines 'stay-put' (or when a change is proposed in a challenged IEP). To the extent Plaintiffs contend the stay-put provision was already triggered, that is legally incorrect because it does not arise until *the filing* of a due process complaint. Plaintiffs are therefore currently either (1) in their current educational placement – summer vacation – since no Plaintiff alleged their IEP required Extended School Year services, or (2) will be in their current educational placement at the start of the 2021-22 school year, since Ann Arbor has stated to the Court that, absent unforeseen circumstances, it will provide in-person instruction.

Second, the Ninth Circuit has held that "the stay-put provision of the IDEA was not intended to cover system-wide changes in public schools that affect disabled and nondisabled children alike, and that such system-wide changes are not changes in educational placement." *N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104 (9th Cir.

2010).[11] And in the specific context of COVID-19 school closures by state governors, courts have held that remote instruction does not change a student's educational placement (for purposes of pendency) "because children with disabilities receive access to the same virtual instruction as their peers without disabilities." *Hernandez*, 508 F.Supp.3d at 1000. See also *J.T.*, 500 F.Supp.3d at 187 (Stating "three reasons why the student Plaintiffs *who have filed* due process complaints have not established that the pandemic-induced closure of the schools wrought a change in their pendency.") (emphasis added). And where courts have granted a preliminary or other injunction based on the IDEA's 'stay put' provision, it is usually based on an interlocutory or other appeal of an administrative stay-put decision.  See, e.g., *Smith v. Cheyenne Mt. Sch. Dist. 12*, 652 Fed. App'x 697, 699 (10th Cir. 2016) (unpublished) (review of administrative decision on the proper "stay put" during due process proceedings); *A.D. ex rel. L.D. v. Hawaii Dept. of Educ.*, 727 F.3d 911, 913–14 (9th Cir. 2013) (considering "whether a stay-put order is a collateral order subject to interlocutory appeal" and "holding that a stay-put order is appealable under the collateral order doctrine"); *Melendez v. New York City Dept. of Educ.*, 420 F. Supp. 3d 107, 119, 123 (S.D.N.Y. 2019) (Granting, in part, "a

---

[11] Moreover, "[c]ourts addressing the question have overwhelmingly determined that a change in location of services, on its own, is not a fundamental change in the educational program and therefore, not a change in education placement under the IDEA." *Gore v. D.C.*, 67 F. Supp. 3d 147, 153 (D.D.C. 2014).

preliminary injunction vacating the IHO's November 13, 2018 pendency order and ordering the DOE to fund J.C.'s pendency placement at iBrain for the 2018-2019 school year[.]"). Plaintiffs have not yet asked for nor been denied a 'stay put' decision from the ALJ(s). Plaintiff have not therefore alleged a violation of their last implemented educational placement that will continue to occur going forward.

### iii.    No 'systemic violations' regarding parental involvement or access to educational services

With respect to the third "systemic violation", Plaintiffs do not allege that Washtenaw provided special education services or programs to any Plaintiff. They instead allege that Ann Arbor proposed and then implemented their respective IEPs. Washtenaw therefore had no obligation under the IDEA to ensure Plaintiffs' parents' involvement in any alleged required IEP meeting due to state mandated school closures. Similarly, the fourth "systemic violation" is implausible because Plaintiffs received the same access to remote or virtual instruction that their non-disabled peers did. *Cf. Hernandez*, 508 F. Supp. 3d. at 997-1004 (Text and history of IDEA indicates least restrictive environment can be remote instruction and the "regular educational placement" if non-disabled students receive remote instruction as well).

### iv.    Plaintiffs fail to allege any valid claim under MARSE

For these same reasons as above in subsection **iii.**, Plaintiffs' claims under MARSE in Count II fail to state a claim for relief. Plaintiffs fail to allege that Washtenaw specifically, as opposed to the generic term "defendants" (Compl., ¶

154), did not provide prior written notice. More importantly, Plaintiffs fail to cite to any MARSE regulations but, instead, cite repealed or non-existent Michigan statutes. Plaintiffs utterly fail to allege that Washtenaw was legally required to provide them with prior written notice, maintain their current educational placement, or ensure their parents involvement. Nor can they plausibly do so since they admit that Ann Arbor implemented their IEPs and therefore bore the obligation of those requirements. In sum, Counts 1 and 2 fail to state any claims on which this Court may grant relief and must be dismissed.

