UNITED STATES DISTRICT COURT
EASTERN DISTRICT MICHIGAN

RITA C. SIMPSON-VLACH,
ALAN SIMPSON-VLACH,
on behalf of A.S. and M.S., and
individually, KATHY BISHOP,
CHRISTOPHER PLACE,
on behalf of C.P. and H.P, and
individually,

|  |  |
|---|---|
| Plaintiffs, | Civil Action No. 21-cv-11532 |
| v. | Honorable Judith E. Levy |

MICHIGAN DEPARTMENT OF EDUCATION,
ANN ARBOR PUBLIC SCHOOLS,
WASHTENAW INTERMEDIATE SCHOOL DISTRICT,
DR. JEANICE SWIFT, in her official capacity,
DR. MARIANNE FIDISHIN, in her official capacity,
SCOTT MENZEL, in his official capacity,
NAOMI NORMAN, in her official capacity,
MICHAEL F. RICE, Ph.D., in his official capacity,

Defendants.
_____/

| | |
|---|---|
| Charlotte G. Carne (P61153)<br>Rory J. Bellantoni<br>Brain Injury Rights Group<br>Attorneys for Plaintiffs<br>300 East 95th Street, Suite 130<br>New York, New York 10128<br>646-850-5035<br>charlotte@pabilaw.org | Neil Giovanatti (P82305)<br>Assistant Attorney General<br>Attorney for State Defendants<br>Michigan Department of Attorney General<br>Health, Education & Family Services<br>P.P. Box 30758<br>Lansing, MI 48909<br>(517) 335-7603<br>giovanattin@michigan.gov |
| Richard J. Landau (P42223)<br>Attorney for AAPS Defendants | Timothy J. Mullins (P28021)<br>John L Miller (P71913) |

i

| | |
|---|---|
| 5340 Plymouth Rd.<br>Suite 200<br>Ann Arbor, MI 48105<br>734-865-1585<br>rjlandau@rjlps.com | Travis M. Comstock (P72025)<br>Giarmarco, Mullins & Horton, P,C.<br>Attorneys for WISD Defendants<br>Troy, MI 48084<br>(248) 457-7020<br>tmullins@gmhlaw.com<br>jmiller@gmhlaw.com<br>tcomstock@gmhlaw.com |

## PLAINTIFFS' RESPONSE TO ANN ARBOR PUBLIC SCHOOL DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiffs, Rita C. Simpson-Vlach, Alan Simpson-Vlach, Kathy Bishop, and Christopher Place, individually and on behalf of their special needs children (collectively referred to as "Plaintiffs"), submit the attached brief in response to the Ann Arbor Public Schools ("AAPS"), Dr. Jeanice Swift and Dr. Marianne Fidishin's (collectively, the "AAPS Defendants") Motion to Dismiss in support of their request that the motion be denied.  This response is supported by the accompanying brief in support thereof.

WHEREFORE, Plaintiffs respectfully request that AAPS Defendants' Motion to Dismiss be denied.

Respectfully submitted,

**/s/Charlotte G. Carne**
Charlotte G. Carne (P61153)
Attorney for Plaintiffs
Brain Injury Rights Group
300 East 95th Street, Suite 130

New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... v

ISSUES PRESENTED BY AAPS DEFENDANTS .............................................................. vii

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.   COUNTER-STATEMENT OF FACTS ................................................................. 5

III.   LEGAL STANDARD ............................................................................................... 5

IV.   ARGUMENT ............................................................................................................ 7

A.   AAPS did not Comply with IDEA .......................................................................... 7

B.   Plaintiffs Claims are Not Moot ............................................................................... 9

1.   *Pendency Placement is Still a Live Case or Controversy* ....................................... 9

2.   *Plaintiffs' Request for a Declaratory Judgment regarding Defendants' Violation of State and Federal Law is Still a Live Case or Controversy* ................................................................. 12

3.   *Plaintiffs' Prayer for a Special Monitor to Oversee Completion of IEEs Addresses a Live Controversy* ......................................................................................................................... 13

C.   Plaintiffs are Not Required to Exhaust Administrative Remedies ................ 14

D.   HP has Standing to Bring Suit .............................................................................. 14

E.   Plaintiffs' RICO claims are novel, not flawed .................................................. 16

F.   The Discriminatory Impact of the COVID-19 School Closures ................... 16

IV.   CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver,*
510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)........................................ 5

