UNITED STATES DISTRICT COURT
EASTERN DISTRICT MICHIGAN

RITA C. SIMPSON-VLACH,
ALAN SIMPSON-VLACH,
on behalf of A.S. and M.S., and
individually, KATHY BISHOP,
CHRISTOPHER PLACE,
on behalf of C.P. and H.P, and
individually,

|  |  |
|---|---|
| Plaintiffs, | Civil Action No. 21-cv-11532 |
| v. | Honorable Judith E. Levy |

MICHIGAN DEPARTMENT OF EDUCATION,
ANN ARBOR PUBLIC SCHOOLS,
WASHTENAW INTERMEDIATE SCHOOL DISTRICT,
DR. JEANICE SWIFT, in her official capacity,
DR. MARIANNE FIDISHIN, in her official capacity,
SCOTT MENZEL, in his official capacity,
NAOMI NORMAN, in her official capacity,
MICHAEL F. RICE, Ph.D., in his official capacity,

Defendants.
_____/

| | |
|---|---|
| Charlotte G. Carne (P61153)<br>Rory J. Bellantoni<br>Brain Injury Rights Group<br>Attorneys for Plaintiffs<br>300 East 95th Street, Suite 130<br>New York, New York 10128<br>646-850-5035<br>charlotte@pabilaw.org | Neil Giovanatti (P82305)<br>Assistant Attorney General<br>Attorney for State Defendants<br>Michigan Department of Attorney General<br>Health, Education & Family Services<br>P.P. Box 30758<br>Lansing, MI 48909<br>(517) 335-7603<br>giovanattin@michigan.gov |
| Richard J. Landau (P42223)<br>Attorney for AAPS Defendants | Timothy J. Mullins (P28021)<br>John L Miller (P71913) |

| 5340 Plymouth Rd.<br>Suite 200<br>Ann Arbor, MI 48105<br>734-865-1585<br>rjlandau@rjlps.com | Travis M. Comstock (P72025)<br>Giarmarco, Mullins & Horton, P,C.<br>Attorneys for WISD Defendants<br>Troy, MI 48084<br>(248) 457-7020<br>tmullins@gmhlaw.com<br>jmiller@gmhlaw.com<br>tcomstock@gmhlaw.com |
| --- | --- |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs, Rita C. Simpson-Vlach, Alan Simpson-Vlach, Kathy Bishop, and Christopher Place, individually and on behalf of their special needs children (collectively referred to as "Plaintiffs"), for their putative class, request a Temporary Restraining Order Against the Ann Arbor Public Schools ("AAPS"), the Washtenaw Intermediate School District ("WISD"), the Michigan Department of Education ("MDE"),  Dr. Jeanice Swift, Dr. Marianne Fidishin, Scott Menzel, Naomi Norman, and Michael F. Rice, Ph.D.

This motion is brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, *et seq* ("IDEA"), the Michigan Administrative Rules for Special Education, § 341.1717 *et seq*. ("MARSE") and the concomitant implementing regulations, case law, and public policy. All class members seek injunctive relief requesting that the Court enjoin Defendants from moving Plaintiffs and putative class members from in-person instruction to remote, virtual, instruction without complying with the procedural safeguards provided by IDEA.

ii

This motion is supported by the accompanying brief in support thereof and attached exhibits.  Pursuant to Local Rule 7.1 plaintiffs conferred with defendants prior to filing this motion to seek concurrence.  Plaintiffs and Defendants continue to meet and confer, but Defendants did not concur in the relief requested in the motion prior to when the facts and circumstances necessitated the filing of the motion.

WHEREFORE, plaintiffs respectfully request that this motion be granted.

