UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA C. SIMPSON-VLACH, ALAN
SIMPSON-VLACH, on behalf of
A.S and M.S., and individually,
KATHY BISHOP, CHRISTOPHER
PLACE, on behalf of C.P. and H.P.,
and individually,

        Plaintiffs,

v

MICHIGAN DEPT. OF EDUCATION,
ANN ARBOR PUBLIC SCHOOLS,
WASHTENAW ISD, DR. JEANICE
SWIFT, in her official capacity, DR.
MARIANNE FIDISHIN, in her official
capacity, SCOTT MENZEL, in his
official capacity, NAOMI NORMAN, in her
capacity, and MICHAEL F. RICE, PH.D.,
in his official capacity,

        Defendants,

_____/

Judge Judith E. Levy
Magistrate Judge Anthony P. Patti
No. 21-11532

---

**Washtenaw ISD's Response and Objection to Plaintiffs' Motion for Temporary Restraining Order**

---

Charlotte G. Carne (P61153)
Brain Injury Rights Group
*Attorney for Plaintiffs*
300 East 95th Street, Ste. 130
New York, NY 10128
(646) 850-5035
charlotte@pabilaw.org

Richard J. Landau (P42223)
RJ Landau Partners PLLC
*Attorney for Defendants, Ann Arbor Public Schools, Dr. Jeanice Swift and Dr. Marianne Fidishin*

Timothy J. Mullins (P28021)
John L. Miller (P71913)
Travis M. Comstock (P72025)
Giarmarco, Mullins & Horton, P.C.
*Attorneys for Defendants, Washtenaw ISD, Scott Menzel and Naomi Norman*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com
tcomstock@gmhlaw.com

5340 Plymouth Rd., Suite 200
Ann Arbor, MI 48105
(734) 865-1585
rjlandau@rjlps.com

Neil Giovanatti (P82305)
*Attorney for Michigan Dept. of Education*
Assistant Attorney General Health, Education
 & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
giovanattin@michigan.gov

# WASHTENAW INTERMEDIATE SCHOOL DISTRICT'S RESPONSE AND OBJECTION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES......................................................................... iv

QUESTION PRESENTED FOR REVIEW ....................................................... vii

STATEMENT OF MOST CONTROLLING AUTHORITY .......................... viii

ARGUMENT ........................................................................................1

1.    A temporary shift to virtual learning for all students is not a "change
      in placement" for IDEA eligible students ...................................................3

2.    The "stay put" is only triggered by the initiation of a due process
      complaint, not a district wide change that applies to all students ..............9

3.    The traditional injunctive elements apply to Plaintiff's request ...............14

4.    The IDEA does not require Washtenaw ISD to affirmatively prevent a
      school district from temporarily shifting to virtual instruction due to
      COVID.................................................................................................18

CONCLUSION.................................................................................21

## INDEX OF AUTHORITIES

*A.P. v. Bd. of Ed. for City of Tullahoma, Tennessee*,
160 F Supp 3d 1024 (E.D. Tenn., 2015) .........................................................9,11

*Brach v. Newsom*, 6 F.4th 904 (9th Cir. 2021), *reh'g en banc granted*,
18 F.4th 1031 (9th Cir. 2021) ................................................................................2

*Breathe v. City of Detroit*, 484 F. Supp. 3d 511 (E.D. Mich. 2020)....................14

*C.M. v. Jara*, No. 220CV1562, 2020 WL 8671980
(D. Nev., November 19, 2020) ............................................................................7

*Cole v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*,
954 F. Supp. 1214 (M.D. Tenn. 1997) ...............................................................11

*Cordrey v. Euckert*, 917 F.2d 1460 (6th Cir. 1990) ...........................................10

*D.M. v. New Jersey Dep't of Ed.*, 801 F.3d 205 (3rd Cir., 2015) .......................12

*E.E. by & through Hutchison-Escobedo v Norris Sch Dist*, __ F.4th __;
Case No. 20-17270, 2021 WL 2944735 (9th Cir., July 14, 2021) ....................11

*E.M.C. v. Ventura Unified Sch. Dist.*, No. 2:20-CV-09024-SVW-PD,
2020 WL 7094071 (C.D. Cal. Oct. 14, 2020) ......................................................6

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
958 F.3d 532 (6th Cir. 2020) ..............................................................................14

*Hernandez v. Grisham*, 508 F. Supp. 3d 893 (D.N.M. 2020) ..............................6

*Hines v Tullahoma City Sch. Sys.*, 156 F.3d 1229, 1998 WL 393814
(6th Cir., June 15, 1998) ....................................................................................10

*Honig v. Doe,* 484 U.S. 305 (1988) .....................................................................5

*In re New York City Department of Education*, Case No. 21-210,
122 LRP 827, New York State Educational Agency (December 8, 2021) ..........1

iv

*In re: Student with a Disability*, Case No. 21-006, 121 LRP 9952,
New York State Educational Agency (February 3, 2021) ....................................1

*J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020)........................ 1,3,4,5,17

