EXHIBIT A

121 LRP 9952

## In re: Student with a Disability
## New York State Educational Agency
21-006
## February 3, 2021

## Related Index Numbers

**116.60 Stay-Put**

**116.50 Reimbursement**

**116.35 Implementation**

**175.025 Multiple Disabilities**

### Judge / Administrative Officer

**Justyn Bates, State Review Officer**

### Ruling

Finding that school closures as a result of the COVID-19 pandemic did not alter the pendency placement of a student with multiple disabilities under the IDEA, an SRO dismissed the parents' appeal.

### Meaning

Parents who unilaterally place their child in a private school without the consent of the district do so at their own financial risk. Here, parents unsuccessfully argued that the provision of remote services during the pandemic meant that the student's educational program was unavailable, he essentially had no pendency placement, and they were entitled to funding of their unilateral placement. It is well-established that the provision of modified or alternate services during the pandemic does not result in a change of placement. When parents notify districts of their unilateral placement, districts should warn them of the financial risk.

### Case Summary

The parents of a student with multiple disabilities were not entitled to public funding of their unilateral private placement as the student's stay-put placement regardless of whether the provision or remote services during the pandemic altered the student's programming. The parents disagreed with the student's IEP and unilaterally placed him in a private school. After schools closed due to the COVID-19 pandemic, the parents filed for due process. They also joined a related class action lawsuit. Both the District Court and the IHO denied the parents' request for stay-put funding. The parents challenged the IHO's decision. They asserted that the transition to hybrid and remote learning substantially altered the student's educational program and the last agreed-upon placement was unavailable because it was no longer able to provide the required services. The SRO explained that the IDEA requires that a student remain in his then current educational placement, unless the parents and the district otherwise agree, during the pendency of any proceedings relating to the identification, evaluation, or placement of the student. He added that the current placement is the one described in the student's current IEP, the operative placement actually functioning at the time, or the placement at the time of the previously implemented IEP. Placement at the private school was not agreed upon, the SRO noted, and parents cannot unilaterally transfer their child and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a pendency basis. "Permitting pendency on such grounds effectively renders the stay-put provision meaningless," he remarked. Parents unilaterally change their child's placement at their own financial risk, the SRO added. Even if COVID-19 altered the student's programming, it does not work a change in pendency or shift the student's stay-put placement to the parents' unilateral placement, he reasoned. The SRO dismissed the parents' claims.

### Full Text

APPEARANCES

Brain Injury Rights Group, Ltd., attorneys for petitioner, by Peter G. Albert, Esq.

Judy Nathan, Interim Acting General Corporation Counsel, attorneys for respondent, by Brian Davenport, Esq.

## Decision
## I. Introduction

Copyright © 2020 LRP Publications

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioners (the parents) appeal, pursuant to section 8 NYCRR 279.10(d) of the Regulations of the Commissioner of Education, from an interim decision of an impartial hearing officer (IHO) determining their son's pendency placement during a due process proceeding challenging the appropriateness of respondent's (the district's) recommended educational program for the student for the 2020-21 school year. The appeal must be dismissed.

## II. Overview--Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C. §§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[l]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]). First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8

NYCRR 200.5[j]). An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]). The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]). A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]). The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]). The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4). The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5). The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]). The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the

Copyright © 2020 LRP Publications

parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

## III. Facts and Procedural History

Given the undeveloped state of the hearing record in the present matter, a full recitation of facts relating to the student is not possible but is, in any event, unnecessary due to the procedural posture of the impartial hearing proceedings and the limited nature of the appeal.[1] Briefly, according to the district, the student attended a district school during the 2018-19 school year (SRO Rec. at p. 87). The district indicated that in December 2018 the CSE found the student eligible for special education as a student with multiple disabilities and for a portion of the 2018-19 and 2019-20 school years, recommended a 12-month program consisting of a 12:1+(3:1) special class placement in a district specialized school along with the individual occupational therapy (OT), physical therapy (PT), speech-language therapy, assistive technology services, and a health paraprofessional, as well as OT in a group setting (*id.* at pp. 111-14, 118-19). The CSE also recommended that the student receive three 60-minute individual speech-language therapy sessions outside of the school day (*id.* at pp. 112, 114). The student attended the district's specialized school for the entirety of the 2018-19 school year, after which the district alleges the parents filed a due process complaint notice concerning, among other years, the 2018-19 school year (Req. for Rev. at p. 2; SRO Rec. at p. 87).

The district indicated in written arguments that the student remained in a district school at the beginning of the 2019-20 school year and that the CSE convened on November 26, 2019 to develop the student's IEP for the remainder of the 2019-20 school year (SRO Rec. at pp. 87, 89). The parties indicated that the parents disagreed with the district's recommendations and unilaterally placed the student at the International Institute for the Brain (iBrain) in

January 2020 (*id.* at pp. 16-17, 87).

According to the parents' written arguments, in March 2020, all public school buildings in the district were closed due to the COVID-19 pandemic and remote learning was implemented (see SRO Rec. at pp. 18-21). In April 2020, the parents filed a due process complaint notice alleging, among other things, that the district failed to offer the student a free appropriate public education (FAPE) for the 2019-20 school year (*id.* at pp. 16-17, 87).

The district's prior written notice reflects that the CSE convened on June 8, 2020 to develop the student's IEP for the 2020-21 school year (SRO Rec. at p. 70). The CSE determined that the student was eligible for special education as a student with multiple disabilities, and recommended a 12-month program consisting of a 6:1+1 special class placement in a district specialized school together with individual sessions of OT, PT, speech-language therapy, 1:1 health paraprofessional services, as well as assistive technology support (*id.* at pp. 17, 70).

The parents indicated that they provided the district with written 10-day notice of their intent to unilaterally place the student at iBrain on or about June 26, 2020 (SRO Rec. at p. 17).[2] The student remained at iBrain during the 2020-21 school year (*id.* at p. 20).

## A. Due Process Complaint Notice

In a due process complaint notice dated July 6, 2020, the parents requested an impartial hearing, asserting that for the 2020-21 extended school year (ESY) the district failed to offer the student a free appropriate public education (FAPE), and requesting that this proceeding be consolidated with the proceeding concerning the 2019-20 school year (SRO Rec. at pp. 1-2).[3] With regard to the 2020-21 proceeding, the parents alleged that the district: failed to offer the student a seat in a classroom at a public school site that could implement the IEP, made the assigned public school offer "well after the start" of the extended school year, and failed to recommend an available placement (*id.* at pp. 3-4). With regard to the

Copyright © 2020 LRP Publications

public school site, the parents also asserted that the district "did not have an environment properly matched" to the student's academic, behavioral/social, physical, and management needs and that student would be placed with "peers possessing dissimilar needs" (*id.* at p. 4). As for the June 2020 IEP itself, the parents alleged that the related services listed in the IEP were inadequate, and that the district denied the student access to assistive technology services in the IEP (*id.* at pp. 4-5). As relief, the parents sought direct funding by the district for the unilateral placement of the student at iBrain for the 2020-21 school year, prospective funding for special education transportation (or reimbursement for such), and an order compelling the district to provide the student with assistive technology services (*id.* at p. 6). As is relevant to this appeal, the parents requested that the IHO issue an interim decision directing the district to directly fund the student's tuition, costs for related services, and special transportation at iBrain as stay put during the pendency of the underlying due process proceeding (*id.* at p. 2). The parents asserted that the student's pendency program was found in the district's June 8, 2020 IEP, the IEP challenged by the parents (*id.*).

