# EXHIBIT E

2013 WL 3942392
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Kathleen LIEBAU, Plaintiff–Appellant,
v.
ROMEO COMMUNITY SCHOOLS, Nancy J. Campbell, Rita MacDonald, Michael G. Phillips, and John Does, Defendants–Appellees.

Docket No. 306979.
|
July 30, 2013.

Macomb Circuit Court; LC No.2011–000934–CZ.

Before GLEICHER, P.J., and BECKERING and SHAPIRO, JJ.

**Opinion**

PER CURIAM.

*1 Plaintiff, proceeding in propria persona, appeals as of right from the trial court's order granting defendants' motion for summary disposition, dismissing plaintiff's complaint pursuant to MCR 2.116(C)(8), and denying plaintiff's request for leave to amend her complaint. We affirm.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff is the parent of a student who attended Hevel Elementary School in the Romeo Community Schools district in the 2010–2011 school year. During that school year, the district implemented a policy banning all peanut and tree-nut products at Hevel because another student there ("student A") had a severe, life-threatening allergy that was aggravated by airborne exposure to nuts. The school initially attempted less-intrusive measures to alleviate any risk of harm to student A but was advised by student A's treating doctor that the measures were insufficient to eliminate the risk of harm to student A. Therefore, the school district implemented a policy making Hevel a nut-free school. The policy was implemented pursuant to an individualized "504 plan" adopted for student A under § 504 of the Rehabilitation Act of 1973, 29 USC 794.[1] The child's allergy was treated as a disability, and the school district adopted the nut-free policy to protect his health and safety and to avoid excluding him from the school on account of his disability.

Plaintiff's daughter attended Hevel Elementary School. Plaintiff opposed the nut-free policy and provided notice that she would not abide by it. Plaintiff, acting in propria persona, later filed this action against the school district; the district's superintendent, Nancy Campbell; the school's nurse, Rita MacDonald; the school's principal, Michael Phillips; and unknown individuals who approved the 504 plan. Plaintiff primarily sought injunctive relief to enjoin the school-wide ban on nut products but also requested monetary damages.

Plaintiff's complaint did not set forth separate causes of action but generally contended that the adoption of the nut-free policy infringed on both her and her daughter's constitutional rights. Plaintiff claimed that there were breaches of fiduciary duties and abuses of power by persons in positions of authority. Plaintiff alleged that she and her child were subject to harassment and intimidation to get them to comply with the policy. Plaintiff also complained that the adoption of the nut-free policy failed to recognize the nutritional or medical needs of her own child. Along with her complaint, plaintiff filed a motion for a preliminary or permanent injunction against the nut ban.

The trial court denied plaintiff's motion for a preliminary or permanent injunction. At the time the motion was argued, plaintiff advised the court that her daughter had certain dietary restrictions and that the absence of nut products would compromise her nutritional needs. Plaintiff stated that she had submitted a request to the school for development of a 504 plan for her daughter, but the school denied it because her daughter's condition did not require accommodation. The court clarified that because plaintiff had not appealed that decision, the present action was limited to plaintiff's challenge to the school's nut-ban policy that was implemented as part of student A's 504 plan.

*2 Defendants jointly moved for summary disposition of plaintiff's complaint under MCR 2.116(C)(8). Defendants argued that they were obligated to accommodate the student with the nut allergy and that they had received medical advice

that past efforts and less-intrusive measures for addressing the problem were insufficient. Defendants acknowledged that the policy inconvenienced other students who did not have a nut allergy but maintained that they were obligated to protect the health and safety of student A in accordance with their obligations under the Rehabilitation Act. Defendants requested summary disposition because although plaintiff may have been inconvenienced by the nut-ban policy, she failed to state a valid claim for legal relief.

Defendants submitted a letter from student A's physician, Dr. Devang Doshi, who is the director of Pediatric Allergy and Immunology and the director of Pediatric Pulmonology at William Beaumont Hospital in Royal Oak. Despite prior efforts to control the environment at the school, Dr. Doshi advised defendants in May 2010 that student A was still experiencing flare-ups and that airborne exposure to peanuts in the school cafeteria was the suspected cause of the flare-ups. Dr. Doshi also submitted an affidavit in which he averred that student A's nut allergy was potentially life-threatening and that a nut-ban policy was necessary for the student's health and safety.

