UNITED STATES DISTRICT COURT
EASTERN DISTRICT MICHIGAN

RITA C. SIMPSON-VLACH,
ALAN SIMPSON-VLACH,
on behalf of A.S. and M.S., and
individually, KATHY BISHOP,
CHRISTOPHER PLACE,
on behalf of C.P. and H.P, and
individually,

|  |  |
|---|---|
| Plaintiffs, | Civil Action No. 21-cv-11532 |
| v. | Honorable Judith E. Levy |

MICHIGAN DEPARTMENT OF EDUCATION,
ANN ARBOR PUBLIC SCHOOLS,
WASHTENAW INTERMEDIATE SCHOOL DISTRICT,
DR. JEANICE SWIFT, in her official capacity,
DR. MARIANNE FIDISHIN, in her official capacity,
SCOTT MENZEL, in his official capacity,
NAOMI NORMAN, in her official capacity,
MICHAEL F. RICE, Ph.D., in his official capacity,

Defendants.
_____/

| | |
|---|---|
| Rory J. Bellantoni (RB2901)<br>Brain Injury Rights Group<br>Attorneys for Plaintiffs<br>300 East 95th Street, Suite 130<br>New York, New York 10128<br>646-850-5035<br>charlotte@pabilaw.org | Neil Giovanatti (P82305)<br>Assistant Attorney General<br>Attorney for State Defendants<br>Michigan Department of Attorney General<br>Health, Education & Family Services<br>P.P. Box 30758<br>Lansing, MI 48909<br>(517) 335-7603<br>giovanattin@michigan.gov |
| Richard J. Landau (P42223)<br>Attorney for AAPS Defendants | Timothy J. Mullins (P28021)<br>John L Miller (P71913) |

| | |
|---|---|
| 5340 Plymouth Rd.<br>Suite 200<br>Ann Arbor, MI 48105<br>734-865-1585<br>rjlandau@rjlps.com | Travis M. Comstock (P72025)<br>Giarmarco, Mullins & Horton, P,C.<br>Attorneys for WISD Defendants<br>Troy, MI 48084<br>(248) 457-7020<br>tmullins@gmhlaw.com<br>jmiller@gmhlaw.com<br>tcomstock@gmhlaw.com |

## PLAINTIFFS' RESPONSE TO COURT'S ORDER DIRECTING PLAINTIFFS TO FILE SUPPLEMENTAL BRIEF

## PLAINTIFFS' SUPPLEMENTAL BRIEF

On January 27, 2022, the parties appeared before the Court to be heard relative to the Defendants' various motions to dismiss [Dkt. Nos. 20, 34, and 48] and Plaintiffs' recently filed motion for a temporary restraining order. [Dkt. No. 52]. [1]

By Order dated February 3, 2022, the Court required Plaintiffs to indicate to the Court before February 17, 2022, which counts of their Complaint, if any, they wish to dismiss voluntarily and whether any counts remain in the case.[2] In consultation with Ms. Carne, the Plaintiffs' lead Counsel for the oral argument, the undersigned filed Plaintifs' Response to the Court's Order. [Dkt. No. 68]. In their Response filed with the Court at Dkt. No. 68, Plaintiffs' indicated that as of February 17, 2022, Plaintiffs withdrew Counts 3, 6, and 8 as to all Defendants and Counts 2 and 5 as to the State Defendants.

By written Order dated February 22, 2022, the Court directed Plaintiffs to file a Supplemental Brief, not to exceed fifteen pages, addressing the issues identified therein. [Dkt. No. 69]. The Court directed Plaintiffs to provide supplemental briefing on the justiciability of this case, to demonstrate to the Court that an actual case or

---

[1] On September 2, 2021, Plaintiffs filed a Motion for a Preliminary Injunction after receiving permission to file a Brief in excess of the local rule's page limits. [Dkt. No. 42]. The Court held Plaintiffs motion in abeyance pending resolution of Defendants' motions to dismiss.

[2] Plaintiffs' Counsel Charlotte Carne, who was lead Counsel for the argument on January 27, 2022, prepared Plaintiffs' response to the Court's Order before leaving the Plaintiffs' law firm on February 4, 2022.

controversy exists in this case under Article III such that case is not moot. [Dkt. No 69]. The Court further directed Plaintiffs to indicate how they intend to make out their RICO claim in Count 7, in light of the Court's perceived deficiencies concerning this claim – Plaintiffs having suffered derivative or passed-on injuries and Plaintiffs not having been injured in their business or property. [Dkt. No. 69]. Plaintiffs were also directed to articulate how the Court can grant any effectual relief to address Count 7.