### b. *Plaintiffs fail to state claims for relief under § 504 or the ADA*

Plaintiffs' claims under § 504 must be dismissed first because Plaintiffs admit they failed to exhaust their IDEA remedies. Additionally, the § 504 claim must be dismissed because Plaintiffs fail to allege that have a § 504 plan that Washtenaw implemented. Even assuming, *arguendo*, that Plaintiffs were eligible for § 504 services, Plaintiffs fail to allege any discriminatory intent by Washtenaw, which is required to prevail on a § 504 claim. *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 Fed. App'x 162, 167 (6th Cir. 2003) ("*even if* the plaintiffs" prove a reasonable accommodation was not offered they "must *ultimately* prove" that the lack "was *discriminatory*") (emphasis original). *Accord G.C. v. Owensboro Pub. Schools*, 711 F.3d 623, 635 (6th Cir. 2013). Thus, Count 4 should be dismissed.

ADA claims are analyzed under the same standard as § 504 claim. *Zdrowski*,

119 F. Supp. 3d at 666 (citation omitted). Like the § 504 claim, Plaintiffs failed to exhaust and allege only that Ann Arbor violated the ADA, not Washtenaw. For these reasons alone, Count 5 should be dismissed as against Washtenaw. And like their § 504 claim, Plaintiffs fail to allege that Washtenaw's actions were discriminatory, i.e., the result of bad faith or gross misjudgment. *Id*. Even if such an allegation was made, it is implausible since Washtenaw, like Ann Arbor, followed mandatory state law in the midst of a global pandemic. Thus, Count 5 should be dismissed.

### c. *Plaintiffs fail to state a claim for relief under the 14th Amendment*

As with Counts 1 – 5, Plaintiffs' claim of an Equal Protection violation under the 14th Amendment was due to the Governor's Executive Orders. Those Ordersallegedly resulted in IDEA violations, i.e., "regression of skills and loss of competencies." (Compl., ¶¶ 194-199.) But Plaintiffs failed to exhaust the IDEA remedies and therefore the Equal Protection claim must be dismissed.

Even if Plaintiffs had exhausted, "[t]o state a claim under the Equal Protection clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Horen v. Bd. of Educ. of Toledo City Sch. Dist*., 594 F. Supp. 2d 833, 844 (N.D. Ohio 2009). "Disabled persons are not a suspect class for purposes of an equal protection challenge[,]" thus if an alleged violation is "rationally related to a legitimate governmental interest" there can be no Equal Protection claim. *S.S. v. E. Kentucky*

35

*U.*, 532 F.3d 445, 457 (6th Cir. 2008) (citations omitted).

Here, Plaintiffs were treated no differently that non-disabled students. All were equally affected by the Governor's Orders in March and April 2020 or local school districts', such as Ann Arbor's, decisions to continue remote or hybrid learning for parts of the 2020-21 school year. The Orders and decisions are therefore facially neutral. See *Hernandez*, 508 F. Supp. 3d. at 991. And, in the context of COVID-19 closure orders, courts have held that since there is no fundamental right to in-person instruction, such closures order are rationally related to a state's, or school district's, legitimate interest in combating and preventing the spread of COVID-19.  See, e.g., *id.*; *Brach,* ___ F.4th___, 2021 WL 3124310 at *18; *Beahn v. Gayles*, Case No. 20-2239, 2021 WL 3172272 (D. Md. July 26, 2021); *Peterson v. Kunkel*, 492 F. Supp. 3d 1183 (D.N.M 2020). Nor have Plaintiffs alleged facts of a discriminatory intent or animus by Washtenaw. *Hernandez*, 508 F. Supp. 3d. at 991-92. Thus, Count 6 fails to state a claim for relief and should be dismissed.

### d.  *Plaintiffs RICO claims fail to state a claim for relief*

As noted, the court in *J.T.* previously examined and dismissed "**with prejudice**" similar RICO claims brought by a putative national class that included Plaintiffs and who were represented by Plaintiffs' current counsel. *J.T.*, 500 F.Supp.3d at 166-72 (emphasis added). That court expressly stated that the claims "fail[ed] in every particular" and that "the RICO allegations here asserted reek of

bad faith and contrivance." *Id*., at 165, 172. For the same reasons discussed by that court, and as amplified by the Department (ECF No. 20, PgID. 220-30), the RICO claims here should be dismissed.