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ........................................................................................ 17

*Already, LLC v. Nike, Inc.,*
568 U.S. 85, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013)........................................ 10

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...................................... 6

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,*
502 F.3d 545 (6th Cir.2007)............................................................................. 6

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)...................................... 5

*Bower v. Fed. Express Corp.,*
96 F.3d 200 (6th Cir.1996)............................................................................ 5, 6

*Burlington v. Department of Education of the Commonwealth of Mass.,*
471 U.S. 359 (1985) ....................................................................................... 15

*Connecticut Citizens Def. League v. Lamont,*
465 F. Supp. 3d 56 (D. Conn. 2020), vacated, 6 F.4th 439 (2d Cir. 2021) ........ 10

*Dark Storm Industries, L.L.C. v. Cuomo,*
471 F. Supp. 3d 482 (N.D. N.Y., July 8, 2020) ...........................................*Passim*

*Drinker by Drinker v. Colonial Sch. Dist.,*
78 F.3d 859 (3d Cir. 1996)............................................................................... 2

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,*
528 U.S. 167, 120 S.Ct. 693 (2000)................................................................. 11

*Honig v. Doe,*
    484 U.S. 305 (1988) ........................................................................... 1, 2

*Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.,*
    955 F.3d 314 (2d Cir. 2020) ................................................................ 10

*Johnson ex rel. Johnson v. Special Educ. Hearing Off., State of Cal.,*
    287 F.3d 1176 (9th Cir. 2002) ............................................................... 2

*Knox v. Serv. Emp. Int'l Union, Local,*
    567 U.S. 298, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012) ...................... 10

*Mhany Mgmt., Inc. v. Cty. of Nassau,*
    819 F.3d 581 (2d Cir. 2016) .......................................................... 10, 11

*N.D. v. Hawaii Dep't of Educ,*
    600 F.3d 1104 (9th Cir. 2008) ............................................................... 3

*Parents of Student W. v. Puyallup Sch. Dist., No. 3,*
    31 F.3d 1489 (9th Cir. 1994) ................................................................. 2

*Uzuegbunam v. Preczewski,*
    2021 WL 850106 (U.S. March 11, 2021) ........................................... 1, 9

*Ventura de Paulino v. N.Y.C. Dep't of Educ.,*
    959 F.3d 519 (2d Cir. 2020) ................................................................ 15

*Wysocki v. Int'l Bus. Mach Corp.,*
    607 F. 3d 1102 (6th Cir. 2010) .......................................................... 4, 7

## ISSUES PRESENTED BY AAPS DEFENDANTS

1.     Should Plaintiffs' Complaint be dismissed because at all times AAPS has been incompliance with its regulators' interpretation of IDEA and MARSE?

Plaintiffs' answer:  No.

AAPS Defendants' answer:  Yes.

2.     Should Plaintiffs' Complaint be dismissed because their IDEA claims as well as the relief sought have been mooted by subsequent factual developments?

Plaintiffs' answer:  No.

AAPS Defendants' answer:  Yes.

3.     Should Plaintiffs' IDEA, Section 504 and PWDCRA claims be dismissed because they have failed to exhaust their administrative remedies?

Plaintiffs' answer:  No.

AAPS Defendants' answer:  Yes.

4.     Should all claims asserted on behalf of Student HP be dismissed because she is no longer enrolled in the district?

Plaintiffs' answer:  No.

AAPS Defendants' answer:  Yes.

5.     Should the RICO claims asserted in Plaintiffs' Complaint be dismissed because they fail to allege the legal and factual predicates essential to such claims?

Plaintiffs' answer:  No.

AAPS Defendants' answer:  Yes.

6.     Should Plaintiffs' remaining claims be dismissed because they cannot allege the discriminatory treatment of students with disabilities?

Plaintiffs' answer:  No.

AAPS Defendants answer:  Yes.