Respectfully submitted,

**/s/Charlotte G. Carne**
Charlotte G. Carne (P61153)
Attorney for Plaintiffs
Brain Injury Rights Group
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT MICHIGAN

RITA C. SIMPSON-VLACH,
ALAN SIMPSON-VLACH,
on behalf of A.S. and M.S., and
individually, KATHY BISHOP,
CHRISTOPHER PLACE,
on behalf of C.P. and H.P, and
individually,

                            Plaintiffs,           Civil Action No. 21-cv-11532
v.                                      Honorable Judith E. Levy

MICHIGAN DEPARTMENT OF EDUCATION,
ANN ARBOR PUBLIC SCHOOLS,
WASHTENAW INTERMEDIATE SCHOOL DISTRICT,
DR. JEANICE SWIFT, in her official capacity,
DR. MARIANNE FIDISHIN, in her official capacity,
SCOTT MENZEL, in his official capacity,
NAOMI NORMAN, in her official capacity,
MICHAEL F. RICE, Ph.D., in his official capacity,

                            Defendants.
_____/

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER**

iv

## <u>TABLE OF CONTENTS</u>

I.   STATEMENT OF FACTS ..................................................................1

II.   LEGAL STANDARDS...............................................................2

III.   ANALYSIS ..............................................................................5

*A.   Plaintiffs are not Required to Exhaust Administrative Remedies* ...................5

*B.   This Court Should Issue a Temporary Restraining Order enjoining AAPS from moving Plaintiffs to remote, virtual, instruction without complying with the procedural safeguards provided by IDEA* ..............................................................7

*C.   This Court Should Issue a Temporary Restraining Order Enjoining MDE and the WISD from Allowing its School Districts to Move Plaintiffs to Remote, Virtual, Instruction in Violation of IDEA* .........................................................13

IV.   CONCLUSION ...........................................................................15

# TABLE OF AUTHORITIES

*Page(s)*

**Federal Cases**

*Ashland Sch. Dist. v. Parents of Student E.H.*,
 587 F.3d 1175 (9th Cir. 2009) .......................................................................... 9, 10

*Atlanta Cmty. Sch. v. Alpena-Montmorency-Alcona Educ. Serv. Dist.*,
 2012 WL 4133563 (E.D. Mich. September 18, 2012) .................................. 16, 17

*Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook Cty., Ill.*
 *v. Illinois State Bd. of Educ.*, 103 F.3d 545 (7th Cir. 1996) .................................... 3

*Blackman v. D.C.*,
 185 F.R.D. 4 (D.D.C. 1999) ................................................................................ 12

*Blackman v. D.C.*,
 277 F. Supp. 2d 71 (D.D.C. 2003) ... ……………………………………………11

*C.H. v. Cape Henlopen Sch. Dist.*,
 606 F.3d 59 (3d Cir. 2010) ..................................................................................... 2

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
 400 F.3d 508 (7th Cir. 2005) .................................................................................. 3

*Charles H. v. D.C.*,
 2021 WL 2946127 (D.D.C. June 16, 2021) ....................................................... 8, 9

*Cochran v. D.C.*,
 660 F. Supp. 314 (D.D.C. 1987) ............................................................................ 4

*Covington v. Knox Cty. Sch. Sys.*,
 205 F.3d 912 (6th Cir. 2000), amended on denial of reh'g ................................... 7

*Cox v. Brown*,
 498 F. Supp. 823 (D.D.C. 1980) .......................................................................... 11

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
689 F. Supp. 197 (S.D.N.Y. 1988) ................................................................ 4, 7

*D.K. v. D.C.*,
983 F. Supp. 2d 138 (D.D.C. 2013) ...................................................... 15

*D.M. v. New Jersey Dep't of Educ.*,
801 F.3d 205 (3d Cir. 2015) ................................................................ 3, 8, 15

*D.M. v. New Jersey Dep't of Educ.*,
2014 WL 4271646 (D.N.J. August 28, 2014) ...................................... 5, 6

*DeLeon v. Susquehanna Cmty. Sch. Dist.*,
747 F.2d 149 (3d Cir. 1984) ................................................................ 10

*Drinker by Drinker v. Colonial Sch. Dist.*,
78 F.3d 859 (3d Cir. 1996) ........................................................ 3, 9, 13, 15

*Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-*,
137 S. Ct. 988, 197 L. Ed. 2d 335 (2017) ...................................... 8, 9, 11

*Gore v. D.C.*,
67 F. Supp. 3d 147 (D.D.C. 2014) ...................................................... 15