*Kari H. By & Through Dan H. v. Franklin Special Sch. Dist.*,
125 F.3d 855, 1997 WL 468326 (6th Cir, 1997) ................................10

*Liebau v. Romeo Community Schools*, Case No. 306979,
unpublished per curiam decision of the Court of Appeals,
2013 WL 3942392 (July 30, 2013) ......................................................19

*N.D. ex rel parents acting as guardians ad litem v. Hawaii Dep't of Ed.*,
600 F.3d 1104 (9th Cir., 2010) ................................................ 5,6,7,11

*Ohio Republican Party v. Brunner*, 543 F.3d 357 (6th Cir. 2008) ....................14

*Round Rock Indep. Sch. Dist. v. Amy M.*, __ F. Supp. 3d __,
2021 WL 2102837 (W.D. Tex. May 19, 2021) ......................................5

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) .............................14

*Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*,
88 F.3d 1466 (6th Cir. 1996) ................................................................9

*Termine ex rel Termine v. William S. Hart Union High Sch. Dist.*,
219 F. Supp. 2d 1049 (C.D. Cal., 2002) .............................................12

*V.D. v. State*, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) ...........................................12

*Ventura*, 2020 WL 7094071 ...................................................... 6,15,16

*W.S. by Sonderman v. Ragsdale*, __ F. Supp. 3d __,
2021 WL 2024687 (N.D. Ga. May 12, 2021) .....................................17

## **Statutes**

MCL § 380.11a(3)(b) ...........................................................................19

MCL § 388.1701(4) ..............................................................................7

20 U.S.C. § 1415(5)(a) ............................................................................................6

20 U.S.C. § 1415(j) ...................................................................... 9,11,12,13

## QUESTION PRESENTED FOR REVIEW

**ISSUE ONE:** Ann Arbor Public Schools (AAPS) initiated a **four-day** temporary closure (by extending winter break and shifting to remote learning) of as a protective measure for all students and staff due to current Omicron COVID-19 variant surge. Contrary to Plaintiffs' assertion, no court has held that combating a global pandemic by temporarily shifting to virtual or on-line instruction is a "change in placement" under the IDEA requiring prior written notice and an IEP meeting. Should Plaintiffs' request for the extraordinary remedy of a temporary restraining order be denied?

**ISSUE TWO:** It is well-established that what is known as a "stay put" is only initiated or triggered when a parent (or student) **files** a due process complaint. Neither the Plaintiffs nor any putative class member has initiated a due process proceeding regarding the **four-day** shift to the virtual delivery of instruction. Should Plaintiffs' request for the extraordinary remedy of a temporary restraining order be denied because the "stay put" is not triggered by a **four-day** temporary shift to virtual instruction for **all** students?

**ISSUE THREE**: The "stay put" has not been triggered because no Plaintiff has initiated a due process proceeding. The traditional injunctive elements therefore apply. Have Plaintiffs meet their burden to demonstrate that the Court should grant this extraordinary relief?

## STATEMENT OF MOST CONTROLLING AUTHORITY

**Most Controlling Authority for Issue One:**  *Honig v. Doe,* 484 U.S. 305, 323, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *N.D. ex rel parents acting as guardians ad litem v. Hawaii Dep't of Ed.*, 600 F.3d 1104 (9th Cir., 2010); *J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020)

**Most Controlling Authority for Issue Two:** *Cordrey v. Euckert*, 917 F.2d 1460 (6th Cir. 1990); *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466 (6th Cir. 1996); *Hines v Tullahoma City Sch. Sys.*, 156 F.3d 1229, 1998 WL 393814 (6th Cir., June 15, 1998) (Table)

**Most Controlling Authority for Issue Three:** *Ohio Republican Party v. Brunner*, 543 F.3d 357 (6th Cir. 2008)

## ARGUMENT

The Plaintiffs seek a temporary restraining order (TRO) based on the assertion that the so-called "stay put" injunction prevents the Ann Arbor Public Schools ("AAPS") from making a **four-day** shift to virtual/on-line learning[1] because it allegedly is a "change in placement" under the IDEA. Quite astonishingly – or perhaps not so[2] – the Plaintiffs' motion is nearly devoid of any mention of the reason for the **four-day** shift – COVID-19[3].

With the Omicron variant surging all over the nation, the state, and Washtenaw County, the AAPS made the prudent and reasonable decision to have **all students** participate virtually in order to provide extra time for any student (or staff) that is positive to be identified before returning to school and potentially infecting

---

[1] The virtual days were January 5, 6, 7 and 10. The AAPS also extended its winter break for two days, i.e., January 3 – 4. See https://news.a2schools.org/superintendent-details-update-to-school-plans-following-winter-break/ (last accessed Jan. 14, 2022).