## B. Impartial Hearing Officer Decision

While the administrative claims were pending the parents filed another lawsuit. Along with 32 other parents of children at iBrain, the parents brought a proceeding against the district in the United States District Court for the Southern District Court of New York seeking damages and a preliminary injunction directing the district to fund iBrain as the student's pendency placement (*Araujo v. New York City Dep't of Educ.*, 2020 WL 5701828 [S.D.N.Y. Sept. 24, 2020]]).

On September 24, 2020, the District Court found that the district had agreed to fund thirteen of the students' placements at iBrain but denied the remaining parents' request for stay-put funding at iBrain, including the parents of the student in this case. With respect to the parents in this case, along with the request of fourteen other students, the court

held that the argument for pendency funding at iBrain failed under *Ventura de Paulino (Araujo*, 2020 WL 5701828, *reconsideration denied*, 2019 WL 6392818 [S.D.N.Y. Nov. 2, 2020]; *see Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 [2d Cir. 2020]).

On September 15, 2020, an impartial hearing was convened before IHO Rahman, during which the parties briefly addressed the student's pendency placement and thereafter the parents filed a motion and the district filed a brief on the issue (Tr. pp. 1-18; see SRO Rec. at pp. 16-139).[4]

The parties made numerous oral and written arguments before the IHO, disputing which of the student's IEPs prepared by the district should be considered the basis for the student's pendency placement, and they contested numerous theories for stay put including the "substantial similarity" test, the operative placement test, and the relevance of school building closures, remote and/or hybrid learning due to the COVID-19 pandemic (see Tr. pp. 4-6; SRO Rec. at pp. 16-30, 85-94).[5]

In an interim decision dated October 14, 2020, IHO Rahman, citing to Ventura de Paulino, found that because the parents removed the student from the district's public school and unilaterally placed him at iBrain in January 2020, and then filed a due process complaint notice regarding the June 2020 IEP in July 2020, the services subsequently received at iBrain could not be deemed the student's then-current educational placement (SRO Rec. at pp. 9-11). Furthermore, the IHO found that, given the student's receipt of special education services at iBrain starting in January 2020, the parents' arguments pertaining to the district's school closure due to COVID-19 were also unpersuasive (*id.* at p. 11). Accordingly, the IHO denied the parents' motion and determined that the student was "not entitled to a educational placement at iBRAIN during the pendency of this action" (*id.*).[6]

## IV. Appeal for State-Level Review

The parents appeal from the IHO's October 14, 2020 interim decision, asserting that the IHO erred by

failing to find that the student's pendency placement for the 2020-21 school year is the educational program he is receiving at iBrain, and failed to determine what constituted the student's pendency placement during the underlying due process proceeding. The parents allege that due to the district's public school closures and subsequent transition to "hybrid" and remote learning resulting from the COVID-19 pandemic, the district unilaterally, substantially, and materially altered the student's educational program as it relates to pendency by 1) altering the location of the student's services from a specialized school classroom to in-home remote services, 2) precluding the student from receiving any in-person services, and 3) by precluding in-person services, the district eliminated the student's 1:1 nurse and all in-person therapy sessions, which according to the parents by definition are services to be provided as a direct service to the student. Therefore, the parents assert that the IHO erred by failing to find that the student's last agreed upon placement is "unavailable as it is no longer providing the services recommended on either" the student's November 2019 or June 2020 IEPs, and that both the last agreed-upon and the most recent district assigned specialized public schools remain closed for in-person services and thus are also "unavailable" for the student. The parents put forth arguments that iBrain is the student's operative placement as it was the school he attended at the time the parents filed the due process complaint notice, and that the student's placement at iBrain is substantially similar to both the last agreed-upon placement and the most recently recommended placement. Finally, the parents assert that the IHO's recusal after the interim decision was issued is not supported by either federal or State statute or regulation, and resulted in the student "essentially having no pendency placement" because the IHO failed to identify one. The parents request that the undersigned reverse the IHO and find that the student's placement for purposes of pendency is the educational program he receives at iBrain.

In an answer, the district responds to the parents'

allegation set forth in the request for review with denials of the parents' material allegations, and argues in favor of upholding the IHO's determinations and asserts among other things, that the undersigned is bound by the District Court's determination in Araujo because it found that the student was not entitled to a publicly funded pendency placement at iBrain. The district requests that the undersigned dismiss the parents' appeal with prejudice.

In a reply to the district's answer the parents assert, among other things, that the undersigned is not bound by that District Court's determination in Araujo because that determination is the subject of an appeal to the Second Circuit Court of Appeals.

## V. Applicable Standards

The IDEA and the New York State Education Law require that a student remain in his or her then current educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student (20 U.S.C. § 1415[j]; Educ. Law §§ 4404[4]; 34 CFR 300.518[a]; 8 NYCRR 200.5[m]; *see Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 [2d Cir. 2020] *cert. denied sub nom. Paulino v. NYC Dep't of Educ.*, 2021 WL 78218 (U.S. Jan. 11, 2021); *T.M.*, 752 F.3d at 170-71; *Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 [2d Cir. 2004], *citing Zvi D. v. Ambach*, 694 F.2d 904, 906 [2d Cir. 1982]); *M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240, 246-47 [S.D.N.Y. 2013]; *Student X v. New York City Dep't of Educ.*, 2008 WL 4890440 [E.D.N.Y. Oct. 30, 2008]; *Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea*, 353 F. Supp. 2d 449, 455-56 [S.D.N.Y. 2005]). Pendency has the effect of an automatic injunction, and the party requesting it need not meet the requirements for injunctive relief such as irreparable harm, likelihood of success on the merits, and a balancing of the hardships (*Zvi D.*, 694 F.2d at 906; *see Wagner v. Bd. of Educ. of Montgomery County*, 335 F.3d 297, 301 [4th Cir. 2003]; *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 [3d Cir. 1996]).

The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability and "strip schools of the unilateral authority they had traditionally employed to exclude disabled students ... from school" (*Honig v. Doe*, 484 U.S. 305, 323 [1987] [emphasis in original]; *Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist.*, 921 F. Supp. 1184, 1187 [S.D.N.Y. 1996], *citing Bd. of Educ. of City of New York v. Ambach*, 612 F. Supp. 230, 233 [E.D.N.Y. 1985]). A student's placement pursuant to the pendency provision of the IDEA is evaluated independently from the appropriateness of the program offered the student by the CSE (*Mackey*, 386 F.3d at 160-61; *Zvi D.*, 694 F.2d at 906; *O'Shea*, 353 F. Supp. 2d at 459 [noting that "pendency placement and appropriate placement are separate and distinct concepts"]). The pendency provision does not require that a student remain in a particular site or location (*Ventura de Paulino*, 959 F.3d at 532; *T.M.*, 752 F.3d at 170-71; *Concerned Parents & Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79 v. New York City Bd. of Educ.*, 629 F.2d 751, 753, 756 [2d Cir. 1980]; see Child's Status During Proceedings, 71 Fed. Reg. 46709 [Aug. 14, 2006] [noting that the "current placement is generally not considered to be location-specific"]), or at a particular grade level (*Application of a Child with a Disability*, Appeal No. 03-032; *Application of a Child with a Disability*, Appeal No. 95-16).