Defendants also submitted the affidavit of Nancy Campbell, the superintendent of the school district, who explained the procedures that were followed to adopt the 504 plan for student A. According to Campbell, the board of education had voted in September 2010 to seek guidance from the federal Office for Civil Rights regarding the ban and was advised that § 504 of the Rehabilitation Act required school districts to provide a free, appropriate public education to students with disabilities, including students with nut allergies. The Office for Civil Rights was not aware of any law that required a school district to accommodate a student who wished to consume nut products at school. The school-wide nut-ban policy began at the beginning of the 2010–2011 school year. Staff, students, and parents were educated on the policy. The policy included procedures to be followed if an offending item was brought into the school. The procedures included removing the item and providing an alternative, appropriate food item. An offending child was also given a notice to take home to explain the policy and how the staff had responded. A child bringing in a banned item was also requested to wash his or her hands but reassured that he or she was not in trouble. If a student refused to give up the banned item, the child was to be taken to another location, and the above procedures would be followed again. According to Campbell, the school's procedures were generally effective in keeping incidents in the school down, and most parents cooperated.

In November 2010, however, plaintiff and two other parents provided "notice" to the school district that they would not follow the nut ban. On November 22, 2010, some parents sent nut products to the school with their children, and the parents also remained present in the cafeteria to prevent school staff from removing any banned items. As a result, student A missed school, and the 504 plan was further amended to adopt procedures to immediately protect student A when banned products were brought into the school.

*3 In her response to defendants' motion for summary disposition, plaintiff conceded that, as a layperson, she had not properly set forth claims in her complaint, so she requested leave to file an amended complaint.[2] Plaintiff's response also included a copy of the "notice" that she sent to the school in November 2010, in which she informed the school that she was refusing to abide by the nut-ban policy. That notice stated:

> Due to [the] conflicting needs of my own child, I will not be cooperating nor participating in the School's 504 plan to another student. My child and I are not subject to, nor bound by, the provisions of the Rehabilitation Act requiring the School to provide an accommodation to another student and we decline to accept such obligations.
>
> To meet my child's needs, I will provide my child with the proper nutrition in her school lunch as I, in my sole discretion, deem appropriate. The School is not permitted to take any disciplinary action—including, but not limited to, taking away her food or removing her to a different location. Any such action against my child will be discriminatory, harassment and an act of retaliation in violation of her rights under the Rehabilitation Act and infringes on our individual rights, including our right against despotic control and our right to freedom of choice.

Plaintiff also submitted a letter that she had received from the school district in response to her "notice," again explaining the procedures that would be followed, the need for the ban, and a list of safe or approved foods that could be brought to school. Plaintiff argued that defendants' nut-ban policy infringed on her ability to feed her own child and maintained that some lesser form of accommodation could be made for student A. Although plaintiff asked the court for leave to file an amended complaint, she stated that she had not submitted a proposed amended complaint with her request because the court rules did not require that she do so.

The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim for relief), noting that plaintiff had essentially conceded that her filed complaint did not properly state a claim for relief. The court then went on to address the legal validity of plaintiff's various arguments to determine if she should be permitted to file an amended complaint. The trial court determined that none of plaintiff's arguments provided a potential basis for relief and, therefore, denied plaintiff's request for leave to amend her complaint.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v. Dep't of Transp.,* 456 Mich. 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's complaint by the pleadings alone. *Patterson v. Kleiman,* 447 Mich. 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v. Dep't of Corrections,* 215 Mich.App 485, 486; 546 NW2d 668 (1996). A court may grant summary disposition only if the claims are so clearly unenforceable as a matter of law that no factual development could justify recovery. *Id.* at 487.