## I.  PLAINTIFFS' CLAIMS PRESENT A LIVE CASE OR CONTROVERSY – CASE IS NOT MOOT

The Constitution grants the "judicial Power" to federal courts only over "Cases" or "Controversies." U.S. Const. art. III, § 2. *Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395, at *2 (6th Cir. January 19, 2022). Federal courts are prohibited from rendering decisions that "do not affect the rights of the litigants." *Id.* (citing *Sw. Williamson Cty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001). *Thomas v. City of Memphis, Tennessee*, 996 F.3d 318, 323 (6th Cir. 2021).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013), *see Thomas v. City of Memphis, Tennessee*, 996 F.3d 318, 323–24 (6th Cir. 2021); *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 530 (6th Cir. 2001).

Typically, the "heavy burden" of demonstrating mootness falls on the party asserting it. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

To have a justiciable case, Plaintiffs must show that they have "standing" – that they have suffered (or are at imminent risk of suffering) an injury that was (or will be) caused by the Defendant's conduct and that can be redressed by the requested relief. *Thompson*, 2022 WL 168395, at *2. For a Plaintiff to maintain a justiciable action, the mootness rule ensures that injury, causation, and redressability requirements continue to be met throughout the litigation. *Id.*, *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537, 200 L. Ed. 2d 792 (2018). If a defendant proves that events have eliminated a plaintiff's injury or made it impossible to grant relief, the case has become "moot" and a court cannot address its merits. *Thompson*, 2022 WL 168395, at *2. While past injury alone will not give a plaintiff standing to seek a forward-looking injunction, a risk of incurring the same injury again may confer such standing on the plaintiff. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). In other words, a request for prospective relief must be accompanied by an allegation of prospective injury.

In the case at bar, Plaintiffs had standing to bring their claims when this action was commenced; and the remaining claims continue to present a live controversy, such that they are not moot. Plaintiffs' action began as a proposed class action, with

the primary relief sought being a Declaratory Judgement and a Preliminary Injunction -- that would eventually become a Permanent Injunction.

As the Court is aware, the Student-Plaintiffs in this action are children with qualifying disabilities under the Individuals with Disabilities Education Act ("IDEA"). IDEA aims to give children with disabilities a free appropriate public education ("FAPE") designed to meet their unique needs. *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 853 (6th Cir. 2004). The IDEA offers States federal funds to assist in educating children with disabilities. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 197 L. Ed. 2d 335 (2017). A State pledges to comply with several statutory conditions in exchange for the funds. Among them, the State must provide a FAPE  to all eligible children. § 1412(a)(1). *Endrew F. ex rel. Joseph F.*, 137 S. Ct. at 993. The Act also establishes various procedural protections that ensure parents have an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of decisions with which they disagree. *Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 200–01 (S.D.N.Y. 1988), *citing Honig*, 108 S. Ct. at 598.

As part of providing a FAPE, school districts receiving funds under the IDEA must establish an Individualized Education Program ("IEP") for each child with a disability. *Deal*, 392 F.3d at 853. Each of the Plaintiffs, in this case, had an IEP in March 2020 and was receiving a FAPE from Defendants. The gravamen of Plaintiffs'

4

Complaint is that when Defendants unilaterally closed their schools in March of 2020 and transitioned Plaintiffs from in-person learning to on-line/remote the Plaintiffs' educational placement was changed in violation of the IDEA. Plaintiffs maintain that for more than a year, Defendants did not implement Plaintiffs' IEPs as they were created and developed for each Student – Defendants unilaterally changed each Student's IEP by changing each Student's educational placement – the educational status quo of the Plaintiff-Students, in violation of IDEA's procedural safeguards. By changing how the Plaintiffs received their educational services during the 2019-2020 and the 2020-2021 school years, not the location where the services were received but the very nature of the services themselves, without regard to IDEA's procedural safeguards, Defendants denied Plaintiffs the education guaranteed to them under the IDEA – the FAPE guaranteed to them by the IDEA.

In *Honig*, the Supreme Court held that a school district's removal of a disabled student from their educational program or alteration of the Student's educational program constitutes a "change in placement," which must be undertaken only within the protective framework of the IDEA. *Honig*, 484 U.S. at 323; *Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1495* (9th Cir. 1994). The Court held that even in the most extreme circumstances, a Student's educational placement may not be changed for more than ten days, cumulatively, in any school year. To the point, the primary relief requested in Plaintiffs' Complaint is a Declaratory Judgment

– a finding from the Court that Plaintiffs' rights under the IDEA and/or otherwise were violated when the Defendants unilaterally closed their schools in March of 2020 and transitioned Plaintiffs from in-person learning to on-line/remote the Plaintiffs' educational placement was changed in violation of the IDEA.