Nor can Plaintiffs' effort to plead a statewide conspiracy to defraud the federal government of IDEA funding, as opposed to the alleged Medicaid funds in *J.T.*, save their claim. First, like *J.T.*, Plaintiffs here lack standing to assert a RICO claim because they "cannot establish standing if the alleged injury is the derivative result of a fraudulent scheme that targets another victim" – i.e., the U.S. Department of Education, which is responsible for distributing IDEA funds. *Id*., at 166.

Second, Plaintiffs' Complaint also "fails to allege the existence of any enterprise – a necessary element to any RICO claim." *Id*., at 166. As in *J.T.*, "Plaintiffs assert that the entire educational system throughout [Michigan] is being run as a single massive 'racketeering enterprise,'" and that fails to demonstrate an "association-in-fact[.]" *Id*., at 166-68. There are no *specific* plausible allegations that the individual Washtenaw Defendants colluded with any individuals at Ann Arbor or even the Department to accept IDEA funding but not provide services or programs. To do so "would contradict allegations that *are* made in the Complaint, which underscore and emphasize the separateness of school districts" from Washtenaw and the Department. *Id*., at 168 (emphasis original).

Third, Plaintiffs fail to plausible allege a conspiracy. Like *J.T.*, Plaintiffs'

37

Complaint merely alleges that Washtenaw was "independently following the separate orders of" Governor Whitmer and the guidance issued by the Department. *Id*., at 169. But the fact that Washtenaw, and other ISDs in Michigan, "reached the same result acting independently" and followed the Governor's Orders, and offered remote instruction for a period in the 2020-21 school year under the express legislative grant, "is insufficient to plead conspiracy." *Id*.

Lastly, Plaintiffs' "lack of standing and the failure to allege the existence of either an enterprise or a conspiracy doom this misguided effort[,]" *id*., at 170, their Complaint also fails to plausibly allege predicate acts sufficient to sustain a RICO claim. "The essence of the alleged frauds that constitute the RICO predicate acts in this case is the receipt of federal [IDEA] funds by [Washtenaw] for special education purposes without intending to abide by the IDEA and other federal regulations touching on the education of disabled students." *Id*. The "utter implausibility" of such allegations in the face of a worldwide pandemic and the uncertainty surrounding the public health crisis is self-evident. *Id*. "Plaintiffs have failed to allege any facts – let alone allege them with the particularity required by Rule 9(b) – that would give rise to an inference of fraudulent intent by ANY defendant, let alone by all of them." *Id*., at 171 (citation omitted). For these reasons, Plaintiffs fail to plausibly allege a RICO claim and Counts 7-8 must be dismissed.

## **CONCLUSION**

This Complaint is nothing more than a second bite of the apple. It mirrors the one filed by Plaintiffs' counsel that the Southern District of New York emphatically rejected by. As in that case, Plaintiffs here failed to exhaust available IDEA remedies that are adequate to determine if any violation(s) occurred and provide any remedies. The failure to exhaust is not excused simply by styling the Complaint as a putative class action or by conclusory allegations of "systemic violations".

Independently, Plaintiffs' claims all fail to state valid claims on which the Court can grant relief. Plaintiffs' allegations are factually implausible or are legally incorrect. In particular, the RICO claims "reek of bad faith and contrivance."

For these reasons, the Court lacks jurisdiction over Plaintiffs' Complaint, or, independently, the Plaintiffs fail to state claims for relief. Either way, the Court should dismiss the Complaint.

/s/ TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants, Washtenaw ISD,
 Scott Menzel and Naomi Norman
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021

DATED: August 19, 2021

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

TIMOTHY J. MULLINS states that on August 19, 2021, he did serve a copy of **Washtenaw Intermediate School District's Motion (with Incorporated Brief) to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)** via the United States District Court electronic transmission on the aforementioned date.

s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants, Washtenaw ISD,
 Scott Menzel and Naomi Norman
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021

40