## I.   PRELIMINARY STATEMENT

AAPS Defendants state that Plaintiffs' lawsuit is moot because AAPS reopened for the 2021-2022 school year. (ECF No. 34, PageID.494.) This mootness argument has already been rejected by both the U.S. Supreme Court and a federal district court in New York. *See Uzuegbunam v. Preczewski*, No. 19-968, 2021 WL 850106 (U.S. March 11, 2021); *Dark Storm Industries, L.L.C. v. Cuomo*, 471 F. Supp. 3d 482 (N.D. N.Y., July 8, 2020). The Northern District of New York addressed this argument regarding the COVID-19 pandemic and the Second Amendment. *Dark Storm Industries L.L.C., supra*. As will be discussed in greater detail below, the Court held that defendants could not carry their burden of showing the plaintiffs' challenges to Governor Cuomo's COVID-19 shut down orders were moot due to "the reasonable expectation that New York might be forced to shut down once again." *See id*. at 494. For that same reason, AAPS Defendants cannot carry their burden of showing Plaintiffs' class action complaint is moot.

AAPS Defendants also state that their actions were "far from 'unilateral'" because their actions were responsive to Governor Whitmer's Executive Orders (ECF No. 34, PageID.494.) "Unilateral" is a term of art in IDEA litigation. *See Honig v. Doe*, 484 U.S. 305 (1988). In *Honig*, the Supreme Court noted that, in enacting the IDEA, Congress very much meant to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly

1

emotionally disturbed students, from school. *Honig*, 484 U.S. at 323; *Johnson ex rel. Johnson v. Special Educ. Hearing Off., State of Cal.*, 287 F.3d 1176, 1181 (9th Cir. 2002); *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996). A school district's removal of a disabled student from their educational program, or alteration of the student's educational program, for more than ten days in a school year constitutes a "change in placement," which must be undertaken only within the protective framework of the IDEA. *Honig*, 484 U.S. at 323; *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1495 (9th Cir. 1994). By the terms of the IDEA, a change in placement may only occur with the parents' consent or after written notice and the opportunity for a hearing. *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1495 (9th Cir. 1994).

AAPS Defendants also repeatedly state that "Plaintiffs have conceded that none of their students' IEPs required in-person instruction." (ECF No. 34, PageID.494.) In truth, Plaintiffs concede that the named Plaintiff's IEPs do not state whether Plaintiffs' instruction and services will be in-person or virtual. (ECF No. 1, PageID.8-15.) This is a very different concession. (Compare ECF No. 34, PageID.494 and ECF No. 1, PageID.8, 10, 12, 14.) Indeed, in each of the Named Plaintiffs' factual allegations, Plaintiffs state that their IEPs did not state whether instructions and services were to be delivered in-person or virtually. (ECF No. 1, PageID.8, 10, 12, 14.) Because there was no statement as to the mode of delivery, a

change in placement to 100% virtual instruction without prior written notice and parental input was a change in Plaintiffs' educational placement. *See N.D. v. Hawaii Dep't of Educ*, 600 F.3d 1104, 1116 (9th Cir. 2008)(stating a change in educational placement occurs when the school moves "the disabled student from one type of program, 'regular classroom setting,' to another, 'home instruction'")(citations omitted).

AAPS Defendants also go to great lengths to show the "extraordinary efforts" they undertook to educate children with disabilities during the COVID-19 pandemic, including two declarations, eighteen exhibits attached to those declarations and seventeen pages of facts supported by these declarations and exhibits. (ECF No.34, PageID.494-514; ECF Nos.35-35-4, 36-36-14.)

First, in *Charles H. et al. v, District of Columbia*, 21-cv-00997, ECF No. 38. (ECF No. 44-1), the United States District Court for the District of Columbia granted provisional class action certification and a preliminary injunction on behalf of "disabled and incarcerated students" covered by the IDEA despite defendants' argument that they implemented the plaintiffs' IEPs "to the greatest extent possible." *Id*. at Page 18 of 27. The Court held the defendants still violated IDEA regardless of their efforts. *Id*.

Second, AAPS Defendants' use of declarations by Defendant Swift and Fidishin is inappropriate for the Court's consideration of a 12(b)(6) motion.

3

*Eggleston v. Daniels*,  WL 4363013, *4 (E.D. Mich., August 16, 2016)(on a motion to dismiss the "Court's inquiry is limited to an examination of the complaint").  "The Court is not to consider matters outside the pleadings, and may only consider those documents attached to a motion to dismiss . . . that are referred to in the complaint." *Id*.  "To do otherwise would risk converting the motion to dismiss into a motion for summary judgment prior to discovery."  *See* Fed. R. Ci. P. 12(d)("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The Court has broad discretion to decide whether to convert this motion to one for summary judgment.  *See Wysocki v. Int'l Bus. Mach Corp*., 607 F. 3d 1102, 1104 (6th Cir. 2010).  However, if the Court chooses to do so, Plaintiffs' request further discovery on the subject matters addressed in these declarations and exhibits.