*Honig v. Doe*,
484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988) ................................ Passim

*J.F. v. Byram Twp. Bd. of Educ.*,
629 F. App'x 235 (3d Cir. 2015) ........................................................ 10

*Jackson by Thompson v. Franklin Cty. Sch. Bd.*,
765 F.2d 535 (5th Cir. 1985) ................................................................ 3

*James v. D.C.*,
949 F. Supp. 2d 134 (D.D.C. 2013) ...................................................... 15

*Johnson ex rel. Johnson v. Special Educ. Hearing Off., State of Cal.*,
   287 F.3d 1176 (9th Cir. 2002).................................................................. 3

*K.T. ex rel. S.W. v. W. Orange Bd. of Educ.*,
   2001 WL 1715787 (D.N.J. Oct. 23, 2001)........................................... 5, 6

*Kuszewski ex rel. Kuszewski v. Chippewa Valley Sch.*,
   131 F. Supp. 2d 926 (E.D. Mich. 2001).................................................. 4

*Kuszewski v. Chippewa Valley Sch. Dist.*,
   56 F. App'x 655 (6th Cir. 2003)............................................................. 4

*LV v. New York City Dept. of Educ., 03-CV-9917 (LAP)*, 2021 WL 663718
   (S.D.N.Y. Feb. 18, 2021)…………………………………………………..13

*M.R. v. Ridley Sch. Dist.*,
   744 F.3d 112 (3d Cir. 2014)................................................................. 13

*Miss Am. Org. v. Mattel, Inc.*,
   945 F.2d 536 (2d Cir. 1991).................................................................. 5

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
   297 F.3d 195 (2d Cir. 2002).................................................................. 5

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*,
   600 F.3d 1104 (9th Cir. 2010)....................................................... 3, 5, 8

*Olu-Cole v. E.L. Haynes Pub. Charter Sch.*,
   930 F.3d 519 (D.C. Cir. 2019) .............................................................. 3

*Pardini v. Allegheny Intermediate Unit*,
   420 F.3d 181 (3d Cir. 2005)................................................................. 13

*Parents of Student W. v. Puyallup Sch. Dist., No. 3*,
   31 F.3d 1489 (9th Cir. 1994)............................................................... 13

*R.B. v. Mastery Charter Sch.*,
    532 F. App'x 136 (3d Cir. 2013) ............................................................ 2

*Reid ex rel. Reid v. D.C.*,
    401 F.3d 516 (D.C. Cir. 2005) .............................................................. 8

*Ridley Sch. Dist. v. M.R.*,
    575 U.S. 1008, 135 S. Ct. 2309, 191 L. Ed. 2d 977 (2015) ................................ 14

*S.H. v. State-Operated Sch. Dist. of City of Newark*,
    336 F.3d 260 (3d Cir. 2003) .................................................................. 16

*Smith v. Robinson*,
    468 U.S. 992, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984) ...................................... 6

*Spiegler v. D.C.*,
    866 F.2d 461 (D.C. Cir. 1989) .............................................................. 12

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
    96 F.3d 78 (3d Cir. 1996) .................................................................. 3, 6

*Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*,
    88 F.3d 1466 (6th Cir. 1996) ............................................................... 4, 6

*V.D. v. State*,
    403 F. Supp. 3d 76 (E.D.N.Y. 2019) ....................................................... 6

*Ventura de Paulino v. New York City Dep't of Educ.*,
    959 F.3d 519 (2d Cir. 2020) ............................................................... 3, 4

*Zdrowski v. Rieck*,
    119 F. Supp. 3d 643 (E.D. Mich. 2015) .................................................... 7

*Zvi D. by Shirley D. v. Ambach*,
    694 F.2d 904 (2d Cir. 1982) ............................................................... 13

## **Federal Statutes**

20 U.S.C. § 1400 ............................................................................................... 9

20 U.S.C. § 1401(9)(D) ................................................................................... 11

20 U.S.C. § 1401(26) ....................................................................................... 10

20 U.S.C. § 1412(a)(1) ...................................................................................... 9

20 U.S.C. § 1414(d)(1)(A)(i)(IV)(bb) ............................................................. 8

20 U.S.C. § 1415 (b) (3) ................................................................................... 8

20 U.S.C. § 1415(c)(1) ................................................................................. 7, 8

20 U.S.C. § 1415(j) ............................................................................... 2, 3, 4, 5

**State Statutes**

Mich. Comp. Laws § 380.1701 ....................................................................... 16