[2] Counsel for Plaintiffs here have been part of various court and administrative decisions considering the issue raised here – that a shift from in-person instructional delivery to virtual violates the IDEA *per se*. See, e.g., *J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020); *In re New York City Department of Education*, Case No. 21-210, 122 LRP 827, New York State Educational Agency (December 8, 2021); *In re: Student with a Disability*, Case No. 21-006, 121 LRP 9952, New York State Educational Agency (February 3, 2021) (both attached as Exhibit A). The administrative judges in particular have specifically noted that counsel is aware of the prior decisions rejecting their arguments, but counsel nevertheless continues to raise the issues. Plaintiffs' counsel's actions, of repeating arguments known to have been rejected, should not be countenanced by this Court.

[3] Plaintiffs mention COVID **exactly one time** – at page 11 of their motion.

1

dozens of other students. In addition, staffing shortages occasioned by the Omicron variant also required the temporary shift. (See FN 1, *supra*). Plaintiffs, however, contend that the IDEA requires AAPS, and **all other** school districts across the state of Michigan, to provide notice and an IEP meeting **prior to** making these decisions even with the everchanging and mutating COVID-19 pandemic.

The Plaintiffs' assertions are not only meritless but the relief they request jeopardizes a school district's authority and responsibility to make discretionary decisions that apply generally to IDEA eligible and general education students alike. Despite the COVID-19 pandemic being a part of our national life for nearly two years, and schools across the nation being online for nearly all of the 2020-21 school year, no federal court has held, in the context of COVID-19 precautionary measures to control the spread of the virus, that a temporary shift to virtual learning violates the IDEA for every disabled student in an entire district, county, or even a state.[4] Moreover, the majority of courts hold that the "stay put" the Plaintiffs' claim here is not even triggered unless a parent or student **files** a due process complaint – i.e.,

---

[4] Quite the contrary. The Ninth Circuit has held, although set for *en banc* review, that a county wide shift to virtual learning for all public-school students in an effort to slow the spread of COVID-19 did not violate the substantive due process protections of the 14th Amendment. *Brach v. Newsom*, 6 F.4th 904, 924 (9th Cir. 2021), *reh'g en banc granted*, 18 F.4th 1031 (9th Cir. 2021).

there must a pending proceeding under the IDEA's administrative remedial scheme.[5]

Plaintiffs, therefore, must still meet the traditional injunction elements. Plaintiffs fail

to do so because they have not alleged any irreparable injury, they are unlikely to

succeed on the merits of their theory, and the harm to the Defendants and the public

vastly outweighs any harm claimed by the Plaintiffs. The Court should therefore

deny Plaintiffs' motion.

1. **A TEMPORARY SHIFT TO VIRTUAL LEARNING FOR ALL STUDENTS IS NOT A "CHANGE IN PLACEMENT" FOR IDEA ELIGIBLE STUDENTS.**

The Plaintiffs' argument here regarding the triggering of the "stay put" by a

switch to online learning is identical to that of the plaintiffs in *J.T. v. de Blasio*, 500

F. Supp. 3d 137 (S.D.N.Y. 2020). The plaintiffs there argued that "that the provision

of remote services to students as a result of the closure of the schools during the

pandemic worked a change in the students' pendency." *J.T.*, 500 F. Supp. 3d at 187.

The court in *J.T.* rejected that argument for three reasons:

---

[5] Plaintiffs' counsel is well aware of that the decision in *J.T.*, 500 F. Supp. 3d at 187–88, held, among other things, that "[i]t is impossible to square the [U.S. Dep't of Education's] contemporaneous guidance with Plaintiffs' assertion that the City's **switch to remote learning** in light of the pandemic **constituted a change in placement** in and of itself. This Court will not second guess the USDOE. Accordingly, Plaintiffs have failed to sufficiently allege a change in placement **that triggers** the stay-put provision, and Plaintiffs are not entitled to pendency." (emphasis added).

- "the agency [U.S. Department of Education] charged with administering the IDEA program has issued guidance indicating that the provision of remote services **does not work** a change in placement[;]"

- " plaintiffs are challenging a system-side **administrative decision of general applicability** – an order shutting schools to all students (abled and disabled) and all staff during an unprecedented and life-threatening health crisis. . . Such an order does not work a change in pendency[;]" and

-  "Injunctive relief is forward looking, not backward looking. If a condition that would have warranted the entry of an injunction **has been cured** and it is clear that the condition could not reasonably be expected to recur, then there is no basis to enjoin." *Id.*, at 187-90 (all emphasis added).