Under the IDEA, the pendency inquiry focuses on identifying the student's then current educational placement (*Ventura de Paulino*, 959 F.3d at 532; *Mackey*, 386 F.3d at 163, *citing Zvi D.*, 694 F.2d at 906). Although not defined by statute, the phrase "then current placement" has been found to mean either: (1) the placement described in the student's most recently implemented IEP; (2) the operative placement actually functioning at the time when the due process proceeding was commenced; or (3) the placement at the time of the previously implemented IEP (*Dervishi v. Stamford Bd. of Educ.*, 653 Fed. App'x 55, 57-58 [2d Cir. June 27, 2016], *quoting Mackey*, 386 F.3d at 163; *T.M.*, 752 F.3d at 170-71

[holding that the pendency provision "requires a school district to continue funding whatever educational placement was last agreed upon for the child"]; see *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 [2d Cir. 2015] [holding that a student's entitlement to stay-put arises when a due process complaint notice is filed]; *Susquenita Sch. Dist. v. Raelee*, 96 F.3d 78, 83 [3d Cir. 1996]; *Letter to Baugh*, 211 IDELR 481 [OSEP 1987]). Furthermore, the Second Circuit has stated that educational placement means "the general type of educational program in which the child is placed" (*Concerned Parents*, 629 F.2d at 753, 756), and that "the pendency provision does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers" (*T.M.*, 752 F.3d at 171). However, if there is an agreement between the parties on the student's educational placement during the due process proceedings, it need not be reduced to a new IEP, and the agreement can supersede the prior unchallenged IEP as the student's then-current educational placement (*see Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483-84 [2d Cir. 2002]; *Evans*, 921 F. Supp. at 1189 n.3; *Murphy*, 86 F. Supp. 2d at 366; *see also Letter to Hampden*, 49 IDELR 197 [OSEP 2007]). Moreover, a prior unappealed IHO decision may establish a student's current educational placement for purposes of pendency (*Student X*, 2008 WL 4890440; *Letter to Hampden*, 49 IDELR 197).

## VI. Discussion

This appeal consists of a dispute that is almost identical to several others brought by counsel for the parents for other similarly situated students (*see Application of a Student with a Disability*, Appeal No. 20-201; *Application of a Student with a Disability*, Appeal No. 20-196; *Application of a Student with a Disability*, Appeal No. 20-194; *Application of a Student with a Disability*, Appeal No. 20-178; *Application of a Student with a Disability*, Appeal No. 20-184). As a threshold issue, the district argues that the student's pendency placement was already ruled upon by the District Court, wherein it was determined

that the student was not entitled to publicly funded pendency placement at iBrain (*see Araujo v. New York City Dep't of Educ.*, 2020 WL 5701828 [Sept. 24, 2020] *reconsideration denied*, 2020 WL 6392818 [Nov. 2, 2020]). Counsel for the parents assert in the reply that the determinations contained in Araujo are on appeal at the Second Circuit, and that the District Court decision is not final, but that argument is improper because the only place that a decision issued by a court of competent jurisdiction can be legitimately challenged is either in that court or in a direct appeal to an appellate court of competent jurisdiction. In this case the District Court has already ruled that

Plaintiffs' theory fails because Plaintiffs have not shown that the enrollment of these fifteen students at iBRAIN was agreed upon between their parents and [the district]. A "parent cannot unilaterally transfer his or her child and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a pendency basis," because permitting pendency on such grounds "effectively renders the stay-put provision meaningless by denying any interest of a school district in resolving how the student's agreed-upon educational program must be provided and funded." *Ventura*, 959 F.3d at 536. This accurately describes what has occurred with respect to these fifteen students. As such, Plaintiffs' arguments on this point are foreclosed by Ventura.

Plaintiffs attempt to distinguish Ventura on the basis that, in that case, [the district] had explicitly offered another school [iHope] to the parents, who nonetheless chose to send their child to iBRAIN. Plaintiffs argue that because Defendant has not yet provided the students with any pendency placement, Ventura is inapplicable. This argument is unpersuasive. If Plaintiffs' issue is that no timely pendency determination has been made, then they can move to obtain such relief. However, under Ventura, they may not unilaterally alter students' enrollments and then claim pendency funding on that basis:

Parents who are dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings and can, for example, pay for private services, including private schooling. They do so, however, at their own financial risk. They can obtain retroactive reimbursement from the school district after the IEP dispute is resolved....

*Ventura*, 959 F.3d at 526; *see also Mackey v. Board of Educ.*, 386 F.3d 158, 160 [2d Cir. 2004] ["Parents should, however, keep in mind that if they 'unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, [they] do so at their own financial risk.' "] [*quoting Sch. Comm. v. Dep't of Ed.*, 471 U.S. 359, 373--74, [1985]]

(*Araujo v. New York City Dep't of Educ.*, 2020 WL 5701828). The parents' counsel, Brain Injury Rights Group, made a similar stay-put argument on behalf of another student at iBrain to the district court--that a court decision was on appeal and therefore nonbinding--but that argument was squarely rejected by the district court, which explained "[t]his Court will not engage in judicial forecasting. It takes the law as it finds it and will apply the controlling precedent of the Second Circuit" (*Ferreira v. New York City Dep't of Educ.*, 2021 WL 76808 [E.D.N.Y. Jan. 8, 2021]). The court's reasoning in Ferreira applies to the arguments here as well.

As SROs have explained there may be instances when a parent pursues a pendency argument in both the administrative and judicial forums simultaneously and there is concurrent jurisdiction--however awkward that makes the proceedings--(*see, e.g., Application of a Student with a Disability*, Appeal No. 20-178; *Application of the Dep't of Educ.*, Appeal No. 20-033),[7] but once a court has issued a determination resolving the stay-put issue, administrative hearing officers do not have the power to alter a court's stay-put decision. The District Court's decision with respect to this student cannot be collaterally attacked in an IDEA administrative due process proceeding. The parents' assertion that the student should receive a publicly funded pendency placement at iBrain because the student's IEP was "being implemented" at

iBrain is just rehashing the operative placement argument that was already rejected by the District Court (*see Araujo*, 2020 WL 5701828). There is no evidence since the parties were before the District Court that the district has agreed to provide public funding of the student's placement at iBrain or that there has been a final determination in favor of the parents' unilateral placement of the student at iBrain. The argument that I am not bound to "one determination" of the student's pendency placement and therefore should issue a determination in conflict with the District Court's determination is nonsensical.

To the extent that the parents cite to footnote 65 in Ventura de Paulino and argues that "a parent may exercise self-help and seek an injunction to modify the student's pendency placement," the parents should have pursued that argument in District Court because an administrative hearing officer does not have authority to issue a traditional injunction like a District Court to order a change in a student's stay-put placement.[8]

To the extent that the parents assert that the district's closure of public school buildings and use of remote or hybrid learning processes as a result of the COVID-19 pandemic has violated the status quo and materially altered the student's programming, that argument does not shift the student's stay-put placement to the parents' unilateral placement of the student at iBrain. It is not the first attempt at this argument either. In a putative class action, brought by parents represented by the same counsel in this case, the District Court has ruled that:

First, the agency charged with administering the IDEA program has issued guidance indicating that the provision of remote services does not work a change in placement.