 *4 As the trial court observed, when a court grants summary disposition under MCR 2.116(C)(8), it must give the nonmoving party an opportunity to amend his or her pleadings pursuant to MCR 2.118, "unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5); see also *Yudashkin v. Linzmeyer,* 247 Mich.App 642, 651; 637 NW2d 257 (2001). A trial court should freely grant leave to amend "when justice so requires." MCR 2.118(A)(2). But amendment is not warranted if it would be futile. *Cole v. Ladbroke Racing Mich., Inc,* 241 Mich.App 1, 9–10; 614 NW2d 169 (2000). An amendment is futile if it merely restates allegations already made or adds new allegations that fail to state a claim. *Yudashkin,* 247 Mich.App at 651. A trial court's decision denying leave to amend will not be reversed unless the court abused its discretion. *Ormsby v. Capital Welding, Inc.,* 471 Mich. 45, 53; 684 NW2d 320 (2004). " 'An abuse of discretion occurs when the decision [of the trial court] results in an outcome falling outside the principled range of outcomes.' " *Woods v. SLB Prop. Mgt., LLC,* 277 Mich.App 622, 625; 750 NW2d 228 (2008), quoting *Woodard v. Custer,* 476 Mich. 545, 557; 719 NW2d 842 (2006).

## III. THE REHABILITATION ACT

Despite plaintiff's assertion that she is not challenging student A's 504 plan under the Rehabilitation Act, many of plaintiff's claims on appeal directly relate to defendants' decisions regarding the necessity and adoption of student A's 504 plan. We agree with defendants that because neither plaintiff nor her daughter were parties to those proceedings and the Rehabilitation Act does not apply to plaintiff or her daughter, neither plaintiff nor her daughter have standing to challenge defendants' decisions with respect to student A under the Rehabilitation Act. See *Dep't of Ed. v. Grosse Pointe Pub. Sch.,* 266 Mich.App 258, 285–286; 701 NW2d 195 (2005), vac'd on other grounds 474 Mich. 1117 (2006). Plaintiff has not shown that either she or her daughter are detrimentally affected in a manner different from the citizenry at large. See *Lansing Sch. Ed. Ass'n v. Lansing Bd. of Ed.,* 487 Mich. 349, 372; 792 NW2d 686 (2010). Although plaintiff argues that her daughter's nutritional needs conflict with student A's allergies, plaintiff concedes that her request for a 504 plain on behalf of her daughter was denied and that she did not appeal that decision. Thus, we are not presented with any issue concerning plaintiff's daughter's need for accommodation under the Rehabilitation Act. Accordingly, plaintiff lacks standing to challenge defendants' actions under the Rehabilitation Act, and the trial court properly determined that plaintiff could not state a potential claim for relief with respect to any claims that implicate defendants' actions under that act.

Plaintiff further argues that because she and her daughter are not parties to the 504 plan, she cannot be bound by the nut-ban policy that was implemented pursuant to that plan. We reject this contract-based argument because the nut-plan policy imposed by the school is not a matter of contract; rather, it is based on the school district's statutory authority to adopt policies and procedures for the health, safety, and educational benefit of its students. MCL 380.11a provides, in relevant part:

> *5 (3) A general powers school district has all of the rights, powers, and duties expressly stated in this act; may exercise a power implied or incident to a power expressly stated in this act; and, except as provided by law, may exercise a power incidental or appropriate to the

performance of a function related to operation of the school district in the interests of public elementary and secondary education in the school district, including, but not limited to, all of the following:

* * *

(b) Providing for the safety and welfare of pupils while at school or a school sponsored activity or while en route to or from school or a school sponsored activity.

This statute vests broad authority in school districts to adopt policies to ensure the safety and welfare of its students while at school. Thus, the school district had the authority to adopt a school-wide ban on nuts as part of the 504 plan for student A given its determination that the ban was necessary for student A's safety and welfare while at school.