The primary relief sought by Plaintiffs is an automatic injunction under 20 U.S.C. § 1415(j) – known as the IDEA's stay-put provision. The stay-put provision "protects the status quo of a child's educational placement" by preventing "school districts from effecting unilateral change in a child's educational program." *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 139–40 (3d Cir. 2013).

Plaintiffs are entitled to an automatic injunction where/when their Students' educational placement was/is changed for more than ten days, cumulatively, in any school year, based on the Supreme Court's holding in *Honig*. Plaintiffs maintain that where, as here, the stay-put provision is triggered, Plaintiffs are entitled to an injunction keeping them in, or returning them to, their "then-current educational placement." *V.D. v. State*, 403 F. Supp. 3d 76 (E.D.N.Y. 2019); *citing D.M. v. N.J. Dep't of Educ.,* 801 F.3d 205, 211 (3d Cir. 2015). Courts have held that an automatic injunction may issue under the IDEA's stay-put provision in the absence of administrative proceedings. *D.M. v. New Jersey Dep't of Educ.*, No. CIV.A. 14-4620 ES, 2014 WL 4271646, at *6 (D.N.J. August 28, 2014). The Court in *D.M.* recognized that the "language of 1415(j) is unequivocal and admits of no exceptions..

6

..stay-put provision is designed to ensure stability and consistency in a disabled child's education when that consistency may otherwise be elusive." *D.M.*, 2014 WL 4271646, at *6; *K.T. ex rel. S.W. v. W. Orange Bd. of Educ.*, No. 01CIV.3208 (WGB), 2001 WL 1715787, at *2 (D.N.J. Oct. 23, 2001).

Plaintiffs seek a Declaratory Judgment and Injunction as discussed above because their educational experience has been interrupted time and again over the past two years due to the COVID Pandemic. As we have seen, as recently as December and January, schools that open for in-person learning often close again due to another wave or variant of the Coronavirus.

The settlement of the Plaintiffs' underlying administrative matters did not include a Declaration concerning the closure of the schools in March 2020, nor did they involve the issuance of an injunction or any other order designed to prevent the Defendants from unilaterally changing the Plaintiffs' placement in the event of another pandemic. Plaintiffs maintain that in-person learning, where necessary and/or contemplated by a Student's IEP, can be done safely even during a Pandemic like the one we experience – indeed, many schools across the country and the world continued to provide in-person services during COVID. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (emphasis added). *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013). Mootness should not bar a plaintiff from obtaining relief;

instead, a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin*, 568 U.S. at 172.

As the Supreme Court explained in rejecting a mootness argument as it pertained to COVID closures, a challenge to state restrictions is not moot when "officials with a track record of 'moving the goalposts' retain authority to reinstate those heightened restrictions at any time." *Brach v. Newsom*, 6 F.4th 904, 919 (9th Cir.), *reh'g en banc granted,* 18 F.4th 1031 (9th Cir. 2021), citing *Tandon v. Newsom*, 141 S. Ct. 1294, 1297, 209 L. Ed. 2d 355 (2021). A defendant's voluntary cessation does not moot a plaintiff's challenges to COVID-19 restrictions because "the State is not constrained from later reenacting the harsh restrictions which existed at the beginning of this pandemic." *Pro. Beauty Fed'n of California v. Newsom*, No. 2:20-CV-04275-RGK-AS, 2020 WL 3056126, at *4 (C.D. Cal. June 8, 2020), see *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982); *Brach*, 6 F.4th 904.

Here, Plaintiffs' claims present a live controversy because Plaintiffs are still subject to unilateral changes in their educational status quo as long as the Coronavirus remains a threat. The harm Plaintiffs seek to prevent can only be remedied by this Court as Plaintiffs cannot seek injunctive through the administrative process to keep schools open or otherwise provide for their continued in-person learning during another wave of the Coronavirus.