Last, and most importantly, this case is not about the denial of a free appropriate public education.  As such, AAPS Defendants alleged stipulation to virtually all the relief sought by Plaintiffs is inapposite.  Plaintiffs filed administrative due process complaints, and, indeed, the administrative due process proceedings have started with a prehearing conference on August 31, 2021 at 11:00 a.m.  Those proceedings will address any denial of FAPE on an individual basis. However, ALJ Michael St. John will not be able to order any class wide injunctive relief for the defendants' systemic violations.  To that end, AAPS's alleged stipulation for relief for

4

the four Named Plaintiffs does not even begin to address the systemic violations and the relief sought on behalf of the approximately 2,288 special education students in the AAPS. As such, their motion should be denied.

## II.    COUNTER-STATEMENT OF FACTS

Plaintiffs incorporate by reference the facts as stated in their Complaint and Motion for Preliminary Injunction (ECF Nos. 1 and 42) their Counter-Statements of Facts stated in their responses to the State Defendants' Motion to Dismiss (ECF No. 41) and WISD's Motion to Dismiss. (ECF No. 44.)

## III.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, a court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Bower v. Fed. Express Corp.,* 96 F.3d 200, 203 (6th Cir.1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir.2007). "[T]hat a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

Moreover, as stated above, "The Court is not to consider matters outside the pleadings, and may only consider those documents attached to a motion to dismiss . . . that are referred to in the complaint." *Eggleston v. Daniels*, WL 4363013, *4 (E.D. Mich., August 16, 2016)(on a motion to dismiss the "Court's inquiry is limited to an examination of the complaint."). "To do otherwise would risk converting the motion to dismiss into a motion for summary judgment prior to discovery." *See* Fed. R. Ci. P. 12(d)("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56.").  The Court has broad discretion to decide whether to convert this motion to one for summary judgment.  *See Wysocki v. Int'l Bus. Mach Corp*., 607 F. 3d 1102, 1104 (6th Cir. 2010).

## IV.   ARGUMENT

Counsel for AAPS Defendants performs an interesting recasting of Plaintiffs' requests for relief to argue for dismissal.  (ECF No. 34, PageID.512.)  This recasting is inappropriate.  The most egregious example is the statement that "Plaintiffs' counsel requested an order declaring that the District had denied the students a FAPE and determine appropriate compensatory services due to the denial of FAPE."  (ECF No. 34, PageID.513.)  Plaintiffs do not make such a request anywhere in their prayer for relief.  (ECF No. 1, PageID.41-42.)

### A.   AAPS did not Comply with IDEA

AAPS Defendants state that "[a]t no time have any of its regulators found the District to be in non-compliance with IDEA or MARSE with regard to its efforts to address the needs of its special education students during the course of the pandemic emergency."  (ECF No. 34, PageID.514.)  This is precisely why Plaintiffs are suing AAPS's "regulators," including the Washtenaw Intermediate School District and the Michigan Department of Education.  (ECF No. 1.)  These regulators failed to monitor AAPS's compliance with IDEA during the school closures.  (*Id*.)

7

More importantly, the U.S. Department of Education's Office of Civil Rights recently issued a report entitled, *Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students.* (Exhibit 1.) In that report the U.S. DOE OCR stated:

> For many elementary and secondary school students with disabilities, COVID-19 has significantly disrupted the education and related aids and services needed to support their academic progress and prevent regression. And there are signs that those disruptions may be exacerbating longstanding disability-based disparities in academic achievement.

(*Id.*)

The U.S. DOE OCR also noted:

> By summer 2020, evidence emerged from not only this poll but also another larger-scale online survey of more than 80,000 secondary and upper elementary students that students with disabilities may have been facing more mental health challenges than their peers and more generally having less positive experiences with schoolwork than other students.

> Data from one Maryland district, for example, revealed that the number of sixth graders with disabilities earning failing marks in English had doubled from the previous year. Meanwhile, a Virginia district saw a 111% increase in the number of students with disabilities receiving Fs in two or more subjects in the first quarter of the 2020-2021 school year. And a California district similarly reported an across-the-board jump in fall of 2020 in the number of Ds and Fs given to students with disabilities in its middle and high schools.