**Federal Rules**

Fed. R. Civ. P. 65 .............................................................................................. 4

**Federal Regulations**

34 C.F.R. § 300.2(b)(1) ..................................................................................... 8

34 C.F.R. § 300.518 .......................................................................................... 2

**Other Authorities**

CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT
PL 116-136 ...................................................................................................... 13

## I.   STATEMENT OF FACTS

On December 31, 2021, Superintendent Janice Swift announced a delay in Ann Arbor Public School's return to in-person instruction until Monday, January 10, 2022. (Exhibit 1, Email Communication from Superintendent Swift). Pursuant to this email, AAPS students would continue their winter break on Monday, January 3, 2022, and Tuesday, January 4, 2022, and return to school virtually on Wednesday, January 5, 2022. (*Id*.) Students would return to in-person instruction on Monday, January 10, 2022. (*Id*.) Superintendent Swift also announced a "virtual Town Hall to update our AAPS community" on Wednesday, January 5, 2022, at 6:00 p.m. (*Id*.) Superintendent Swift also stated, "[t]o preserve as much learning time as possible, students, staff and families should prepare to have a back-up plan in place for the possible temporary transition to virtual learning." *Id*.

Since the pandemic's beginning, we have learned that students attending school remotely suffer socially, emotionally, and academically.[1] Special education students suffer more so than non-disabled students. *Id*. The named plaintiffs in the case at bar illustrate this trend.  (Exhibit 2, Multidisciplinary Evaluation Team (MET) Report.)

---

[1]   Educational Researcher, Vol. XX No. X, pp. 1 –4 DOI: 10.3102/0013189X211031551. Article reuse guidelines: sagepub.com/journals-permissions © 2021 AERA.
  https://journals.sagepub.com/doi/full/10.3102/0013189X211031551

Plaintiffs seek a Temporary Restraining Order to enjoin AAPS from changing the Plaintiffs' and putative class members' current educational placement from in-person instruction to remote, virtual instruction in violation of the IDEA. If AAPS intends to move to remote, virtual instruction, AAPS must provide notice of the change of placement to all students with Individual Education Programs ("IEPs"), and dates for IEP meetings to discuss how the districts will ensure the students receive a free and appropriate public education ("FAPE") during such closure. On the other hand, the AAPS can proactively plan to staff special education classrooms and some general education classrooms for in-person instruction for students with qualifying special needs under IDEA, who simply cannot learn remotely. Plaintiffs also seek to enjoin the WISD and MDE from allowing their school districts and local educational agencies ("LEAs") from changing the educational placement of students with qualifying disabilities under IDEA to virtual, remote learning without complying with the procedural safeguards outlined in IDEA.

## II.    LEGAL STANDARDS

20 U.S.C. § 1415(j), known as the IDEA's stay-put provision, provides in pertinent part, "during the pendency of any proceedings conducted pursuant to this section unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j), 34 C.F.R. § 300.518. The stay-put provision "protects the status

quo of a child's educational placement" by preventing "school districts from effecting unilateral change in a child's educational program." *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 139–40 (3d Cir. 2013); *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010); *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996); *See Honig v. Doe*, 484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). *See also Jackson by Thompson v. Franklin Cty. Sch. Bd.*, 765 F.2d 535, 538 (5th Cir. 1985), *abrogated by Honig v. Doe*, 484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). A parent may invoke the stay-put provision when a school proposes a change in the child's "then-current educational placement." *Id.*; *See* 20 U.S.C. § 1415(j).