The same analysis applies with equal force here. The U.S. Department of Education had not changed its guidance from early spring 2020 – the temporary provision of online or virtual learning **is not** a change in placement as contemplated by the IDEA.[6] Plaintiffs conspicuously avoid that guidance and fail to provide any other regulatory or case law authority for their theory. And, just as in *J.T.*, the decision to move to virtual learning for **four-days** is "an administrative decision of general applicability" that affects "all [AAPS] students (abled and disabled)"

---

[6] See also Exhibit C to Defendant Michigan Department of Education's Response (ECF No. 52-4, PageID.1548-49).

equally. AAPS' decision is, like the city order at issue in *J.T.*, a decision to shut the schools "during an unprecedented and life-threatening health crisis."[7]

Even one of the cases Plaintiffs cite refutes their argument. In *N.D. ex rel parents acting as guardians ad litem v. Hawaii Dep't of Ed.*, 600 F.3d 1104 (9th Cir., 2010), the Ninth Circuit rejected the argument that teacher furloughs resulting in all students losing 17 school days of was a change in the "educational placement" of IDEA eligible students. *Id.*, at 1116–17.[8] The Ninth Circuit stated that "[w]hen Congress enacted the IDEA, Congress did not intend for the IDEA to apply to system wide administrative decisions. Hawaii's furloughs affect all public schools and all students, disabled and non-disabled alike." *Id.*, at 1116. To hold that such furloughs amount to a change in the educational placements of IDEA eligible students "would be essentially to give the parents of disabled children veto power over a state's

_____

[7] The U.S. Supreme Court has, in an oft-cited decision, held that the overall purpose of the IDEA concerns the "total exclusion" of disabled students from a school. See *Honig v. Doe,* 484 U.S. 305, 325 n. 8 (1988). A **two-day** shift to virtual instruction is not the "total exclusion" of disabled students from AAPS because all students were shifted to virtual instruction.

[8] In *Round Rock Indep. Sch. Dist. v. Amy M.*, __ F. Supp. 3d __, 2021 WL 2102837 (W.D. Tex. May 19, 2021), the reverse of Plaintiffs' theory was asserted by the school district. The district there argued that because the plaintiff remained in virtual learning after the district returned to in-person instruction the plaintiff unilaterally changed their placement. The court rejected that argument stating that "[a] change in location alone does not qualify as a change in 'educational placement.' Rather, a change in placement occurs when there is a significant change in the student's program. [citations omitted] Considering the Covid-19 pandemic, Student's choice to attend Fusion virtually does not constitute a 'significant change' to her program." *Id.*, at *16.

decisions regarding the management of its schools. The IDEA did not intend to strip administrative powers away from local school boards and give them to parents of individual children[.]" *Id.*, at 1117.

Federal district courts have also rejected the argument that a school district's shift to virtual learning for all students violates the IDEA. For example, where the California Governor closed all schools in the spring of 2020 and some remained closed to in-person instruction in the fall of 2020, a district court held that because the "Ventura County public schools are currently limited to distance learning under the statewide framework" the plaintiff there was "unlikely to be entitled to modify this system-wide decision under the IDEA Act's stay put provision." *E.M.C. v. Ventura Unified Sch. Dist.*, No. 2:20-CV-09024-SVW-PD, 2020 WL 7094071, at *6 (C.D. Cal. Oct. 14, 2020) (attached as Exhibit B). The district court relied on *N.D.* for its conclusion that the plaintiff there was not likely to succeed on the claim that remote or virtual learning violated the "stay put" provision. *Id*. See also *Hernandez v. Grisham*, 508 F. Supp. 3d 893, 1001 (D.N.M. 2020) ("The Court, therefore, concludes that an **LEA's shift from in-person instruction to remote learning** -- for **both** students with disabilities and students without disabilities -- **does not violate** the IDEA's presumption against removing 'children with disabilities from the regular educational environment.' 20 U.S.C. § 1415(5)(a).") (emphasis added).

Applying the analysis and holdings of these cases here, Plaintiffs want "veto power" over the AAPS – or parents in any other school district in Michigan – regarding how to best manage the health and safety of all students during the COVID-19 pandemic. But "[t]he IDEA did not intend" to grant such power to parents. And subsequent courts applying *N.D.* to COVID-19 circumstances hold that "[a] school district's response to a pandemic is arguably greater reason for the Ninth Circuit's rule than a school district's response to financial difficulties." *C.M. v. Jara*, No. 220CV1562, 2020 WL 8671980, at *2 (D. Nev., November 19, 2020) (attached as Exhibit C).

Lastly, the Plaintiffs' theory – that a **four-day** temporary switch to virtual learning is a "change in placement" – would lead to absurd results in other school closures contexts. For example, did the west Michigan schools that closed for two days on January 6 and 7 due to a snowstorm dropping nearly 12" of snow in some areas change the placement of IDEA eligible students? (Exhibit D.) Under the Plaintiffs' theory those schools did. Thus, school districts across Michigan could never close for snow related reasons – even if not doing so greatly jeopardizes the safety of students on busses and parents driving children to school.[9] Rather, the

---

[9] Moreover, state law expressly allows school districts to automatically close for up to 6 days at their discretion of "acts of God" like snowstorms. Mich. Comp. Laws § 388.1701(4). No state or federal court has ever held that invoking this statutory authority amounts to a violation of the IDEA.

district would have to be prescient and send notice of snow days to all IDEA eligible students and arrange for IEP meetings for hundreds of students all before a snowstorm that can arise without warning.

Or did the recent teacher strike in Chicago that forced students to attend school virtually amount to a change in placement?[10] Under Plaintiffs' theory, the Chicago school district could never risk a strike or walk out during union bargaining because if the teachers strike the district is liable under the IDEA for changing the placement of all its IDEA eligible students.