* * *

Second, plaintiffs are challenging a system-side administrative decision of general applicability -- an order shutting schools to all students (abled and disabled) and all staff during an unprecedented and life-threatening health crisis. There can be no question

that the order applied to the entire school system and that it was of general applicability -- that is, it applied equally to abled and disabled students. Such an order does not work a change in pendency.

* * *

The two reasons discussed above are dispositive -- and, indeed, require dismissal of the Plaintiff Students' pendency claims.

* * *

Because the court has concluded that [1] no change in pendency has been worked by the emergency closure of the schools, and [2] plaintiffs cannot complain about an administrative order of general applicability to all students [*see supra* pp. 66-73], Count IV, the count that seeks a stay-put injunction, must also be dismissed, for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12[b][6]. This dismissal does not preclude individual students from asserting in appropriately commenced lawsuits that something other than the closure of the schools and the provision of remote educational services during the pandemic worked a change in pendency.

(*J.T. v. de Blasio*, 2020 WL 6748484 [S.D.N.Y. Nov. 13, 2020] [emphasis omitted]). Applying the Court's reasoning in *J.T. v. de Blasio*--which was far more extensive than the portions quoted above--the system-wide closure of the district's public school buildings due to the COVID-19 pandemic and resultant remote or hybrid learning was not a change in placement and in no way transformed the parents' unilateral placement of the student at iBrain thereafter into the student's publicly funded pendency placement.

## VII. Conclusion

Since the District Court's determination that the student was not entitled to stay put funding at iBrain, there are no new facts, such as a subsequent unappealed determination on the merits in favor of the parents granting reimbursement for a unilateral placement of the student at iBrain or a new agreement between the parties for stay-put purposes that would

warrant funding at iBrain as a pendency placement. Based on the discussion above, I find that the IHO, while not explicitly finding that the district would be responsible to implement the December 2018 IEP in a public or State-approved nonpublic school should the parents seek it,[9] nonetheless properly determined that the parents were not entitled to public funding of iBrain as the student's pendency placement, albeit I also reach the latter determination based upon information that the record does not show was provided to IHO Rahman by counsel for the parties (*Araujo*, 2020 WL 5701828 [Sept. 24, 2020] *reconsideration denied*, 2020 WL 6392818 [Nov. 2, 2020]; *see Ventura de Paulino*, 959 F.3d at 526, 536).

The parents' remaining argument, that the IHO's recusal after issuing the interim decision was impermissible is not a pendency determination and, therefore, is not subject to an interlocutory appeal for State-level review (see 8 NYCRR 279.10 [d]).

THE APPEAL IS DISMISSED.

Dated: Albany, New York

JUSTYN P. BATES

STATE REVIEW OFFICER

[1]The parents' request for review in this matter challenges an October 14, 2020 interim decision of IHO Rahman; however, the documents submitted as the certified administrative hearing record also relate to a separate proceeding involving the same student before IHO Regenbogen. As described below, IHO Regenbogen was subsequently appointed to preside over both matters, but did not preside over this case during the events relevant to this appeal. No documents in this matter were identified as entered into the hearing record, and the IHO decisions in the materials submitted by the district lack exhibit lists that identify what the IHOs considered. The only exhibit list contained in the hearing record is dated November 6, 2020 bearing IHO Regenbogen's name as presiding officer, which postdates IHO Rahman's interim decision by weeks. The documents submitted by the district as the administrative hearing record in this matter consisted of the parents' July 6, 2020 due

process complaint notice, two IHO exhibits consisting of IHO Rahman's interim decision and an email dated October 26, 2020, the parents' motion in support of an interim order on pendency with three lettered attachments, the district's brief contesting pendency with four enumerated attachments, a notice of appearance by the district's attorney, IHO Regenbogen's November 6, 2020 interim decision denying consolidation, two orders of extension of the timeline (one by IHO Rahman, the other by IHO Regenbogen), IHO Regenbogen's November 6, 2020 interim decision denying a second request, or reconsideration of IHO Rahman's interim decision, and an IHO record certification by IHO Regenbogen. Thus, the administrative record in this proceeding is in a state of disarray. To reduce confusion and ease the task of referencing documents in this decision, the undersigned consolidated the collection of documents into a consecutively paginated Record on Appeal marked "SRO Rec." (see SRO Rec. at pp. 1-147). A copy of the consecutively paginated Record on Appeal will be provided to the parties. The transcript of the proceedings submitted by the district is separately paginated over two hearing dates, one of which occurred after the interim decision being challenged in this appeal (Tr. pp. 1-25). As many of the papers submitted by the parties were never identified in the record, I remind the IHOs of the critical hearing management practice of ensuring that the administrative record clearly indicates what documents and papers were before an IHO and that documents be clearly be marked and identified in an exhibit list attached the IHO's decision, less the matter be remanded by State-level review officials or the courts for reconstruction of the administrative record.

[2]In view of the timing, this ten-day notice appears to relate to the 2020-21 school year, but the ten-day notice itself is not the hearing record.

[3]In the November 6, 2020 interim decision regarding consolidation IHO Regenbogen declined to consolidate the two proceedings (see Tr. pp. 19-23; SRO Rec. at p. 141).

[4]No testimony was taken during the hearing (Tr.

pp. 1-17).

[5]Neither the parents' motion or the district's brief informed the IHO of the District Court's determination in Araujo, discussed *supra*, or the *J.T. v. de Blasio* decision discussed *infra*.

[6]As clarification of the contents of the hearing record, it appears that IHO Rahman recused himself from the instant matter after he issued the October 14, 2020 interim decision denying the parents' pendency request, and on October 15, 2020 IHO Regenbogen was appointed to continue the case (Req. for Rev. at p. 4; Answer at p. 3; see Tr. pp. 19-23; SRO Rec. at pp. 14, 141, 144). On November 6, 2020 IHO Regenbogen denied the parents' request for reconsideration of IHO Rahman's determination (Tr. pp. 19-24; SRO Rec. at pp. 13, 144-45).

[7]As the Second Circuit has explained "'an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to' the IDEA's exhaustion requirement" *Doe v. E. Lyme Bd. of Educ*., 790 F.3d 440, 455 [2d Cir. 2015]). It should go without saying that it is incumbent on the parties to notify the administrative hearing officers of any ruling issued with respect to the student that is the subject of the administrative proceedings.

[8]In footnote 65, the Second Circuit stated

"[w]e do not consider here, much less resolve, any question presented where the school providing the child's pendency services is no longer available and the school district either refuses or fails to provide pendency services to the child. Those circumstances are not present here. We note, however, that at least one of our sister Circuits has acknowledged that, under certain extraordinary circumstances not presented here, a parent may seek injunctive relief to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415[i][2][B][iii]. *See Wagner v. Bd. of Educ. of Montgomery Cty*., 335 F.3d 297, 302-03 [4th Cir. 2003] [involving a situation in which the pendency placement was no longer available, and the school district had failed to propose an alternative,

equivalent placement]"

(*Ventura de Paulino*, 959 F.3d 519, 534).