Although plaintiff asserts that there was dissention among school board members about whether to adopt the nut-ban policy, plaintiff has not cited any school-district provision or other legal authority providing that a school policy must be unanimously approved by all school board members. Plaintiff also argues that a school-wide ban on nut products is not valid because it is not a reasonable regulation. MCL 380.1300 formerly provided that school boards had the authority to make "reasonable regulations ... including regulations relative to the conduct of pupils concerning their safety while in attendance at school or enroute to and from school." See *Slocum v. Holton Bd. of Ed.,* 171 Mich.App 92, 96; 429 NW2d 607 (1988). However, MCL 380.1300 was repealed by 1995 PA 289, effective July 1, 1996, and current MCL 380.11a(3) does not contain a "reasonableness" requirement. The evidence before the trial court showed that the policy was enacted after the school was informed that less-intrusive measures were not sufficient to protect student A from a potentially life-threatening risk of harm. Because plaintiff did not demonstrate any basis for finding that the policy was not a proper exercise of the school's authority to provide for the safety and welfare of pupils while at school, the trial court did not abuse its discretion by denying plaintiff's request to amend with respect to this matter.

IV. MCL 380.10

Plaintiff argues that she may establish a right to relief under MCL 380.10, which establishes rights in parents to be involved in the education of their children.[3] To the extent there is some tension between the rights afforded to parents under MCL 380.10 and a school's authority under MCL 380.11a(3)(b), we must resolve that tension in accordance with the following rules of construction:

> Apparently conflicting statutes should be construed, if possible, to give each full force and effect. *Mich Good Roads Federation v. State Bd. of Canvassers,* 333 Mich. 352, 361; 53 NW2d 481 (1952); *Beattie v. Mickalich,* 284 Mich.App 564, 570; 773 NW2d 748 (2009). The object of the *in pari materia* rule is to effectuate legislative purposes when statutes are harmonious. *Walters v. Leech,* 279 Mich.App 707, 710; 761 NW2d 143 (2008). If two statutes lend themselves to a harmonious construction, that construction controls. *In re Project Cost & Special Assessment Roll for Chappel Dam,* 282 Mich.App 142, 148; 762 NW2d 192 (2009). Statutes are *in pari materia* when they relate to the same subject matter and share a common purpose. *In re Kostin Estate,* 278 Mich.App at 57, citing *Donkers v. Kovach,* 277 Mich.App 366, 371; 745 NW2d 154 (2007). In other words, statutes that are *in pari materia* must be read together, as a whole, to fully reveal the Legislature's intent. *Beattie,* 284 Mich.App at 570. However, to the extent the two statutes at issue are in actual conflict, and are *in pari materia,* the more specific statute controls. *In re Kostin Estate,* 278 Mich.App at 57, citing *People v. Buehler,* 477 Mich. 18, 26; 727 NW2d 127 (2007). [*Driver v. Naini,* 287 Mich.App 339, 350–351; 788 NW2d 848 (2010), rev'd in part on other grounds 490 Mich. 239 (2011).]

*6 Reading MCL 380.10 in harmony with MCL 380.11a(3)(b), it is apparent that the Legislature has recognized the rights of parents to be involved in the education of their child, subject to the school's broad authority to provide for the safety and welfare of its students while at school. Thus, MCL 380.10 does not infringe on the school's authority to regulate what food items a child may bring to school in the exercise of its obligation to provide for the safety and welfare of other students. Accordingly, MCL 380.10 does not provide plaintiff with any potential claim for relief.

V. EQUAL PROTECTION

Plaintiff argues that the nut-ban policy deprives her and her daughter of equal protection under both the state and federal constitutions. In *Dowerk v. Oxford Twp.,* 233 Mich.App 62, 73; 592 NW2d 724 (1998), this Court explained:

Equal protection of the law is guaranteed by both the federal and state constitutions. US Const, Am XIV, § 1; Const 1963, art 1, § 2; *Neal v. Oakwood Hosp. Corp.,* 226 Mich.App 701, 716; 575 NW2d 68 (1997). These constitutional provisions are coextensive. *Id.* The doctrine mandates that persons in similar circumstances be treated similarly. *Id.* However, unless the dissimilar treatment alleged impinges on the exercise of a fundamental right or targets such protected classifications as those based on race or gender, the challenged regulatory scheme will survive equal protection analysis if it is rationally related to a legitimate governmental interest. See *Frame v. Nehls,* 452 Mich. 171, 183; 550 NW2d 739 (1996). In such cases, the party raising the equal protection challenge has the burden of proving that the challenged law is arbitrary and thus irrational. *Neal, supra* at 719.