**PLAINTIFFS' RICO CLAIM**

As set forth below, Plaintiffs maintain their Complaint does not suggest that Plaintiffs' suffered derivative or passed-on injuries but direct injuries as they suffered financial harm in the loss of IDEA funds and harm to property by suffering denial of a FAPE as a result of Defendants' unilateral change in Plaintiffs' status quo educational placements; and relief is available to the Plaintiffs in the form of injunctive relief and the appointment of a special master to ensure that IDEA funds are utilized properly to the extent it is determined that they were not. As articulated in Plaintiffs' Complaint, under 18 U.S.C. § 1962(c), it shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such 'enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt." A plaintiff may satisfy the "enterprise" element of a RICO claim "by alleging a legitimate enterprise that was victimized by a racketeering scheme." *Metro. Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*, 266 F. Supp. 3d 502, 520 (D. Mass. 2017). An "enterprise" for RICO purposes encompasses both legitimate and illegitimate enterprises, since, though its major purpose was to protect legitimate business enterprises from infiltration by racketeers, it also made criminal participation in an association that performs only illegal acts and which has not infiltrated or attempted to infiltrate the

legitimate enterprise.[3] RICO applies both to legitimate enterprises conducted through racketeering operations and illegitimate enterprises. *United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985), see *Turkette*, 452 U.S. 576.

In the case at bar, as outlined in Plaintiffs Complaint, Plaintiffs believe that Defendants employed by AAPS, the WISD, and MDE did not uphold the assurances they made to the U.S. DOE, electronically and otherwise, to receive IDEA Part B funds during the COVID-19 pandemic. The IDEA funds Defendants received were diverted from their statutorily mandated purpose(s) and used for purposes not authorized by the IDEA. RICO authorizes private rights of action for injunctive relief, like the one at bar. *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 124 (2d Cir. 2019); *Chevron Corp. v. Donziger*, 833 F.3d 74, 137 (2d Cir. 2016) (holding that a federal court is authorized to grant equitable relief to a private plaintiff). Similarly, private rights of action against a State or local education agency exist under IDEA. *New Jersey Prot. & Advoc., Inc. v. New Jersey Dep't of Educ.*, 563 F. Supp. 2d 474 (D.N.J. 2008). Furthermore, IDEA permits statewide advocacy organizations and agencies acting on behalf of children with disabilities and their parents to maintain private rights of action against the State for failure to comply with any IDEA provision. *Id.*

---

[3] *United States v. Turkette*, 452 U.S. 576, 580–593, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).

"A private cause of action under RICO requires that the plaintiff allege: '(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'" *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-2259 JPO, 2015 WL 374968, at *5 (S.D.N.Y. January 29, 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006)). *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 179 (S.D.N.Y. 2020).

Under the IDEA, it is undeniable that disabled students have substantive and procedural rights – intangible rights, considered property rights. The Supreme Court has held that mail and wire fraud may cover intangible property rights. Carpenter v. United States, 484 U.S. 19, 25, 108 S. Ct. 316, 98 L. Ed. 2d 275 (1987)(intangible items of value, such as confidential business information). To qualify for federal financial assistance under the Act as discussed above, a State must demonstrate that it "has in effect a policy that assures all handicapped children the **right** to a free appropriate public education." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 180–81, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). In enacting the IDEA and its predecessor statute, Congress created a right to education for disabled students, even when and if such a right may not exist for non-disabled students. In drafting and passing the IDEA, Congress undoubtedly intended to establish a FAPE as a property right for those students with qualifying disabilities.

11

Without a "right" or "interest" in a FAPE, a Parent would be unable to vindicate the enumerated procedural due process rights to challenge an IEP that purportedly offered the same. See, 20 U.S.C. § 1415. The Act's legislative history demonstrates that both House and Senate Reports attribute the impetus for the Act and its predecessors to two federal-court judgments rendered in 1971 and 1972. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 192.[4]  As the Senate Report states, the passage of the Act "followed a series of landmark court cases ***establishing in law the right to education for all handicapped children***." S.Rep., at 6, U.S.Code Cong. & Admin.News 1975, p. 1430. *Id.* Similarly, the Senate Report states that it was an "[i]ncreased awareness of the educational needs of handicapped children and landmark court decisions establishing the right to education for handicapped children [that] pointed to the necessity of an expanded federal fiscal role." S.Rep., at 5, U.S.Code Cong. & Admin.News 1975, p. 1429. See also H.R.Rep., at 2–3. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 192.

In *Smith v. Robinson*, 468 U.S. 992, 1010, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984), the Supreme Court acknowledged that in creating the Act, Congress intended

---

[4] *See also, Note, Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975*, 92 Harv. L. Rev. 1103 (1979) for extensive discussions as to the legislative history and background of the Act.

to "establish and protect the right to education for all handicapped children and to provide assistance to the States in carrying out their responsibilities under State law and the Constitution of the United States to provide equal protection of the laws." U.S.Code Cong. & Admin. News 1975, p. 1437. *Id. See also* 121 Cong. Rec. 37417 (1975) (statement of Sen. Schweiker: "It can no longer be the policy of the Government to merely establish an unenforceable goal requiring all children to be in school. [The bill] takes positive necessary steps to ensure that the rights of children and their families are protected"). *Smith*, 468 U.S. at 1010. In explaining the need for federal legislation, the House Report noted that "no congressional legislation has required a precise guarantee for handicapped children, i.e., a basic floor of opportunity that would bring into compliance ***all school districts with the constitutional right of equal protection with respect to handicapped children.***" H.R.Rep., at 14. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 200.