(*Id.*)

Thus, while the U.S. DOE may not have specifically investigated and found AAPS noncompliant with IDEA procedural safeguards, that does not mean that

AAPS is not violating IDEA and failing its students with disabilities. As such, discovery regarding AAPS's specific efforts to comply with the procedural safeguards of IDEA is warranted.

### B.   Plaintiffs Claims are Not Moot

AAPS Defendants claim that there is no "live case or controversy to adjudicate" in the case at bar because the schools have reopened. (ECF No. 34, PageID.515-22.) As stated above, this mootness argument has already been rejected by both the U.S. Supreme Court and a federal district court in New York. *See Uzuegbunam v. Preczewski*, No. 19-968, 2021 WL 850106 (U.S. March 11, 2021); *Dark Storm Industries L.L.C. v. Cuomo*, 471 F. Supp. 3d 482 (N.D. N.Y., July 8, 2020). Plaintiffs will address AAPS Defendants' specific mootness arguments as they are presented in their brief. (ECF No. 34, PageID.515-22.)

### 1.   *Pendency Placement is Still a Live Case or Controversy*

In *Dark Storm Industries, L.L.C. v. Cuomo*, the Southern District of New York squarely addressed the mootness argument with respect to the COVID-19 pandemic. *See Dark Storm, supra*. In this case, plaintiffs, a gun store operator and two of its customers, asserted that Governor Cuomo violated several provisions of the United States Constitution when he deemed "gun shops not to be essential businesses and ordered them closed" during the COVID-19 pandemic. *Id*. at 486. The Court address cross motions for summary judgment by both plaintiffs and defendants. *Id*.

9

Regarding defendants' mootness argument, the Court thoroughly laid out the power of the federal courts. *Id*. at 493-94. The Court stated:

> The doctrine of mootness requires a court to dismiss a case "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013). "If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.,* 955 F.3d 314, 319 (2d Cir. 2020). "In contrast to the burden that falls on a plaintiff to prove standing, it is the defendant who bears the burden to prove that a change of circumstances has rendered a case moot." *Connecticut Citizens Def. League*, 465 F.Supp.3d at 68 (citing *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)).
>
> Defendants have failed to meet their burden. In two quick paragraphs they argue that Plaintiffs' case no longer presents a live controversy because "on May 27, 2020, Long Island began Phase One of the re-opening process," which allowed "retailers such as Dark Storm's store ... to fulfill deliveries via in-store pickup." Defs.' Mem. at 6. Since Plaintiffs requested "precisely th[is] relief" in their motion, Defendants assert that Long Island's reopening has mooted Plaintiffs' case. *Id*. However, Defendants' arguments fail to account for the voluntary cessation doctrine. A defendant's "voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012). A voluntary change of conduct only renders a case moot if the defendant demonstrates both that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany*, 819 F.3d at 603. A government defendant claiming mootness on the basis of voluntary cessation "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could

> not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth,* 528 U.S. at 190, 120 S.Ct. 693)

*Id*.

The Court went on to state that there was no dispute that New York voluntarily relaxed the Executive Orders' shutdown requirements. *Id.* at 494. As such, the voluntary change of conduct exception applied. *Id.* The Court also noted that "there is a reasonable expectation that New York might be forced to shut down once again." *Id.* The Court reasoned:

> Under these extraordinary circumstances, when a second wave of COVID-19 infections could be just around the corner, it cannot "be said with assurance that there is no reasonable expectation that the alleged violation will recur."

*Id.* at 494-95.

Indeed, the Court noted that New York's reopening plan even contemplated such a renewed shutdown. *Id.*

Applying *Dark Storm* to the case at bar, this case is not moot. As in *Dark Storm*, AAPS Defendants fail to account for the voluntary cessation analysis. AAPS voluntarily reopened on August 30, 2021. However, as in New York, there is a reasonable expectation that AAPS might be forced to shut down again. Indeed, Dr. Swift states that AAPS continues "to monitor the evolving situation regarding the spread of COVID-19, including the spread of the so-called Delta variant." (ECF No. 35, PageID.542.) Moreover, the recent statistics from the Health Department of

Washtenaw County indicate that the number of cases is on the rise again. http://www.washtenaw.org.   Moreover, while the Named Plaintiffs' IEPs do not require in-person instruction, they also do not state that virtual instruction is appropriate.   Thus, this is a real case and controversy.   Another shut down would trigger another change in educational placement requiring another round of procedural safeguards.  MDE, WISD and AAPS must start to address how to comply with IDEA's procedural safeguards now given the number of questions that remain open regarding the COVID-19 pandemic and future closures.