Many Courts have referred to § 1415 (j), IDEA's stay-put provision, as providing an automatic injunction.[2] *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020), *cert. denied,* 141 S. Ct. 1075, 208 L. Ed. 2d 534 (2021), *reh'g denied* 141 S. Ct. 1530, 209 L. Ed. 2d 262 (2021); *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519 (D.C. Cir. 2019); *D.M. v. New Jersey Dep't of Educ.*, 801 F.3d 205 (3d Cir. 2015); *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010); *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508 (7th Cir. 2005);

---

[2] *See Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay put injunction to an automatic stay in a bankruptcy case) (citing *Honig*, 484 U.S. at 326–37).

3

*Johnson ex rel. Johnson v. Special Educ. Hearing Off., State of Cal.*, 287 F.3d 1176 (9th Cir. 2002); *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859 (3d Cir. 1996); *Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook Cty., Ill. v. Illinois State Bd. of Educ.*, 103 F.3d 545 (7th Cir. 1996); *Kuszewski ex rel. Kuszewski v. Chippewa Valley Sch.*, 131 F. Supp. 2d 926, 928 (E.D. Mich. 2001), *aff'd sub nom. Kuszewski v. Chippewa Valley Sch. Dist.*, 56 F. App'x 655 (6th Cir. 2003); *Ridley School Dist. v. M.R.*, 2015 WL 1619420, at *4 (The U.S. Supreme Court "has emphasized that the provision's text is 'unequivocal' and 'states plainly' that the child 'shall' remain in his current educational placement 'during the pendency of any proceedings initiated under the act'"); *see Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

Where the IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction **designed to maintain the child's educational status quo while the parties' dispute is being resolved**, and the traditional preliminary injunction standards do not apply. *Ventura de Paulino*, 959 F.3d at 529; *see also Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988), *see Cochran v. D.C.*, 660 F. Supp. 314, 319 (D.D.C. 1987)(although traditional preliminary injunction standards were not met, the district court found that injunction under the stay-put provision *would nonetheless issue)*. In addition, an automatic injunction may issue under the IDEA's

stay-put provision in the absence of administrative proceedings. Requiring plaintiffs to go through the administrative process to obtain an injunction under the IDEA's stay-put provision would be putting form over substance. *D.M. v. New Jersey Dep't of Educ.*, No. CIV.A. 14-4620 ES, 2014 WL 4271646, at *6 (D.N.J. August 28, 2014). As the Court in *D.M.* recognized, the "language of 1415(j) is unequivocal and admits of no exceptions ... the stay-put provision is designed to ensure stability and consistency in a disabled child's education when that consistency may otherwise be elusive." *D.M.*, 2014 WL 4271646, at *6; *K.T. ex rel. S.W. v. W. Orange Bd. of Educ.*, No. 01CIV.3208 (WGB), 2001 WL 1715787, at *2 (D.N.J. Oct. 23, 2001) (internal quotations and citations omitted).

## III.   ANALYSIS

### A.   *Plaintiffs are not Required to Exhaust Administrative Remedies*

Where Plaintiffs like those in the case at bar allege violations of the IDEA's stay-put provision as outlined in § 1415(j), exhaustion of administrative remedies is not required before bringing an action in Federal Court. *N.D. ex rel. parents acting as guardians ad litem*, 600 F.3d at 1110. The reasoning behind this rule is that "[t]he administrative process is 'inadequate' to remedy violations of § 1415(j)." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002), *citing Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir. 1991).

The stay-put provision is one of those procedural safeguards that "protect[s] handicapped children and their parents" by "block[ing] school districts from effecting unilateral change in a child's educational program." *Susquenita School Dist.*, 96 F.3d 78; *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466 (6th Cir. 1996); *V.D. v. State*, 403 F. Supp. 3d 76 (E.D.N.Y. 2019). As stated above, the protection of IDEA's stay-put provision is available to disabled students even where administrative proceedings have not been commenced, where such students' then-current educational placements are in danger of being changed. *D.M. v. New Jersey Dep't of Educ.*, No. CIV.A. 14-4620 ES, 2014 WL 4271646, at *6 (D.N.J. August 28, 2014).