And what about a tornado demolishing a school? Or spring floods or electrical blackouts? The Plaintiffs' absurd theory essentially requires that school across the state (and nation) **are legal required** by the IDEA to "come hell or high water".[11] That cannot be and is not what the IDEA intended. The Court should reject the Plaintiffs' argument that a **four-day** shift to virtual learning is a "change in placement" under the IDEA.

---

[10] See https://www.chicagotribune.com/news/ct-chicago-public-schools-reopen-covid-20220112-xuk5gmp5zfgdhedurxmygb2iza-story.html (last accessed Jan. 14, 2022).

[11] "The phrase originated in America around the mid-1800s and the earliest print reference is from 1882 in an Iowa newspaper, The Burlington Weekly Hawk-Eye." https://www.theidioms.com/come-hell-or-high-water/ (last accessed Jan. 6, 2022).

**2. THE "STAY PUT" IS <u>ONLY</u> TRIGGERED BY THE <u>INITIATION</u> OF A DUE PROCESS COMPLAINT, NOT A DISTRICT WIDE CHANGE THAT APPLIES TO ALL STUDENTS.**

Even if the **four-day** shift to virtual learning could be construed as a "change in placement," the IDEA's "stay put" provision (as it is commonly called) has not been triggered because Plaintiffs have not filed a due process complaint. "The so-called 'stay put' provision of the IDEA states that 'the child shall remain in the then-current educational placement' **pending** a due process proceeding to determine the appropriate permanent placement of the child unless the parents and the local educational agency agree otherwise." *A.P. v. Bd. of Ed. for City of Tullahoma, Tennessee*, 160 F Supp 3d 1024, 1028 (E.D. Tenn., 2015) (citing 20 U.S.C. § 1415(j)) (emphasis added). It is well-established in this Circuit that the "stay put" is limited to a specific situation in that it

> commands that **during the pendency** of any proceedings to challenge a change in a child's IEP, the child shall remain in the current educational placement unless the school authorities and parents agree otherwise. In other words, if the parents disagree with the new IEP developed by the M–Team, the child may 'stay put' in his current educational placement while the decision is appealed. The 'stay put' provision is premised on the rationale that preservation of the status quo, rather than an inappropriate reaction to an emergent situation, provides for the best interests of the child. The "stay put" provision insures that a school **cannot eject a child** and change his placement without complying with due process requirements. [*Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996) (citation omitted; emphasis added)]

In other words, the AAPS (or any other school district in Michigan) cannot **exclude** a particular child from attending school without preserving or maintaining the status

9

quo required by the student's IEP. AAPS has not "eject[ed]" or excluded the Plaintiffs in this situation. It has switched **all students**  - IDEA eligible and general education students alike – to virtual learning to protect **all students and staff** from a possible COVID-19 infection that could require a longer closure.

That the "stay put" is **only triggered** by the initiation or filing of a due process complaint is also well-established in this Circuit. "[T]he stay-put provision is activated **only when** a party has alleged such a violation and **initiated** administrative and judicial review." *Cordrey v. Euckert*, 917 F.2d 1460, 1468 (6th Cir. 1990) (emphasis added). The Sixth Circuit reiterated several years later that the provision only applies when a due process is filed. "Rather, the 'stay put' provision is activated **only when** a parent alleges that there has been a substantive violation of the Act and **has initiated** administrative and judicial review to challenge the [IEP] Team's decision." *Paul B.*, 88 F.3d at 1473 (emphasis added). See also *Hines v Tullahoma City Sch. Sys.*, 156 F.3d 1229, 1998 WL 393814 (6th Cir., June 15, 1998) (Table).

The Court later identified the three types of events that trigger the "stay put" protections.  "The section to which the stay-put provision refers, § 1415[(j)], speaks only of three types of proceedings: (1) due process hearings; (2) state administrative review; and (3) civil actions for review brought in either state or federal district court." *Kari H. By & Through Dan H. v. Franklin Special Sch. Dist.*, 125 F.3d 855, 1997 WL 468326, at *6 (6th Cir, 1997) (Table; citations omitted). The "stay put" is

10

therefore **only triggered** when a due process complaint is filed and remains in place through the administrative proceedings and further judicial review of any administrative decision.

District courts in this Circuit have uniformly applied this standard. "[T]he plaintiffs **triggered** the stay put provision upon the plaintiffs' **demands** for due process hearings[.]" *Cole v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 954 F. Supp. 1214, 1221–22 (M.D. Tenn. 1997) (emphasis added). "The so-called "stay put" provision of the IDEA states that "the child shall remain in the then-current educational placement" **pending** a due process proceeding to determine the appropriate permanent placement of the child unless the parents and the local educational agency agree otherwise." *A.P.*, 160 F. Supp. 3d at 1028 (citing 20 U.S.C. § 1415(j); emphasis added).