[9]If the parents wish to avail themselves of a publicly-funded pendency placement while the proceedings are pending, under the facts at present in which they have yet to prevail on the merits, they would have to remove the student from iBrain and return the student to the public school, which seems unlikely since they rejected the district's proposed programming and are perusing a unilateral placement claim.

**Statutes Cited**

20 USC 1415(j)
20 USC 1415(i)(2)(B)(iii)

**Cases Cited**

77 IDELR 127 -- Same or Connected Case
959 F.3d 519 -- Followed
121 LRP 1307 -- Followed
51 IDELR 122 -- Followed
752 F.3d 145 -- Followed
386 F.3d 158 -- Followed
694 F.2d 904 -- Followed
982 F.Supp.2d 240 -- Followed
353 F.Supp.2d 449 -- Followed
335 F.3d 297 -- Followed
78 F.3d 859 -- Followed
484 U.S. 305 -- Followed
921 F.Supp. 1184 -- Followed
612 F.Supp. 230 -- Followed
629 F.2d 751 -- Followed
653 F. App'x 55 -- Followed
790 F.3d 440 -- Followed
96 F.3d 78 -- Followed
211 IDELR 481 -- Followed
290 F.3d 476 -- Followed
49 IDELR 197 -- Followed
77 IDELR 218 -- Same or Connected Case
471 U.S. 359 -- Followed
121 LRP 1207 -- Followed
77 IDELR 252 -- Followed

122 LRP 827

# New York City Department of Education
## New York State Educational Agency

21-210

### December 8, 2021

**Judge / Administrative Officer**

**Justyn Bates, State Review Officer**

## Full Text

### APPEARANCES

Brain Injury Rights Group, Ltd., attorneys for petitioner, by John Henry Olthoff, Esq. Liz Vladeck, General Counsel, attorneys for respondent, by Nathaniel R. Luken, Esq.

DECISION

I.

Introduction

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioner (the parent) appeals from a decision of an impartial hearing officer (IHO) which denied his request for compensatory education services and for a prospective change to his son's educational program and services to remedy respondent's (the district's) failure to provide an appropriate program and services to his son for the period of March through August 2020. The district cross-appeals from that portion of the IHO's decision which found that it failed to provide the student an appropriate program and services for the period of March through June 2020. The appeal must be dismissed. The cross-appeal must be sustained.

II.

Overview Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on

Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in

mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C.

§§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[ l]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2],

300.507[a][1]). First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]). An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR

200.5 [j][3][v], [vii], [xii]). The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process

(34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]). A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]). The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8

NYCRR 200.5[k]). The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4). The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5). The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]). The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

III.

Facts and Procedural History

Given the undeveloped state of the hearing record in the present matter, a full recitation of facts relating to the student's educational history is not possible. The parent's allegations in this matter surround the school building closures that took place in March 2020 as a result of efforts to combat the spread of the COVID-19 pandemic. According to the

parent, prior to the school closure, the student had been attending a district specialized school (Tr. p. 31). The parent indicated that, for at least two weeks after Governor Cuomo ordered schools to close, the parent

did not hear from the district (Tr. p. 32). Thereafter, the parent indicated that the district began implementing remote learning ( id.). However, the parent testified that "for long periods of time," totaling "multiple weeks," the student did not receive related services (Tr. pp. 32-34). At some point, the parent "hire[d] a private teacher" to work with the student during remote delivery of instruction and services (Tr. p. 36).

A.

Due Process Complaint Notice

In a due process complaint notice dated August 18, 2020, the parent alleged that the district failed to offer the student a free appropriate public education (FAPE) by "failing to implement the Student's educational program as established in the Student's last agreed upon [IEP]" (Parent Ex. A at p. 1). In addition, the parent alleged that the district failed to offer the student a FAPE pursuant to section 504 of the Rehabilitation Act of 1973 (section 504), 29 U.S.C. § 794(a), by "unilaterally modifying the Student's IEP" ( id.). More specifically, the parent asserted that, in or around "mid- March 2020," the district "unilaterally, substantially, and materially altered" the student's "'status quo' educational program as it relate[d]" to his pendency rights when the district: "substantially and materially altered the location" for the student's receipt of services from a "school classroom" to the student's home, "substantially and materially altered the delivery of these services" from in- person instruction by a special education teacher or related service provider, and provided the student's services remotely as opposed to through direct instruction required by his IEP and without proper notice to the parent ( id. at pp. 1-2). The parent argued that the aforementioned "alterations constitute[d] an improper change" in the student's program and placement under the IDEA ( id.

Copyright © 2020 LRP Publications

at p. 2).

After noting that the district's federal and State obligations to continue to provide students with a FAPE during the COVID-19 pandemic while allowing for flexibility during this transition of services had not been waived or absolved, the parent alleged that the district violated the student's pendency rights and, as a result, he sought "immediate relief" (Parent Ex. A at p. 2). Additionally, the parent requested an "extensive independent evaluation" of the student to "determine the need for compensatory services as well as any appropriate changes" to the student's "educational program and placement" to remedy the district's failure to offer the student a FAPE "since mid-March 2020" ( id. at pp. 2-3). The parent also requested to convene a CSE upon the completion of the IEE to "review the updated evaluation and make any appropriate changes" to the student's IEP ( id. at p. 3).

As relief, the parent requested that the IHO issue an "interim order" directing the district to implement the student's last-agreed upon IEP by "reopening" the student's school, or, alternatively, allowing the parent to "self-cure the unilateral change" in the student's pendency services "to the best of their abilities"; issue an "interim order" directing the district to "conduct an extensive [IEE]" of the student to "evaluate what, if any, changes need[ed] to be made" to the student's IEP; and issue an "interim order" finding that the district failed to offer the student a FAPE and "determine the appropriate compensatory services" (Parent Ex. A at p. 3).

B.

Events Post-Dating the Due Process Complaint Notice

A CSE convened on March 18, 2021 to conduct the student's annual review and develop an IEP with an implementation date of April 1, 2021 ( see Parent Ex. B). The March 2021 CSE

recommended that the student attend a 12-month school year program in a 6:1+1 special class

placement in a district specialized school and receive related services of counseling, occupational therapy (OT), physical therapy (PT), speech-language therapy, and parent counseling and training, as well as home-based special education teacher support services (SETSS) to deliver applied behavior analysis (ABA) therapy ( id. at pp. 21-23, 27). According to the March 2021 IEP, the parent expressed that in his opinion the student regressed during remote learning and that remote learning was not appropriate for the student ( id. at p. 6).

C.

Impartial Hearing Officer Decision

An impartial hearing convened on July 19, 2021 and concluded on August 24, 2021, after three days of proceedings (Tr. pp. 1-42). At the July 19, 2021 hearing date, the parent's attorney indicated that the student had been evaluated by his then-current "ABA SETSS provider" and that, therefore, the parent "would be willing to forego" the IEE requested as relief (Tr. pp. 5-6). The parent's attorney indicated that the remaining relief sought included "an increase in the home SETSS ABA hours and a modification of the student's current IEP to reflect that, as well as a bank of compensatory hours to compensate [the student] for regression due to the changing circumstances" (Tr. pp. 4-5). During the impartial hearing, the district's representatives indicated that the district would not be presenting evidence to defend its provision of a FAPE to the student (Tr. pp. 13, 23).1

In a decision dated September 9, 2021, the IHO first found that the time frame at issue for the denial of FAPE alleged by the parent was mid-March through June 2020 (IHO Decision at

p. 4). Based on the district's failure to present any evidence during the impartial hearing, the IHO found that the district failed to meet its burden to prove that it provided the student with a FAPE from mid-March 2020 through June 2020 ( id. at pp. 4-5).