In *Landon Holdings, Inc. v. Grattan Twp.,* 257 Mich.App 154, 173; 667 NW2d 93 (2003), this Court held that "[w]hen no suspect or somewhat suspect classification can be shown, the plaintiff has the burden of establishing that the statute is arbitrary and not rationally related to a legitimate governmental interest."

On appeal, plaintiff appears to contend that the accommodation granted to student A pursuant to the Rehabilitation Act infringes upon her daughter's rights. As the trial court noted, however, the Rehabilitation Act is intended to address the needs of individuals with a disability to prevent discrimination against them in the services offered. Furthermore, the different treatment of such students is rationally related to a legitimate government interest of protecting disabled students. Plaintiff has not shown that the different treatment afforded to disabled students violates the Equal Protection Clause.

Furthermore, to the extent that plaintiff is challenging the accommodation that defendants adopted pursuant to the Rehabilitation Act by enacting a school-wide ban on nuts, she has not shown that that ban is not rationally related to a legitimate governmental interest. Defendants determined that a school-wide ban was necessary to accommodate student A's severe allergy. Less-intrusive procedures for accommodating student A were attempted initially but were determined to be ineffective. Plaintiff simply has not shown that defendants' implementation of the school-wide ban was arbitrary and therefore irrational. Accordingly, the trial court did not err by ruling that the Equal Protection Clause does not provide a basis for legal relief and, therefore, that any amendment to allege such a claim would be futile.

## VI. UNLAWFUL SEARCH AND SEIZURE

**\*7** Plaintiff also has not shown that she has a potential claim for relief based on her contention that the school's procedures for enforcing the school-wide ban on nut products permit unconstitutional searches and seizures of students' lunches and snacks.

The Fourth Amendment protects against unreasonable searches and seizures. *People v. Taylor,* 253 Mich.App 399, 403–404; 655 NW2d 291 (2002). Although the police require probable cause to search without a warrant, school officials may search a student's person or property on school premises on the lesser standard of reasonable suspicion. *People v. Perreault,* 287 Mich.App 168, 172; 782 NW2d 526 (2010), rev'd on other grounds 486 Mich. 914 (2010). "Reasonable suspicion" requires "articulable reasons" and a "particularized and objective basis" for suspecting a particular person of criminal activity. *Id.* at 173. In the school setting, "reasonable suspicion" also extends to suspected violations of school rules. *New Jersey v. TLO,* 469 U.S. 325, 341–342; 105 S.Ct 733; 83 L.Ed 2d 720 (1985). Moreover, a search on the basis of reasonable suspicion in a school setting must be "reasonably related in scope to the circumstances which justified the interference at its inception." *Id.* at 341.

Despite plaintiff's claim about her daughter being intimidated by lunchroom staff, plaintiff did not offer any basis for finding that school staff had conducted a search and seizure beyond the removal of banned items observed by school staff or a search of a child's belongings where the school was given advance notice that the ban was being violated. A search and seizure based on either a staff person's actual observation of an item that has the characteristics of a banned item or a noncompliant parent's notification to the school that the policy would be violated will satisfy the lesser reasonable-suspicion standard applicable to school personnel. Furthermore, the search of a student's lunch or snack is "reasonably related in scope to the circumstances which justified the interference at its inception," i.e., a suspicion that a student has brought a banned item to school for lunch or a snack that could have life-threatening implications for another student. See *id.* Such a search is not excessively intrusive. See *id.* Plaintiff did not provide any basis for believing that the school's procedure gave rise to a potential claim based on the prohibition against unreasonable searches and seizures. Thus, any amendment to allege such a claim would be futile.