In addition to having a property right in a FAPE, Plaintiffs have a financial interest in IDEA funds, more direct than derivative. A disabled student's right to a free appropriate public education necessarily exists concomitantly with the Student's right to the federal funds accepted by the State to provide the Student with a FAPE. *See McClain v. Smith*, 793 F. Supp. 761 (E.D. Tenn. 1990) (Parent of severely disabled 19-year-old woman did not waive woman's **rights** to Education for All

Handicapped Children Act **funds** by agreeing to have woman placed in an adult group home, even though mother understood that group home was not a school, since experts told the mother that there was no other opening for the woman in the vicinity and that group home would give the same kind of training which had previously been received. (emphasis added)).[5]

The Supreme Court went even further in *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 516, 127 S. Ct. 1994, 167 L. Ed. 2d 904 (2007), when it held that IDEA grants parents independent, enforceable rights, which are not limited to procedural and reimbursement-related matters but encompass the entitlement to a free appropriate public education for their child. *Id*

Courts have explicitly held that a free appropriate public education (FAPE) is a property right. In *Quackenbush*, 716 F.2d 141, the Second Circuit held that the Defendants' deliberate interference with a Student's procedural safeguards guaranteed by Congress, depriving the Student of special education services necessary to provide him with a FAPE **constituted the deprivation of a right**

---

[5] IDEA Part B funds are provided to local school districts based, in part, on a "per-student" analysis. *See Clark v. Banks*, 193 F. App'x 510, 517 (6th Cir. 2006)(unpublished). As such, each diabled student receiving a FAPE has a right to, or property interest in, the IDEA Part B funds given to the state or local school district to implement his/her IEP and provide him/her with a FAPE. In essence, the IDEA funds received by the state, and in turn local school districts, are earmarked for each student.

**guaranteed under federal law within the meaning of §1983.**" (emphasis added). *Quackenbush*, 716 F.2d at 148.  In *BD,* the Court found that Autistic infants and toddlers had a protected property right to an IEP that would meet their needs, as required to support parents' § 1983 action against county officials. *BD v. DeBuono*, 130 F. Supp. 2d 401 (S.D.N.Y. 2000). The Court also held that FAPE was a property right. *Id.* Likewise, in *L.V. v. N.Y. City Dep't of Educ.*, the Court found that a qualified student had a property right in an IEP guaranteeing a FAPE. L.*V. v. N.Y. City Dep't of Educ.*, 2020 U.S. Dist. LEXIS 128723 (S.D.N.Y. July 17, 2020), *see BD v. DeBuono*, 130 F. Supp. 2d 401, 431 (S.D.N.Y. 2000), citing *Quackenbush*, 716 F.2d at 148 (denial of "free appropriate education" constitutes a deprivation of a property right)). See also  *M.M. v. New York City Dep't of Educ.*, No. 15 CIV. 5846 (PKC), 2017 WL 1194685, at *14 (S.D.N.Y. March 30, 2017); *M.H. v. Bristol Bd. of Educ.*, 169 F. Supp. 2d 21, 33 (D. Conn. 2001) holding that a student has a property interest in a FAPE.

There is relief that the Court can grant Plaintiffs concerning their RICO claims that Plaintiffs have not received, could not receive, in the settlement of their administrative matters in the form of declaratory and injunctive relief as set forth above and requested in Plaintiffs' Complaint.

Respectfully submitted,
Brain Injury Rights Group
*Attorneys for Plaintiffs*


By:  **_/S/ Rory J. Bellantoni_**
Rory J. Bellantoni (RB2901)
300 East 95th Street, Suite 130
New York, NY 10128
(646) 850-5035
rory@pabilaw.org

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on March 11, 2022, I electronically filed the above document(s) with the Clerk of the Court using the ECF System as an Exhibit to a letter motion, which will provide electronic copies to all attorneys of record in this matter.

By:     ***/S/ Rory J. Bellantoni***
        Rory J. Bellantoi (RB2901)
        300 East 95th Street, Suite 130
        New York, NY 10128
        (646) 850-5035
        rory@pabilaw.org