> 2.    *Plaintiffs' Request for a Declaratory Judgment regarding Defendants' Violation of State and Federal Law is Still a Live Case or Controversy*

AAPS Defendants assert that "what Plaintiffs are requesting is that this Court proactively declare that the District will be in violation of federal law if it fails to continue in-person instruction for special education students in the unlikely event of a recurrence of the circumstances associated with the early pandemic school closures."  (ECF No. 34, PageID.519-20.)  While AAPS Defendants assert that the recurrence of a shut-down is unlikely in one breath, they go on to state that Plaintiffs' request for declaratory relief "could have life-threatening consequences for the District's staff and special education students in the unlikely event of a further pandemic and governmentally mandated school closures."  (*Id*. at PageID.520.)

Plaintiffs are not asking AAPS Defendants to risk the lives of its staff or students.   Plaintiffs are simply asking AAPS Defendants to address IDEA's procedural safeguards in the event of another school closure.   (ECF No. 1, PageID.41.)   As such, Plaintiffs' prayer for relief is sufficiently specific to avoid mootness.   It asks for the Court to declare the "unilateral change of placement of plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA." (*Id.*)   This does not mandate that the schools stay open in the face of life-threatening circumstances.   It does request that AAPS Defendants give notice and parental input into how their disabled children will be educated in the event of another school closure.   By declaring "unilateral" changes of placement unlawful, the Court forces the Defendants to proactively address how they will comply with IDEA in the event the violation recurs.   As such, the prayer for relief is not moot.   *See Dark Industries, supra.*

### 3.   *Plaintiffs' Prayer for a Special Monitor to Oversee Completion of IEEs Addresses a Live Controversy*

AAPS Defendants insist that Individual Educational Evaluations can only be ordered after a parent disagrees with the evaluation performed by the public agency. (ECF No. 34, PageID.521.)   This is not true.

While it is true that 34 C.F.R. § 300.502 (a) and (b) regarding independent educational evaluations states that "the parents of a child with a disability have the

right under his part to obtain an independent educational evaluation of the child,  . . . if the parent disagrees with an evaluation obtained by the public agency," the regulation does not state that a Court may not order such an evaluation as a remedy in litigation.  Indeed, there is no case law indicating that a Court cannot order an IEE as a remedy to determine regressions due to violations of IDEA.

In this case, Plaintiffs and putative class members suffered a gap of over a year in in-person services and instruction.  To make these students wait for the school districts to conduct their own evaluations, which in most cases takes ninety days, and then request IEEs if they disagree with those evaluations only delays compensatory services for these children.  It is not unreasonable or unlawful for Plaintiffs to request IEEs as a remedy for their very real case or controversy.  It is also not unreasonable or unlawful for the Court to issue an Order either granting or denying these IEEs upon its discretion.

## C.     Plaintiffs are Not Required to Exhaust Administrative Remedies

Plaintiffs incorporate by reference their arguments regarding failure to exhaust administrative remedies as stated in their Response to the State Defendants' Motion to Dismiss (ECF No. 41, PageID.912-21), Motion for Automatic and Preliminary Injunction (ECF No. 42, PageID.978-84) and Response to WISD's Motion to Dismiss.  (ECF No. 44.)

## D.     HP has Standing to Bring Suit

AAPS Defendants state that HP lacks standing to bring a claim for compensatory services because she now attends a private school. (ECF No. 34, PageID.523.)  This is incorrect.

As the United States Supreme Court has acknowledged, even though a child's educational needs are an urgent matter, IDEA proceedings may take "years to run [their] course--years critical to the child's development."  *Burlington v. Department of Education of the Commonwealth of Mass.*, 471 U.S. 359, 361 (U.S. 1985).  That leaves parents with two practical paths to challenge an IEP. First, they may "keep the[ir] child enrolled in public school" and pursue "compensatory education" as part of the administrative process.  Alternatively--and "in light of the irreversibility, in an educational setting, of a child's lost time" – parents may, unilaterally and at their own financial peril, enroll their child in a private school and then seek reimbursement for the private-school tuition. *Id*.  When any IDEA proceedings are pending, IDEA's "stay put" or pendency provision provides that the "child is entitled to remain in his or her placement at public expense."  *Ventura de Paulino v. N.Y.C. Dep't of Educ*., 959 F.3d 519, 531 (2d Cir. 2020), *cert. denied*, No. 20-713, 2021 WL 78218 (U.S. Jan. 11, 2021).