Parents may also bypass the administrative process where exhaustion would be futile or inadequate. *Honig*, 484 U.S. at 326–27; *see Smith v. Robinson*, 468 U.S. 992, 1014, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984), n. 17, (citing cases); *see also* 121 Cong. Rec. 37416 (1975)(remarks of Sen. Williams)("[E]xhaustion ... should not be required ... in cases where such exhaustion would be futile either as a legal or practical matter"); *Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 664 (E.D. Mich. 2015) (Exhaustion not required if it would be futile or inadequate to protect the Plaintiff's rights). Moreover, where Plaintiffs were not given full notice of their procedural rights under the IDEA, such Plaintiffs need not exhaust administrative remedies.

6

*Zdrowski*, 119 F. Supp. 3d at 664, citing *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000), *amended on denial of reh'g* (May 2, 2000).

Applying this case law to the case at bar, Plaintiffs are not required to exhaust their administrative remedies before filing this motion.

**B.    *This Court Should Issue a Temporary Restraining Order enjoining AAPS from moving Plaintiffs to remote, virtual, instruction without complying with the procedural safeguards provided by IDEA***

IDEA affords extensive procedural rights to parents who believe school districts are failing to fulfill the statutory mandate of a FAPE. For example, IDEA requires an LEA to give prior written notice of any action proposed by the LEA regarding the provision of a FAPE, particularly where the proposed action results in a change in the placement of a student's educational program – the educational status quo. 20 U.S.C. § 1415(c)(1). Congress envisioned a significant parental role in the preparation of the IEP, in that the Act establishes a variety of procedural protections that ensure parents have an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of decisions with which they disagree. *Cronin*, 689 F. Supp. at 200–01, citing *Honig*, 108 S. Ct. at 598.

The IDEA includes several procedural safeguards "that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311–12. For example, 20 U.S.C. § 1415 (b) (3) ***requires*** prior

7

written notice to the child's parents whenever the local educational agency proposes initiating or changing an IEP, and 20 U.S.C. § 1415 (c) (1) describes what is required in that notice. Each Plaintiff's educational status quo means "the last, uncontested status which preceded the pending controversy." *N.D. ex rel. parents acting as guardians ad litem*, 600 F.3d at 1112; *D.M.*, 801 F.3d at 218, *citing N.D. ex rel. parents acting as guardians ad litem*, 600 F.3d 1104.

If state agencies deviate from Student IEPs, those deviations rob students of a reasonable chance "to achieve passing marks and advance from grade to grade" – resulting in a failure to provide FAPE in violation of IDEA. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994, 197 L. Ed. 2d 335 (2017); *Charles H. v. D.C.*, No. 1:21-CV-00997 (CJN), 2021 WL 2946127, at *2 (D.D.C. June 16, 2021); see, *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 519 (D.C. Cir. 2005); 20 U.S.C. § 1414(d)(1)(A)(i)(IV)(bb). "[A]ll political subdivisions of a State involved in the education of children with disabilities" **must** cooperate to ensure that disabled students receive a FAPE according to the terms of their IEPs." 34 C.F.R. § 300.2(b)(1); *Charles H. v. D.C.*, No. 1:21-CV-00997 (CJN), 2021 WL 2946127, at *1 (D.D.C. June 16, 2021). A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP. *Charles H.*, 2021 WL 2946127, at *2.

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.,* requires States to provide disabled students with programming to meet their many needs. A State that receives federal funding under IDEA "must provide a free appropriate public education, or FAPE, to all eligible children." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993, 197 L. Ed. 2d 335 (2017); *see also,* 20 U.S.C. § 1412(a)(1). A FAPE, as the Act defines it, includes both "special education" and "related services." *Id.* at 994. "Special education" is specially designed instruction to meet the unique needs of a child with a disability, and "related services" are the support services required to assist a child in benefiting from that instruction. *Id.*

The instruction and services provided by school districts must meet each disabled student's academic, social, health, emotional, communicative, physical, and vocational needs. *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1185 (9th Cir. 2009). To meet these needs, a school district's services include developmental, corrective, and other supportive services such as psychological, physical, and occupational therapy and social work. *Id.* Providing the IDEA's mandatory "special education" and "related services" requires in-person education for nearly all disabled students. Children with disabilities, including Plaintiffs herein, suffer significantly from the lack of in-person instruction. Additionally, disabled students require more services than simply in-person instruction, including

services from specialists such as occupational therapists, behavior specialists, and counselors. *See* 20 U.S.C. § 1401(26). As such, school districts must be able to provide in-person services.