Appellate and district courts around the country uniformly apply the same rule. For example, the Ninth Circuit in *N.D.* stated that "[t]he heart of the case is whether the furloughs are a change in the educational placement of the disabled children such that the stay-put provisions apply." *N.D.*, 600 F.3d at 1113. Addressing when the "stay put" is triggered, the Court stated that "[a] parent can **request** a due process hearing and **invoke** the stay-put provision when the State proposes to change the child's educational placement." *Id.*, at 1114 (emphasis added). See also *E.E. by & through Hutchison-Escobedo v Norris Sch Dist*, __ F.4th __; Case No. 20-17270,

2021 WL 2944735, at *3 (9th Cir., July 14, 2021) ("[T]he 'then-current educational placement' refers to the educational setting in which the student is actually enrolled at the time the parents **request a due process hearing** to challenge a proposed change in the child's educational placement.") (citation omitted; emphasis added); *D.M. v. New Jersey Dep't of Ed.*, 801 F.3d 205, 211 (3rd Cir., 2015) ("In other words, **if** there are 'proceedings conducted pursuant to [§ 1415]' **ongoing** and the child will otherwise be moved from her 'then-current educational placement,' the child is entitled to an injunction against the change.") (emphasis added); *V.D. v. State*, 403 F. Supp. 3d 76, 91 (E.D.N.Y. 2019) ("Pursuant to § 1415(j), if a parent has **initiated a legal proceeding** under the IDEA challenging a proposed change in educational placement, she is entitled to an order requiring the state and the LEA to maintain her child's then-current educational placement during the pendency of the litigation.") (emphasis added); *Termine ex rel Termine v. William S. Hart Union High Sch. Dist.*, 219 F. Supp. 2d 1049, 1052-54, 1059 (C.D. Cal., 2002) ("Since the District cannot deny that Aja was actually receiving her education at Westmark **at the time that the due process hearing was filed**, then that is the 'then-current educational placement' for the purposes of the 'stay put,' end of story.") (emphasis added). Thus, the Sixth Circuit and other courts are clear that there is a direct connection between filing a due process complaint and invoking or triggering the "stay-put" provision in § 1415(j).

The plain language of § 1415(j) compels this conclusion as well. "[D]uring **the pendency of** any proceedings conducted **pursuant to this section**, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" 20 U.S.C. § 1415(j) (emphasis added). The "proceedings conducted pursuant to this section" refers to § 1415 and the due process complaint (§ 1415(b)(6) and (c)(2)) that begins the impartial adversarial administrative hearing procedure (§ 1415(f)). The case law confirms that the plain language requires the filing of a due process complaint to initiate or trigger the protection in § 1415(j). Asking for a TRO to in effect trigger the "stay put" runs contrary to the plain language as well as binding and persuasive case law.

Plaintiffs here have not filed a current due process complaint so as to trigger the "stay put" provision. The Plaintiffs have filed a lawsuit, not due process complaints. The Plaintiffs **previously** filed due process complaints but settled those prior to a hearing and orders dismissing those cases were entered several weeks ago. (Joint Statement, ECF No. 54.) Thus, because there is no change in placement and Plaintiffs have not filed a due process complaint, there is no basis for the "stay put" provision to be triggered. The Court should therefore deny the Plaintiffs' motion.

### 3. THE TRADITIONAL INJUNCTIVE ELEMENTS APPLY TO PLAINTIFF'S REQUEST.

Since no change in placement resulted from the **four-day** temporary shift to virtual instruction and the "stay put" has not been triggered, the Plaintiffs must meet the traditional elements for obtaining injunctive relief. The well-known factors for obtaining injunctive relief (either by TRO or preliminary injunction) are

> (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay. [*Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (citation omitted)]

"A temporary restraining order (TRO), like a preliminary injunction, 'is an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial.'" *Breathe v. City of Detroit*, 484 F. Supp. 3d 511, 515 (E.D. Mich. 2020)[12] (quoting *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020)). Granting a TRO is left to a district court's discretion. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019).

Regarding the first element, the Plaintiffs fail to articulate sufficient irreparable harm to warrant prohibiting the AAPS (or other schools within the Washtenaw ISD area) from temporarily shifting to virtual instruction due to COVID-19. The gist of Plaintiffs' argument appears to be that they are entitled to in-person

---

[12] The court clarified its order at Case No. 20-12363, 2020 WL 8575150 (E.D. Mich. Sept. 16, 2020).

delivery of programs and services because some programs or services may be better provided in-person. (Plfs.' Brief in Support, ECF No. 52, PageID.1390-91.) But contrary to Plaintiffs' assertion, whether an individual student with an IEP will "suffer significantly from the lack of in-person instruction" (ECF No. 52, PageID.1390) is something that can only be determined on an **individualized basis**, not as a general, across the board proposition. See *Ventura*, 2020 WL 7094071, at *7 (finding a lack of irreparable harm where question of whether remote instruction would result in long term, irreparable harm not demonstrated).