As for relief, the IHO noted that the "three and a half month FAPE deprivation" experienced by the student "coincide[d] with the international pandemic"

(IHO Decision at p. 6). Without diminishing the seriousness of the allegations in the due process complaint notice, the IHO found that the parent was not entitled to a default judgement awarding all of the compensatory education sought ( id. at pp. 6-7). The IHO determined that, on the hearing record before her, there was insufficient evidence to determine an appropriate award of compensatory education services ( id. at p. 7). As for the parent's request for an increase in the number of hours of home-based SETSS on the student's IEP, the IHO "decline[d] to usurp" the CSE's role ( id.). However, the IHO ordered the CSE to reconvene to "consider all of the evaluations which the Student has had," along with all available information, and to prepare a new IEP ( id. at pp. 7-8).

1 At the July 30, 2021 hearing date, the district representative stated her intent to present an opening statement in the matter but expressed her preference to wait until the next hearing date to do so (Tr. p. 13). At the August 24, 2021 hearing date, a different district representative appeared on the district's behalf and did not present an opening statement ( compare Tr. p. 11, with Tr. p. 20; see Tr. pp. 20-42). In addition, the district did not cross- examine the parent or present a closing statement or post-hearing brief ( see Tr. p. 40).

IV.

Appeal for State-Level Review

The parent appeals, arguing that the IHO correctly found that the district denied the student a FAPE but erred by "failing to consider the appropriate time period during which [the district] denied [the student] a FAPE" and by failing to order compensatory education services. With respect to the period of time at issue, the parent argues that, because the student was eligible for 12-month school years services, the IHO should have found that, in addition to the period of March 2020 through June 2020, the district failed to provide the student a FAPE for July and August 2020. Regarding compensatory education,

the parent argues that the evidence in the hearing record regarding the student's regression during the period of March through August 2020 was unrebutted. The parent describes that the basis for his request for 500 hours of compensatory education was that the student was mandated to receive five hours per week of in-school related services (which over 20 weeks totaled 100 hours), seven hours per week of home-based ABA (which over 20 weeks totally 140 hours), and classroom instruction (which over 20 weeks the parent estimated to add up to more than 260 hours). For relief, the parent requests that the district be required to fund a bank of 500 hours of compensatory education to be used by the parent as deemed appropriate, including for ABA SETSS or related services to be delivered by independent providers. In addition, the parent requests that the district be required to reconvene and increase the student's mandate for home-based SETSS using ABA from seven to ten hours per week.

In an answer and cross-appeal, the district responds to the parent's allegations with admissions and denials and argues that the IHO erred in finding that the district denied the student a FAPE for the period of March through June 2020. The district argues that the IHO did not have jurisdiction over the claims contained in the parent's due process complaint notice and, therefore, erred in finding a denial of a FAPE based on the allegations in the complaint. That is, the district argues that, since the allegations were directed at the policies of the Governor of the State and/or the district, the IHO did not have authority to consider them. Further, the district contends that it has been held that the district's provision of remote instruction to students during a nationwide pandemic is not a per se breach of a right to education. To the extent the parent's claims in the due process complaint notice alleged violations of the student's pendency placement, the district argues that the claims were premature. Further, the district argues that any argument that the student did not receive remote instruction during the pandemic was outside the scope of the impartial hearing as it was not alleged

Copyright © 2020 LRP Publications

in the due process complaint notice. In answer to the parent's appeal, the district argues that the IHO correctly denied the parent's requested relief.

V.

Applicable Standards

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 [2009]; Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458

U.S. 176, 206-07 [1982]).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the

IDEA's procedures is reasonably calculated to enable the student to receive educational benefits ( Rowley, 458 U.S. at 206-07; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151, 160 [2d Cir.

2014]; R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 [2d Cir. 2012]; M.H. v. New

York City Dep't of Educ., 685 F.3d 217, 245 [2d Cir. 2012]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). "'[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP'" ( Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 [2d Cir. 1998], quoting Rowley,

458 U.S. at 206; see T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 253 [2d Cir. 2009]). The Supreme Court has indicated that "[t]he IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for

pursuing academic and functional advancement" ( Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. , 137 S. Ct. 988, 999 [2017]). While the Second Circuit has emphasized that school districts must comply with the checklist of procedures for developing a student's IEP and indicated that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not" ( R.E., 694 F.3d at 190-91), the Court has also explained that not all procedural errors render an IEP legally inadequate under the IDEA ( M.H., 685 F.3d at 245; A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 [2d Cir. 2009]; Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]). Under the IDEA, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits (20 U.S.C.

§ 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]; Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 [2007]; R.E., 694 F.3d at 190; M.H., 685 F.3d at 245).

The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]). A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" ( Rowley, 458 U.S. at 203). However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP" ( Walczak, 142 F.3d at 130; see Rowley, 458 U.S. at 189). "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created" ( Endrew F., 137 S. Ct. at 1001). The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable

by loving parents" ( Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379). Additionally, school districts are not required to "maximize" the potential of students with disabilities ( Rowley, 458 U.S. at 189, 199; Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132). Nonetheless, a school district must provide "an IEP that is 'likely to produce progress, not regression,' and . . . affords the student with an opportunity greater than mere 'trivial advancement'" ( Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130 [citations omitted]; see T.P., 554 F.3d at 254; P. v. Newington Bd. of Educ., 546 F.3d 111, 118-19 [2d Cir. 2008]). The IEP must be "reasonably calculated to provide some 'meaningful' benefit" ( Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Endrew F., 137 S. Ct. at 1001 [holding that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"]; Rowley, 458 U.S. at 192). The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 CFR 300.114[a][2][i], 300.116[a][2]; 8 NYCRR 200.1[cc],

200.6 [a][1]; see Newington, 546 F.3d at 114; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 [2d Cir. 2007]; Walczak, 142 F.3d at 132).

An appropriate educational program begins with an IEP that includes a statement of the student's present levels of academic achievement and functional performance ( see 34 CFR 300.320[a][1]; 8 NYCRR 200.4[d][2][i]), establishes annual goals designed to meet the student's needs resulting from the student's disability and enable him or her to make progress in the general education curriculum ( see 34 CFR 300.320[a][2][i], [2][i][A]; 8 NYCRR 200.4[d][2][iii]), and provides for the use of appropriate special education services ( see 34 CFR 300.320[a][4]; 8 NYCRR 200.4[d][2][v]).2

The burden of proof is on the school district

during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see R.E., 694 F.3d at 184-85).

VI.

Discussion

A.

Jurisdiction and Scope of the Impartial Hearing

I turn first to the district's argument that the IHO should not have found a denial of a FAPE based on the parent's claims as set forth in the due process complaint notice. As the district notes, the parent's allegations in the due process complaint notice were very similar to those alleged in a matter involving a different student, which were discussed in Application of the Department of Education, Appeal No. 21-188. In both matters, the parents' allegations surrounded the school closures that took place as a result of the COVID-19 pandemic. Relevant to such circumstances is the decision of the District Court of the Southern District of New York in J.T. v. de Blasio, which, as it happens involved plaintiffs represented by the same attorneys in the present matters (500 F. Supp. 2d at 145). The Court in J.T. described in detail the March 13, 2020 closure of schools in New York City, as well as the actions taken by the district to deliver services to students with disabilities during the closure through remote delivery consistent with federal and State guidance ( id. at 181-84).