VII. DUE PROCESS

Plaintiff also argues that she has a viable claim under the Due Process Clause. We disagree. In *Landon Holdings,* 257 Mich.App at 173, this Court stated:

> The state and federal constitutions also guarantee that no person will be deprived of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17; *Marlin v. Detroit (After Remand),* 205 Mich.App 335, 339; 517 NW2d 305 (1994). Unless a fundamental right is involved, the statute need only be rationally related to a legitimate governmental interest. *Electronic Data Sys. Corp. v. Flint Twp.,* 253 Mich.App 538, 549; 656 NW2d 215 (2002). The essence of a claim of violation of substantive due process is that the government may not deprive a person of liberty or property by an *arbitrary* exercise of power. *Id.*

**\*8** Plaintiff argues that the nut-ban policy deprives her of a liberty or property interest because it requires her to purchase more expensive foods she otherwise would not have to buy. The trial court did not err in rejecting this claim. The nut-ban policy does not require plaintiff to purchase any specific food item; it only prohibits plaintiff's child from bringing to school one very narrow class of items. The ban is not an arbitrary exercise of power but, rather, is rationally related to the legitimate government purpose of providing an education for a student with a life-threatening allergy to nut products.

Similarly, plaintiff has made no showing that her right to procedural due process has been violated. Due process is a flexible concept, the essence of which is to guarantee fundamental fairness. *Reed v. Reed,* 265 Mich.App 131, 159; 693 NW2d 825 (2005). This Court has stated:

> "Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker. The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence." [*Hinky Dinky Supermarket, Inc. v. Dep't of Community Health,* 261 Mich.App 604, 606; 683 NW2d 759 (2004), quoting *Cummings v. Wayne Co.,* 210 Mich.App 249, 253; 533 NW2d 13 (1995) (citation omitted).]

This Court will not reverse on the basis of a violation of procedural due process if the outcome of the case would remain the same. *Feaster v. Portage Pub. Schools,* 210 Mich.App 643, 655–656; 534 NW2d 242 (1995), rev'd on other grounds 451 Mich. 351 (1996); see also *Verbison v. Auto Club Ins. Ass'n,* 201 Mich.App 635, 640–641; 506 NW2d 920 (1993). It is apparent from plaintiff's pleadings that she had the opportunity to challenge the policy before the school board and other venues. Although plaintiff was not successful, she has not provided any basis for concluding that she was not afforded her right to procedural due process. Thus, any amendment to allege a procedural due process claim would be futile.

VIII. WAIVER OF CLAIMS

Plaintiff argues that the trial court erroneously held that she waived any claims alleged in her original complaint. We disagree. Contrary to what plaintiff argues, the trial court did not find that plaintiff intentionally waived any claim but, instead, accurately noted that she had conceded that her original complaint was deficient. The court then appropriately endeavored to consider "the major theories that purportedly support plaintiff's request for relief" to determine whether an amended complaint might be justified. We find no error.

IX. PLAINTIFF'S REMAINING CLAIMS

In her final issue, plaintiff presents a variety of additional claims that she maintains she should be permitted to bring. Most of the claims are directed at Superintendent Campbell. Plaintiff argues that she should be permitted to bring claims for Campbell's fraud and negligence, Campbell's misuse of school-district funds, extortion, violation of 42 USC 1983, defendants' breach of duty to supervise plaintiff's child, and negligent infliction of emotional distress. Initially, we note that most of these claims were not raised below in support of plaintiff's request to amend her complaint. Therefore, the trial court had no opportunity to consider them. Regardless, plaintiff has not demonstrated any factual or legal support for these claims; therefore, she is not entitled to appellate relief.

**\*9** Affirmed.

**All Citations**

Not Reported in N.W.2d, 2013 WL 3942392

---

Footnotes

| | |
|---|---|
| 1 | The school is subject to these federal regulations because the school district receives federal funds. See 29 USC 794. |
| 2 | Plaintiff's response stated: |
| | Plaintiff's original Complaint and accompanying pleadings stated the facts of this situation in layman's terms because Plaintiff did not understand the elements required in the pleading. While the facts of the circumstances certainly will not change, Plaintiff recognizes the presentation needs to be amended to comply with the rules and hereby requests leave of this Court to file an Amended Complaint within 14 days. |
| 3 | MCL 380.10 provides: |
| | It is the natural, fundamental right of parents and legal guardians to determine and direct the care, teaching, and education of their children. The public schools of this state serve the needs of the pupils by cooperating with the pupil's parents and legal guardians to develop the pupil's intellectual capabilities and vocational skills in a safe and positive environment. |

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.