Applying this case law to the case at bar, HP has standing to pursue compensatory services for the AAPS's Defendants violation of IDEA procedural safeguards.

### E.     Plaintiffs' RICO claims are novel, not flawed

To the extent that AAPS Defendants reiterate State Defendants and WISD's RICO arguments, including their arguments regarding *J.T. v. de Blasio,* to support their argument, Plaintiffs incorporate by reference their arguments supporting their RICO claim as stated in their Response to the State Defendants' Motion to Dismiss (ECF No. 41, PageID.921-27), Motion for Automatic and Preliminary Injunction (ECF No. 42, PageID.991-98) and Response to WISD's Motion to Dismiss.  (ECF No. 44.)

To the extent that AAPS Defendants present exhibits allegedly showing how they spent their IDEA Part B funds, Plaintiffs request further discovery to validate the statements and declarations that Defendants present based on these exhibits. Plaintiffs have presented sufficient factual matter to survive a 12(b)(6) motion to dismiss.  If AAPS Defendants are allowed to rely in these documents, Plaintiffs should be allowed discovery to present sufficient disputed facts to counter what is essentially a motion for summary judgement by AAPS Defendants.

### F.     The Discriminatory Impact of the COVID-19 School Closures

AAPS Defendants argue that "the AAPS closure for in-person instruction was universal" and thus not discriminatory.  (ECF No. 34, PageID.528.)

In *Payan v. Los Angeles Community College District*, 2:17-cv-01697 (9th Cir., August 24, 2021), the Court of Appeals for the Ninth Circuit recently held that there

is a private right of action for disparate impact claims under § 504, Title II of the ADA and the equal protection clause of the Fourteenth Amendment. *Payan*, 17-cv-01697, August 24, 2021 Opinion (ECF No. 44-2). In *Payan*, blind students asserted that the Los Angeles City College discriminated against them under Section 504 and the ADA. *Id*. at Page 6 of Opinion. On appeal, the Los Angeles Community College District ("LACCD") challenged the district court's application of "a disparate impact framework to Plaintiff's disability discrimination claims." *Id*. at Page 11 of Opinion. The Court asked the parties to brief the Supreme Court's holding in *Alexander v. Sandoval*, 532 U.S. 275 (2001). In 2001, the Supreme Court held that "no private right of action exists to enforce the disparate impact discrimination regulations promulgated under Title VI of the Civil Rights Act of 1964." *Id*. at Page 14 of Opinion. The Court analyzed the line of reasoning that led to that conclusion and held that "because the limitation is not based on the statutory text of the Civil Rights Act, the similar statutory language in Section 504 and the ADA does not create an analogous limitation on disparate impact disability discrimination claims." *Id*. at Page 16 of Opinion. The Court further stated that "[i]f we follow *Sandoval* through the equal protection jurisprudence governing disability-based classifications, the outcome remains the same." *Id*. at Page 17 of Opinion. As such, plaintiffs are allowed to bring disparate impact claims under the ADA, §504 and §1983.

At this stage of the proceedings, Plaintiffs' allegations of significant regressions and loss of skills because of the closings support a claim that the AAPS Defendant's conduct in failure to protect their procedural rights violated Section 504, the ADA, and the Equal Protection Clause of the Fourteenth Amendment. Further discovery regarding the disparate impact of these closings is warranted.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court deny AAPS Defendants' Motion to Dismiss.

Respectfully submitted,
Brain Injury Rights Group
*Attorneys for Plaintiffs*

By: ***/S/ Charlotte G. Carne***
Charlotte G. Carne(P61153)
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

18

## EXHIBITS

| No. | Exhibit |
|-----|---------|
| 1 | *Education in a Pandemic:   The Disparate Impacts of COVID-19 on America's Students,* United States Department of Education, 2021. |

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on September 9, 2021, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to all attorneys of record in this matter.

By: ____ /S/ Charlotte G. Carne
Charlotte G. Carne (P61153)
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

20