In the instant matter, each Plaintiff's status quo educational placement is an in-person learning environment, with in-person related service sessions in the form of "push-in" or "pull-out" services – or a combination thereof. By changing the way Plaintiffs receive their educational services without regard to IDEA's procedural safeguards, Defendants deny Plaintiffs the education guaranteed to them – the FAPE guaranteed by the IDEA. Each day a child is denied a FAPE by such procedural dereliction of a school system, they are harmed again. *See Cox v. Brown*, 498 F. Supp. 823, 828–29 (D.D.C. 1980) (irreparable harm results when students "[lack] each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling their immediate needs"). As the Court in *Blackman v. D.C.*, 277 F. Supp. 2d 71, 79– 80 (D.D.C. 2003) held:

> [T]he failure of the District to comply with its statutory obligations and provide appropriate educational placements can have a devastating impact on a child's well-being. Any agency whose appointed mission is to provide for the education and welfare of children fails that mission when it loses sight of the fact that, to a young, growing person, time is critical. While a month in the life of an adult may be insignificant, the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our Plaintiff, a few months can make a world of difference in the life of that child.

*Blackman v. D.C.*, 185 F.R.D. 4, 7–8 (D.D.C. 1999) (quoting *Foster v. District of Columbia,* Civil Action No. 82–0095, Memorandum Opinion and Order of February 22, 1982, at 4 (D.D.C. February 22, 1982)); *see also Spiegler v. D.C.*, 866 F.2d 461, 466–67 (D.C. Cir. 1989) (IDEA's procedural requirement for periodic and individualized assessments of each special education child "evinces a recognition that children, particularly young children, develop quickly and that a placement decision that may have been appropriate a year ago may no longer be appropriate today").

A school district's unilateral removal of a disabled student from his/her educational program, or alteration of the student's educational program, for more than ten days in a school year, constitutes a "change in placement," **which must be undertaken only within the protective framework of the IDEA.** *Honig*, 484 U.S. at 323; *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1495 (9th Cir. 1994). There are no COVID exceptions to the IDEA.[3]

---

[3] *See,* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, ("CARES Act"), March 27, 2020, 134 Stat 281, required the Secretary of Education to prepare a report regarding whether waivers of the IDEA's requirements were necessary during the pandemic. In her report, then-Secretary of Education Betsy Devos expressly declined to request "waiver authority for any of the core tenets of the IDEA"--including, "most notably," the right to a FAPE--leaving those obligations in place. U.S. Sec'y of Educ. Betsy Devos, Report to Congress: Recommended Waiver Authority under Section 3511(d)(4) of Division A of the CARES Act 11 (2020). *LV v. New York City Dept. of Educ.*, 03-CV-9917 (LAP), 2021 WL 663718, at *6 (S.D.N.Y. Feb. 18, 2021).

In *M.R. v. Ridley Sch. Dist.*,[4] the Court of Appeals for the Third Circuit

provided a valuable discussion of the automatic injunction included in IDEA's "stay-

put" rule:

> ***"Once a court ascertains the student's current educational placement, the movants are entitled to an order [maintaining that placement] without satisfaction of the usual prerequisites to injunctive relief."*** *Drinker by Drinker*, 78 F.3d at 864 (quoting *Woods v. N.J. Dep't of Educ.,* No. 93–5123, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) 439, 440 (3d Cir. September 17, 1993)); *see Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 188 (3d Cir. 2005) ("Congress has already balanced the competing harms as well as the competing equities"); *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982) ("The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors....").

*Id.* at 118–119 (footnotes omitted; emphasis added). Applying this case law to the

case at bar, this Court should grant an automatic injunction enjoining Defendants

from moving Plaintiffs and putative class members from in-person instruction to

remote, virtual instruction. Under *Ridley*, the Court should look to Plaintiffs' IEPs

"actually functioning when the 'stay put' provision was "triggered" or "invoked."