And Plaintiffs' contention that "school district must be able to provide in-person services" (ECF No. 52, PageID.1391) lacks any citation to authority to be credible. AAPS, like Washtenaw ISD and the other school districts in the county, certainly do provide in-person instruction for thousands of students with IEPs. But whether in-person instruction must occur or can be 'paused' for a day or two in the face of increasing risks to all students and staff from COVID-19 is the question. Missed programs or services can be made up if missing such will affect an individual student's access to FAPE or affect the progression towards their goals. Plaintiffs make no effort to demonstrate this other than to offer some evidence of possible

15

struggles during virtual learning in the past, which at least one court has held is insufficient. *Ventura*, *supra*.[13] Thus, Plaintiffs fail to show irreparable harm.

For the second element, as discussed above, Plaintiffs fail to show that a **four-day** shift to the delivery of instruction virtually for **all students** violates the IDEA. There is no "change in placement" from this temporary shift. See Argument 1, *supra*. Such an interpretation would preclude school districts from ever temporarily closing in-person instruction due to snowstorms, teacher strikes, electrical or other operational failures, acts of God, or a carbon monoxide release or discovery of asbestos in a school building or classroom. Or more current, what about when too many teachers are positive for COVID-19 that there are not enough to deliver instruction in-person?[14]

Nor has the "stay put" provision been triggered. As the Sixth Circuit has held, that provision is **only** triggered when a parent/student files a due process complaint. No due process complaints regarding the **four-day** shift to virtual instruction have been filed by any Plaintiff, and no "stay put" has been triggered. See also Argument 2, *supra*. They are therefore unlikely to succeed on the merits of such a claim.

---

[13] *Ventura* also held that while in some "exceptional circumstances" in-person services or instruction may be required despite a governmental or, as here, a school district decision to shift to virtual instruction, that required an **individualized** determination. *Ventura*, 2020 WL 7094071, at *5, 7. That was not done in that case, nor has it been done in this case.

[14] See https://www.chalkbeat.org/2022/1/5/22869138/schools-covid-omicron-shortages-chicago (last accessed January 7, 2022).

Courts often merge the third and fourth elements together when the defendant is a governmental entity. See, e.g., *W.S. by Sonderman v. Ragsdale*, __ F. Supp. 3d __, 2021 WL 2024687, at *3 (N.D. Ga. May 12, 2021) (citation omitted). In the context of COVID-19 and mask requirements by state, local, or school district administrators, the overwhelming weight of authority is that decisions made to protect the health and well-being of the public outweigh the various objections of those opposed to masks (or vaccines or quarantines). See, e.g., *W.S.*, 2021 WL 2024687, at *3 (School districts "have a right to rely on the recommendations given by reputable public health authorities . . . when deciding how to combat COVID-19, which has caused the worst public health crisis in a century. Those public authorities have recommended that students should wear masks while on school campus. The Court finds it is **not in the best interest of the public** to interfere with that guidance.") (emphasis added). *Cf. J.T.*, 500 F. Supp. 3d at 190 (Switch to virtual instruction delivery "was the product of (I say it yet again) a health crisis of unprecedented proportions – and an administrative decision made to protect the lives and health of students and staff, which this court is neither equipped nor prepared to second guess.").

Here, presumably, the AAPS considered various recommendations by the CDC, MDHHS, and other local or regional health authorities regarding how to best

17

address the surging cases in Washtenaw county.[15] Considering that students and staff were returning from the holiday break, and many had visited with extended family and others during that time, it was reasonable to expect there to be a higher probability of increased cases in schools. And that expectation proved accurate when the number of teachers that were either positive or in quarantine created a shortage of teachers to deliver in-person instruction. Proactive decisions to protect the health and well-being of students, staff, volunteers and the greater school community as well as the public at large certainly weigh heavily in favor of denying an injunction such as Plaintiffs' request.

## 4. The IDEA does not require Washtenaw ISD to affirmatively prevent a school district from temporarily shifting to virtual instruction due to COVID.

Plaintiffs make a final passing argument is that the Washtenaw ISD (as well as the MDE) have an affirmative duty to prevent local educational agencies, including AAPS, from temporarily shifting **all students** to virtual instruction when prudent for health and safety concerns presented by COVID-19. (ECF No. 52,

---

[15] Per CDC's COVID-19 Integrated County View data, there has been a total of 4,500 new cases between December 29, 2021 and January 5, 2022. https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Michigan&data-type=Risk&list_select_county=26161 (last accessed January 7, 222). That is a nearly 72% increase from the prior seven days. And hospitalizations are up by almost 60%. Pausing in-person delivery of instruction is a prudent and highly reasonable decision in this context.

PageID.1394-95). The Plaintiffs' argument is based on the Washtenaw ISD's general responsibility to oversee its school districts for compliance with the IDEA. But Plaintiffs' fail to cite any authority or guidance that holds or counsels that a supervisory agency has any obligation – legal or otherwise – to override a school district's health and safety decisions.