Here, to the extent that the parent took issue with the executive decision to close schools or the district's actions to deliver instruction and services to students with disabilities remotely during the closure, those allegations are systemic in nature, and no provision of the IDEA or the Education Law confers jurisdiction upon a state or local educational agency to sit in review of alleged systemic violations ( see Levine v. Greece Cent. Sch. Dist., 2009 WL 261470, at *9 [W.D.N.Y. Feb. 4, 2009] [noting that the Second Circuit has "consistently distinguished . . . systemic

violations to be addressed by the federal courts, from technical questions of how to define and treat individual students' learning disabilities, which are best addressed by administrators"], aff'd, 353 Fed. App'x 461 [2d Cir. Nov. 12, 2009]; see also Application of a Student with a

2

The Supreme Court has stated that even if it is unreasonable to expect a student to attend a regular education setting and achieve on grade level, the educational program set forth in the student's IEP "must be appropriately ambitious in light of his [or her] circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives" ( Endrew F., 137 S. Ct. at 1000).

Disability, Appeal No. 11-091). Thus, neither the IHO, nor I for that matter, have plenary authority to pass judgment on the Governor's or district policies affecting all students. Even if I possessed such authority, courts have held that certain summary administrative actions that have the effect of limiting the availability of protections otherwise afforded by law under ordinary circumstances may be justified as part of the government's response to emergency situations (see, e.g., Hernandez v. Grisham, 508 F. Supp. 3d 893, 979 [D.N.M. 2020]), so it is far from clear that the parents' would prevail with that argument in the appropriate forum anyway.

In addition, in describing his allegations, the parent referenced concepts such as "status quo" and pendency rights (Parent Ex. A at pp. 1-3). To the extent the due process complaint notice alleged a violation of the student's pendency placement, such an allegation was premature insofar as the student was not entitled to a pendency placement prior to the parent's filing of the due process complaint notice in August 2020 ( see Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 452 [2d Cir. 2015] [holding that a student's entitlement to stay-put arises when a due process

complaint notice is filed]). That is, the Governor's March 2020 executive order closing schools in the State is not the event that would trigger the student's right to a pendency placement under the IDEA, and it was only the parent's filing of a due process complaint notice that gave rise to the student's rights under stay-put. The parent also requested that an IHO issue an order requiring the district to implement the student's last-agreed upon IEP by reopening the student's school or allowing the parent to "self-cure the unilateral change in the Student's status quo" (Parent Ex. A at p. 3). However, an IHO would not have sufficient authority to countermand Governor Cuomo's executive orders addressing the COVID-19 pandemic response or to direct the district to open an entire school and, in any event, district schools have since re-opened and such request is now moot ( see J.T., 500 F. Supp. 3d at 190).3

Moreover, the district is correct that the August 2020 due process complaint notice did not allege that the student did not receive instruction and/or services remotely during the school closure, instead taking issue with the remote delivery itself ( see Parent Ex. A). Nor did the parent allege that a CSE considered whether the student may need additional services to make up for lost skills due to the closure of schools and the change in the delivery of services as a result of the pandemic, which as discussed further below, is the process contemplated by the United States Department of Education (USDOE) and the State Education Department's (SED's) Office of Special Education. Generally, the party requesting an impartial hearing has the first opportunity to identify the range of issues to be addressed at the hearing ( Application of a Student with a Disability, Appeal No. 09-141; Application of the Dep't of Educ., Appeal No. 08-056). Under the IDEA and its implementing regulations, a party requesting an impartial hearing may not raise issues at the impartial hearing that were not raised in its due process complaint notice unless the other party agrees (20 U.S.C. § 1415[f][3][B]; 34 CFR 300.507[d][3][i], 300.511[d]; 8 NYCRR

200.5[j][1][ii]), or the original due process

*cyber*FEDS® Case Report

complaint notice is amended prior to the impartial hearing per permission given by the IHO at least five days prior to the impartial hearing (20 U.S.C.

§ 1415[c][2][E][i][II]; 34 CFR 300.507[d][3][ii]; 8 NYCRR 200.5[i][7][b]). Indeed, "[t]he parent

Further, the Court in J.T. held that the switch to remote learning in light of the pandemic in and of itself did not constitute a change of placement that would trigger a student's right to pendency (500 F. Sup. 3d at 187-90). The Court left open the possibility that an individual parent could assert "that something other than the closure of the schools and the provision of remote educational services during the pandemic worked a change in [a student's] pendency" ( id. at 194); however, the parent has made no such allegation here.

must state all of the alleged deficiencies in the IEP in their initial due process complaint in order for the resolution period to function. To permit [the parents] to add a new claim after the resolution period has expired would allow them to sandbag the school district" ( R.E., 694 F.3d 167 at 187- 88 n.4; see also B.M. v. New York City Dep't of Educ., 569 Fed. App'x 57, 58-59 [2d Cir. June

18, 2014]).

During the impartial hearing, the parent's attorney indicated that the parent attempted to amend his due process complaint notice on September 30, 2020, but that the district would not agree to the amendment ( see Tr. p. 4). A copy of the September 2020 due process complaint notice was included with the hearing record on appeal but was not entered into evidence as an exhibit. There is no indication in the hearing record that the parent requested the IHO's permission to amend the complaint. The parent did not make further reference to the proposed amendment during the impartial hearing and cited only to the original August 2020 due process complaint notice in his post-hearing brief ( see Parent Post-Hr'g Brief at pp. 1-4). Consistent with this, the IHO only referred to the original August 2020 due

process complaint notice in her decision ( see IHO Decision at pp. 2, 4). While the parent's proposed amended due process complaint notice includes factual allegations about the district's delivery of services to the student, as the amendment was not effectuated, it cannot be relied upon to define the scope of the impartial hearing. Accordingly, the issue of the actual delivery of services to the student after March 2020 was outside the scope of the impartial hearing and could not form the basis of the IHO's determination that the district denied the student a FAPE.

While the IHO understandably found that the district failed to meet its burden in this matter given its complete failure to engage in the impartial hearing process and defend its provision of a FAPE to the student or at the very least raise its arguments regarding the scope of the impartial hearing or the justiciability of the parent's claims before the IHO, under the circumstances of this matter, the IHO's determination that the district failed to offer the student a FAPE may not stand given the allegations that were raised in the due process complaint.

B.

Compensatory Education

Although I find that the IHO erred in deciding the issue of the FAPE in the parent's favor given the allegations in the due process complaint notice, further discussion of compensatory education is warranted. That is, even if the IHO's determination that the district failed to offer the student a FAPE stood, compensatory education would not be warranted at this juncture.