*Ridley Sch. Dist. v. M.R.*, 575 U.S. 1008, 135 S. Ct. 2309, 191 L. Ed. 2d 977 (2015).

The common factor in each Plaintiff's IEP is that none of the current IEPs contain

language about virtual instruction or services.

Currently, AAPS students are continuing their winter break on Monday,

January 3, 2022, and Tuesday, January 4, 2022, and returning to school virtually on

---

[4] *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112 (3d Cir. 2014).

Wednesday, January 5, 2022. Ideally, they will return to school in person on Monday, January 10, 2022. However, Superintendent Swift has hinted at a "temporary transition to virtual learning." (*Id.*). If AAPS unilaterally changes each Student-Plaintiff's current educational placement to a "temporary transition to virtual learning," AAPS would be violating the IDEA and depriving each Student of their right to a free appropriate public education under the Act. As such, the Court should enjoin AAPS from moving the Plaintiffs, and the putative class members from in-person instruction to remote, virtual, instruction in violation of the IDEA. If Defendants intend to move the Student-Plaintiffs to remote, virtual instruction, they must provide notice of the change of placement to all students with Individual Education Programs ("IEPs"), and dates for IEP meetings to discuss how AAPS will ensure the students receive a free and appropriate public education ("FAPE") during such closure. Alternatively, the school districts can proactively plan to staff special education classrooms and general education classrooms for in-person instruction for students with qualifying special needs under IDEA.

### C.   This Court Should Issue a Temporary Restraining Order Enjoining MDE and the WISD from Allowing its School Districts to Move Plaintiffs to Remote, Virtual, Instruction in Violation of IDEA

"The State of Michigan adopted the Michigan Mandatory Special Education Act ("MMSEA"), Mich. Comp. Laws § 380.1701 *et seq*. and the Michigan Administrative Rules for Special Education ("MARSE"), to govern the provision of

13

special education programs and services by Michigan Public School Districts." *See*

*Atlanta Cmty. Sch. v. Alpena-Montmorency-Alcona Educ. Serv. Dist.*, No. 11-14361,

2012 WL 4133563, at *4 (E.D. Mich. September 18, 2012). Under these statutes:

> [T]he Michigan State Board of Education has the duty to "[develop], establish, and continually evaluate and modify" a state plan for the delivery of special education programs and services in cooperation with intermediate school districts. Each intermediate school district, in turn, has the duty to "[develop], establish, and continually evaluate and modify" its plan for special education in cooperation with its constituent districts. Each intermediate school district is required to submit its plan to the State Board of Education for approval. Local school districts are required to provide special education programs and services, to the extent the same are required or can be provided "in accordance with the intermediate school district special education plan . . .."
>
> The State of Michigan annually distributes federal and state special education monies to [intermediate school districts]. Under the statutory scheme, [the intermediate school districts] deliver [] certain services and provide educational programs to students with disabilities and distributes funding to the local districts to meet additional needs.

*See id.* (citations omitted).

These statutes mimic IDEA. The State of Michigan developed these statutory

schemes because of IDEA's mandate that in order to receive IDEA Part B federal

funds, each State must have procedures that protect the rights of students with

disabilities. MDE and the WISD are responsible for ensuring compliance with

IDEA. To that end, the Court should enjoin MDE and the WISD from allowing its

school districts to move the student-Plaintiffs and all other students similarly situated

to remote, virtual instruction.

14

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request a Temporary Restraining Order.

Respectfully submitted,
Brain Injury Rights Group
*Attorneys for Plaintiffs*

By:      /S/ Charlotte G. Carne
Charlotte G. Carne (P61153)
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

15

**PLAINTIFFS' CERTIFICATE OF SERVICE
FOR MOTION FOR TEMPORARY RESTRAINING ORDER**

I hereby certify that on January 5, 2022, I electronically filed the Plaintiffs'

Motion for Temporary Restraining Order with the Clerk of the Court using the ECF

System, which will provide electronic copies to all attorneys of record in this matter.

By:  ___ /S/ Charlotte G. Carne
Charlotte G. Carne (P61153)
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

16