Under Michigan law, school districts have the statutory authority and obligation to "[p]rovid[e] for the safety and welfare of pupils while at school . . ." Mich. Comp. Laws § 380.11a(3)(b). This has been interpreted by the Michigan Court of Appeals as a "broad authority" that supersedes a parent's right to participate in the education of their children. *Liebau v. Romeo Community Schools*, Case No. 306979, unpublished per curiam decision of the Court of Appeals, 2013 WL 3942392 (July 30, 2013) (attached as Exhibit E). Plaintiffs point to no Michigan statute that would provide the Washtenaw ISD the authority to override or otherwise reverse a local school district's decision making on matters of health, welfare, and safety of students during the COVID-19 pandemic.

Nor does the IDEA require or even permit the conclusion that a school district's reasonable and prudent decision to switch to remote or virtual learning as a means of slowing the spread of COVID-19 and protecting the health and safety of all students and staff violates FAPE or even the "stay put" provision. As discussed above, the U.S. Department of Education has consistently stated that during the

19

COVID-19 pandemic schools can provide instruction to IDEA eligible students remotely without *per se* violating the IDEA. Courts have relied on that guidance and similarly consistently hold that, as a matter of general applicability, changing or switching to remote or virtual instruction – even for an entire school year – does not violate the IDEA. This is because decisions to switch to remote or virtual instruction applies to all students, not just those with IEPs. And any alleged violation of an **individual** student's right to FAPE or the failure to provide programs and services required under a **particular** IEP can be resolved through the IDEA existing remedial scheme.

Plaintiffs' contention that Washtenaw ISD must "ensur[e] compliance with the IDEA" assumes there is a violation of the IDEA generally. But as discussed above, there is no authority for the presumption. Lacking any authority supporting this contention, the Plaintiffs' theory is meritless. And it does a disservice to the Washtenaw ISD's and AAPS' administrators that have worked tirelessly from the onset of the pandemic until now to endeavor to make decisions that (1) protect the health of all students and staff and (2) preserve to the best of their ability in-person instruction for the most students (given the recognized social and emotional benefits from in-school instruction. Shifting to virtual instruction for **four-days** in order to protect the health of all students and staff protects against building or district wide COVID-109 outbreaks and preserves the ability of AAPS, and other school districts

within Washtenaw ISD's geographic area, to maintain in-person instruction for the greatest number of students. Those efforts should be commended, not challenged. Thus, the Washtenaw ISD has no affirmative duty under the IDEA or Michigan law to prevent a local school district from shifting temporarily to the virtual delivery of instruction, even for students with IEPs.

## **CONCLUSION**

Counsel for Plaintiffs continues to advance the argument that virtual instruction *per se* violates the IDEA despite having that argument unanimously rejected by numerous courts and state educational agency decisions. These arguments waste time and distract from the vital decisions school administrators must make on a daily and weekly basis during the everchanging fluctuations of the COVID-19 pandemic. These frivolous arguments should not be countenanced.

Beyond the clear rejection of the Plaintiffs' contentions here, there has been no "change in placement" resulting from a **four-day** shift to virtual instruction. The shift is one of general applicability that affects **all students**, not just those with IEPs. Courts have consistently held that in these situations, particularly in the COVID-19 pandemic environment, there is no *per se* violation of the IDEA. This is because an IDEA student's placement refers to general programming and services, not a specific location or classroom.

Further, even if there was a change in placement for this **four-day** shift, Plaintiffs have not filed a due process complaint that would trigger the "stay put" protections. The Sixth Circuit, and other courts, are clear that the "stay put" only arises when a due process complaint if filed. Plaintiffs' prior due process complaints were settled and dismiss long before this temporary shift to virtual instruction. Because the Plaintiffs' have not filed a due process complaint to challenge this temporary shift, the "stay put" is not effective.

Since no "stay put" protection was triggered, the Plaintiffs' must therefore meet the traditional injunction elements to prevail. They cannot. They have not alleged any irreparable harm. They are unlikely to succeed on the merits of the assertion that a **four-day** shift to virtual instruction for the purposes of protecting students and staff from possible COVID infections violates the IDEA as a matter of law. And, as consistently held by federal courts around the country considering constitutional challenges to face mask requirements, quarantines, and even vaccination mandates in schools, a school district's and, more importantly, the public's interest in controlling and slowing the spread of COVID-19 vastly outweighs a parent's or student's interest. The holdings and analysis of those cases applies with equal if not greater force here where the issue is a short, **four-day** shift to virtual instruction. The Court should therefore deny the Plaintiffs' TRO motion.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants Washtenaw ISD,
Scott Menzel and Naomi Norman

DATED: January 14, 2022

## CERTIFICATE OF ELECTRONIC SERVICE

TRAVIS COMSTOCK states that on January 14, 2022, he did serve a copy of **Washtenaw Intermediate School District's Response and Objection to Plaintiffs' Motion for a Temporary Restraining Order** via the United States District Court electronic transmission on the aforementioned date, which will provide copies of the Response to all parties in this case.

/s/TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants Washtenaw ISD,
Scott Menzel and Naomi Norman
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7036
tcomstock@gmhlaw.com
P72025

23