Both the USDOE and SED's Office of Special Education have issued guidance acknowledging that the global pandemic and the resulting closure of schools resulted in "an inevitable delay" in districts providing services to students with disabilities or engaging in the decision-making process regarding such services ("Supplemental Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with

Disabilities," 76 IDELR 104 [OCR & OSERS 2020]; "Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at p. 1, Office of Special Educ. Mem. [June 2021], available at http://www.p12.nysed.gov/specialed/publications/2020-memos/documents/compensatory-services-for-students-with-disabilities-resulted-covid19-pandemic.pdf). In addition, the USDOE has noted reports from some local educational agencies that they were "having difficulty consistently providing the services determined necessary to meet

[each] child's needs" and that, as a result, "some children may not have received appropriate services to allow them to make progress anticipated in their IEP goals" ("Return To School Roadmap: Development and Implementation of Individualized Education Programs in the Least Restrictive Environment under the Individuals with Disabilities Education Act," 79 IDELR 232 [OSERS 2021]).

To address these delays and other delivery-related issues that occurred as a result of the pandemic, OSEP and NYSED's Office of Special Education have indicated that, when school resumes, a CSE should convene and "make individualized decisions about each child's present levels of academic achievement and functional performance and determine whether, and to what extent, compensatory services may be necessary to mitigate the impact of the COVID-19 pandemic on the child's receipt of appropriate services" ("Return To School Roadmap," 79 IDELR 232; "Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at pp. 1, 3; see also "Supplemental Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities," 76 IDELR 104; "Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak," 76 IDELR 77 [OCR & OSERS 2020]; "Supplement #2 - Provision of Services to Students with Disabilities during Statewide School Closures Due to Novel Coronavirus

(Covid-19) Outbreak in New York State," at pp. 2-5, Office of Special Educ. Mem. [June 2020], available at http://www.p12.nysed.gov/specialed/publications/2020-memos/special-education-supplement-2-covid-qa-memo-6-20-2020.pdf). The CSE's review might include a discussion of whether the student has new or different needs compared to before the pandemic, whether the student experienced a loss of skill or a lack of expected progress towards annual goals and in the general education curriculum, whether evaluations of the student or implementation of an IEP was delayed, and whether some of the student's IEP services could not be implemented due to the available methods of service delivery or whether such methods of service delivery were not appropriate to meet the student's needs ("Return To School Roadmap," 79 IDELR 232; "Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at pp. 3-4; see "Supplement #2 - Provision of Services to Students with Disabilities during Statewide School Closures Due to Novel Coronavirus (Covid-19) Outbreak in New York State," at p. 1).

If the parent disagrees with a CSE's determination regarding the student's entitlement to compensatory services, State guidance notes that:

Parents of students with disabilities may resolve disputes with school districts regarding the provision of FAPE by pursuing one of the dispute resolution options provided for in the IDEA. A parent may file a State complaint directly with NYSED in accordance with Commissioner's Regulation section 200.5( l), request mediation in accordance with Commissioner's Regulation section 200.5(h), or file a due process complaint and proceed to hearing in accordance with Commissioner's Regulation section 200.5(j).

("Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at p. 5; "Supplement #2 - Provision of Services to Students with Disabilities during Statewide School Closures Due to Novel Coronavirus (Covid-19) Outbreak in New York State," at p. 6).

Here, there is no indication that a CSE has conducted such a review. According to the March 2021 IEP, the parent expressed that, in his opinion, the student regressed during remote learning and that remote learning was not appropriate for the student (Parent Ex. B at p. 6); however, it does not appear that the CSE discussed whether the evaluative information supported the parent's position or considered if compensatory education would be appropriate to make-up for any loss of skill attendant to the school closure. In any event, the March 2021 CSE and IEP post- date the due process complaint notice in this matter and the appropriateness thereof was not at issue in this proceeding. Indeed, the due process complaint notice does not include any allegations relating to a CSE's consideration of compensatory education or lack thereof as a result of responsive measures by the government to mitigate the public health threat from COVID-19.

In sum, the USDOE and NYSED's Office of Special Education have indicated that, under these unique circumstances, a CSE should have the first opportunity to consider the student's needs and whether any additional services may be warranted as a result of the pandemic. There is no indication that this has yet occurred for this student.

Under these circumstances, the IHO did not err in declining to order compensatory education at this juncture. However, the parties, if they have not already done so, should conduct a review of the student's present levels of academic achievement and functional performance as envisioned by federal and state education authorities and convene a CSE to engage in educational planning for the student, which should include a consideration of whether any compensatory services may be warranted to make-up for a loss of skill during school closures and the delivery of instruction and services to the student remotely. Once a CSE conducts such a review, if the parent disagrees with the recommendations thereof, he may pursue dispute resolution through one of the mechanisms described above.

C.

Prospective IEP Amendments

As a final matter, even if the IHO's determination that the district denied the student a FAPE stood, the parent would not be entitled to an order requiring the CSE to convene and amend the student's IEP to increase the mandate for home-based SETSS. As the IHO observed, directing the CSE to amend the IEP for the 2021-22 school year would tend to undermine the district's continuing obligations to the student and the procedural process of the IDEA. That is, an award of a specific program for the 2021-22 school year and beyond would tend to circumvent the very statutory process that Congress envisioned, under which the CSE is the entity tasked with meeting every year at the very least to review information about the student's progress under current educational programming and periodically assess any changes in the student's continuing needs ( see Adams v. Dist. of Columbia, 285 F. Supp. 3d 381, 393, 396-97 [D.D.C. 2018] [noting with approval the hearing officer's finding "that the directives of IDEA would be best effectuated by ordering an IEP review and revision, rather than prospective placement in a private school"]; see also Student X v. New York City Dep't of Educ., 2008 WL 4890440, at *16 [E.D.N.Y Oct. 30, 2008] [noting that "services found to be appropriate for a student during one school year are not necessarily appropriate for the student during a subsequent school year"]; Eley v. Dist. of Columbia, 2012 WL 3656471, at *11 [D.D.C. Aug. 24, 2012] [noting that prospective placement is not an appropriate remedy until the IEP for the current school year has been completed and the parent challenges the IEP for the current year]).

This is especially the case since, as noted above, the CSE convened in March 2021 and developed an IEP for the student and there is no evidence in the hearing record regarding the appropriateness of that CSE's recommendations for the student, which appear to have been based in part on new evaluative information and with the agreement of the parent. However, when the CSE convenes as directed here, it

should consider whether an increase in the number of home- based ABA SETSS for the student is warranted. As noted above, if the parent disagrees with the recommendations of the March 2021 CSE or the recommendations of any CSE that convenes in compliance with this decision, he may use one of the IDEA's dispute resolution mechanisms described above to resolve the issue.

VII.

Conclusion

In summary, given the allegations in the parent's August 2020 due process complaint notice, the IHO erred in finding that the district failed to meet its burden to prove that it provided the student a FAPE from the period of March 2020 through June 2020. However, even if the district had failed to meet its burden, the student would not be entitled to relief in the form of compensatory services or prospective IEP amendments at this juncture.

In light of these determinations, I need not address the parties' remaining arguments.

THE APPEAL IS DISMISSED.

THE CROSS-APPEAL IS SUSTAINED.

IT IS ORDERED that, the IHO's decision dated September 9, 2021, is modified by reversing that portion which found that the district failed to meet its burden to prove that it provided the student a FAPE from March 2020 through June 2020.

Dated:

Albany, New York

December 8, 2021

JUSTYN P. BATES

STATE REVIEW OFFICER

2